**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANCIENT COIN COLLECTORS GUILD<br>206 Elm Street<br>Gainesville, MO  65655, | ) ) ) ) | |
| INTERNATIONAL ASSOCIATION OF<br>PROFESSIONAL NUMISMATISTS<br>14, rue de la Bourse<br>1000 Brussels, Belgium, | ) ) ) ) ) | |
| PROFESSIONAL NUMISMATISTS GUILD, INC.<br>3950 Concordia Lane<br>Fallbrook, CA 92028, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. |
| UNITED STATES DEPARTMENT OF STATE<br>2201 C Street, NW<br>Washington, D.C.  20520 | ) ) ) ) ) | |
| Defendant. | ) ) | |

COMPLAINT FOR DECLATORY JUDGMENT AND INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, as amended, as well as agency FOIA regulations, challenging the failure of the

United States Department of State ("State"), to respond to the requests of the

International Association of Professional Numismatists ("IAPN"), the Professional

Numismatists Guild ("PNG"), and the Ancient Coin Collectors Guild ("ACCG").

Plaintiffs have brought this action after State has refused to provide meaningful

information to the public about the unprecedented imposition of import restrictions on

ancient coins of Cypriot types.   While State has now required the small businesses of the

numismatic trade and collectors to comply with unfair, unworkable and unnecessary

documentation requirements before any ancient coins of Cypriot type may be imported legally into the United States, State has refused to document its own decision making processes for imposing import restrictions to plaintiffs, to other members of the public interested in the legitimate international exchange of cultural artifacts and even to our elected representatives in the United States Congress.

2.  This case seeks declaratory relief that defendant is in violation of the FOIA for failing to fulfill plaintiffs' requests for records, in violation of the FOIA and agency regulations and injunctive relief that defendant immediately and fully comply with plaintiffs' requests under the FOIA.  Some of these requests date as far back as 2004. Because all prior efforts to seek timely responses have either been ignored or denied, plaintiffs have been forced to seek judicial intervention as a last resort.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

4.  Plaintiff IAPN is a nonprofit organization of the leading international numismatic firms founded in 1951.  IAPN broadly represents the interests of the small businesses of the international numismatic trade. The objects of IAPN are the development of a healthy and prosperous numismatic trade conducted according to the highest standards of business ethics and commercial practice.  The material sought in these FOIA requests will assist the IAPN in reaching these organizational goals.

5. Plaintiff PNG is a non-profit organization founded in 1955 comprised of the country's top rare coin and paper money experts. PNG broadly represents the interests of the small businesses of the numismatic trade within the United States. PNG member-dealers must adhere to a strict code of ethics and demonstrate knowledge, integrity and responsibility in their business dealings, and they must agree to binding arbitration to settle unresolved disputes over numismatic property. The organization hosts PNG Day shows in conjunction with the American Numismatic Association and Central States Numismatic Society. It also actively promotes numismatic education and hobby enjoyment with informative brochures, lectures and seminars by member-dealers and other important projects. The information sought pursuant to the FOIA in this matter will assist PNG in these activities.

6. Plaintiff ACCG is a Missouri based non-profit organization committed to promoting the free and independent collecting of coins from antiquity. The goal of this guild, founded in 2004, is to foster an environment in which the general public can confidently and legally acquire and hold any numismatic item of historical interest regardless of date or place of origin. ACCG strives to achieve its goals through education, political action, and consumer protection. Membership of the ACCG is comprised of collectors, independent scholars and numismatic professionals who care passionately about preserving, studying and displaying ancient coins from all cultures. In addition to individual memberships, the guild is supported by 20 Affiliate Member organizations.   The guild does not in any way support, condone or defend the looting of designated archaeological sites, nor the violation of any nation's laws concerning the

import or export of antiquities.  The material sought pursuant to ACCG's FOIA requests will enable the ACCG to better complete its above described mission.

7.  Defendant State is an agency of the Executive branch of the United States Government within the meaning of 5 U.S.C. § 552(f).  Defendant is the federal agency with possession and control of the requested records and is responsible for fulfilling plaintiffs' FOIA requests.

8.  The Bureau of Educational and Cultural Affairs ("ECA") is a component of defendant State.  ECA receives recommendations from the Cultural Property Advisory Committee ("CPAC"), a panel of experts charged with advising the President and his designees within the State Department on a proper balance between efforts to control looting at archaeological sites and the legitimate international exchange of cultural artifacts.  Many of the requested records are maintained by ECA and arose from matters before CPAC.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

9.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

10.  An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfill the request and of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).

11.  An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial.  5 U.S.C. § 552(a)(6)(A)(ii).

12.  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B).

13.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

14.  The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records.  Specifically, when requiring the release of improperly withheld records, if the court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.  5 U.S.C. § 552(a)(4)(F).  Plaintiffs respectfully suggest that given the extreme and unexplained delays in responding to many of Plaintiffs' requests, such a finding may well be appropriate here.

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

15.  In an attempt to ascertain if State complied with the law in processing requests for import restrictions on historical coins of Cypriot, Chinese and Italian types, plaintiffs have made a number of FOIA requests concerning information pertaining to these import restriction requests.  Plaintiffs have also sought to discover if the ECA accepted or rejected CPAC recommendations within the statutory framework designed to

ensure deference to the recommendations of the President's experts with respect to the complex issues surrounding import restrictions on cultural artifacts.

16.  State has refused to disclose whether ECA rejected the recommendations of the CPAC.  In particular, State has refused to disclose whether ECA lawfully treated the imposition of import restrictions on coins of Cypriot types as a substantive matter supported by full fact finding and the approval of the President's designee within State or whether ECA unlawfully treated the imposition of import restrictions on coins of Cypriot types as merely a matter of administrative convenience.  Further, State has refused to disclose whether ECA lawfully listed coins of Chinese types as subject to possible import restrictions pursuant to a specific request from the People's Republic of China or whether ECA unlawfully listed coins of Chinese types as subject to possible import restrictions at the whim of ECA staff or at the request of certain members of the archaeological community.  Finally, State has refused to disclose whether ECA forced members of the numismatic community to defend a request for import restrictions on coins of Italian types when the Republic of Italy did not make a specific request for the extension of import restrictions to coins of Italian types.

17.  State's failure to disclose meaningful information about the Cypriot, Chinese and Italian requests is part of a pattern and practice whereby ECA has drawn a veil of secrecy over basic information relating to the process of imposing import restrictions on cultural artifacts.

18.  The concerns of plaintiffs about this veil of secrecy have increased as ECA has approved ever broader requests for import restrictions, including the recent unprecedented extension of import restrictions to ancient coins of Cypriot types.

19. Over the past several years as the scope of import restrictions have broadened to include ever more categories of artifacts from ever more cultures over ever greater time frames approaching the modern era, plaintiffs and others seeking to protect the legitimate international exchange of cultural artifacts have raised concerns about the transparency of the process for imposing import restrictions to high ranking officials at State, including senior officials at ECA, the Legal Adviser's office, and the Inspector General's Office. Nevertheless, the process of imposing ever broader import restrictions continues to unfold under almost complete secrecy, which is not justified under the terms of the governing statutory authority, the Convention on Cultural Property Implementation Act ("CPIA), 19 U.S.C. § 2601 et. seq.

20. State has also refused to provide meaningful information about the process for imposing import restrictions to members of Congress who have sought information on behalf of plaintiffs and others interested in the legitimate international exchange of cultural artifacts. As such, plaintiffs act for the benefit of the general public in seeking this judicial determination whether State's and ECA's veil of secrecy over the process for imposing import restrictions is warranted.

21. Plaintiffs' FOIA requests are set forth in Counts I-IX below. In no instance has State released the requested material to any of plaintiffs' requests, in violation of FOIA.

### Count I

22. By letter dated July 30, 2004, plaintiffs IAPN and PNG requested from State four reports of the CPAC. Specifically, plaintiffs IAPN and PNG requested a.) the report on the Request of the Government of the Republic of Cyprus for the Imposition of Import

Restrictions on Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus (Restrictions Reported at Fed. Reg. Notice: April 12, 1999; 64(69); 17529-17531); b.) the report on the Request of the Government of the Republic of Cyprus for the Imposition of Import Restrictions on Pre-Classical and Classical Archeological Material Originating in Cyprus (Restrictions Reported at Fed. Reg. Notice: July 19, 2002; 67(139); 47447-47450); c. the report on Extension of Import Restrictions on Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus (Extension Reported at Fed. Reg. Notice: August 29, 2003; 68(168); 51903-51904); and d.) the report on Interim Review of the Agreement Between the Government of the United States of America and the Government of Italy Concerning the Imposition of Import Restrictions on Certain Categories of Archaeological Material Representing the Pre-Classical and Imperial Roman Periods of Italy (Public Meeting Date: May 6, 2004) (Notice of Meeting Reported at Fed. Reg. Notice: April 20, 2004; 69 (76); 21176-21177).

23.  By letter dated August 3, 2004, State acknowledged plaintiffs' request.  State assigned the request described in paragraph 22 request number 200402941.  As of this date, State has not released any of the requested information.

24.  By letter dated October 11, 2007, plaintiff ACCG requested the same material sought by plaintiffs IAPN and PNG in the request described in paragraph 22.

25.  State has not acknowledged plaintiff ACCG's October 11, 2007 request as of this date, nor has it released the requested documents.

## Count II

26.  By letter dated March 29, 2005, plaintiffs IAPN and PNG requested from State a copy of the original Chinese Request for import restrictions pursuant to the 1970

UNESCO Treaty, in Chinese, which Request formed the basis of the PUBLIC

SUMMARY OF REQUEST OF THE PEOPLE'S REPUBLIC OF CHINA TO THE

GOVERNMENT OF THE UNITED STATES OF AMERICA UNDER ARTICLE 9 OF

THE 1970 UNESCO CONVENTION found at the Department of State, Cultural

Property Protection website at http://exchanges.state.gov/culprop/cn04sum.html.

27.  By letter dated April 15, 2005, State assigned the request described in

paragraph 26 request number 200501372.  State then denied the request by stating it did

not maintain the records sought.

28.  By letter dated August 23, 2006, State reconsidered its original no records

position, stated that it had located six documents responsive to the request but denied the

request pursuant to FOIA exemption 1 and Executive Order 12958.

29.  By letter dated August 29, 2006, plaintiffs IAPN and PNG administratively

appealed State's denial of the requested records.

30.  To date State has not made a decision on the administrative appeal nor has it

released any of the requested documents.

31.  By letter dated October 11, 2007, plaintiff ACCG requested the same material

sought by plaintiff's IAPN and PNG in the request described in paragraph 26.

32.  State has not acknowledged plaintiff AGGC's request as of this date, nor has

it released the requested documents.

<h3 style="text-align:center"><u>Count III</u></h3>

33.  By letter dated July 6, 2005, plaintiff ACCG requested copies of any written,

electronic or oral communications reduced to writing concerning the People's Republic

of China's request for import restrictions and/or coins between CPAC staff and members

of the Archaeological Institute of America or the Lawyers' Committee for Cultural

Heritage Preservation, including but not limited to Prof. Patty Gerstenblith, Ellen

Hersher, Jane Waldbaum and Prof. Malcolm Bell during the period of March 27, 2004

through and including December 28, 2004.  Plaintiff ACCG also sought any and all

documents evidencing the inclusion of coins in the list of items proposed to be restricted

in response to the Chinese request for import restrictions, generated during the period of

March 27, 2004 through and including December 28, 2004.  Plaintiff ACCG additionally

sought an expeditious review of this request.

34.  By letter dated September 15, 2005, State assigned the request described in

paragraph 33 request number 200502767.  However, State denied expeditious processing

of the request and closed the request in its system.

35.  By e-mail dated November 9, 2005, State advised that the request had been

re-opened and a search for records had been initiated.

36.  By letter dated March 15, 2006, State said that "after a thorough search of

these [record] systems conducted by professional employees familiar with their contents

and organization, no records responsive to your request were located."

37.  By letter dated April 17, 2006, plaintiff ACCG administratively appealed the

no records response of State.

38.  To date, State has not made a decision on the administrative appeal nor has it

released any of the requested documents.

39.  By letter dated November 11, 2007, plaintiffs IAPN and PNG requested the

same material described in paragraph 33.

40.  State has not acknowledged plaintiffs' IAPN and PNG request as of this date, nor has it released the requested information.

### Count IV

41.  By letter dated August 25, 2005, plaintiffs IAPN and PNG requested, as part of a larger request to State, any and all documents dating from January 1, 2004 to the present evidencing the potential inclusion of coins in the list of archaeological items subject to import restriction under the proposed renewal of the Memorandum of Understanding with Italy.  (*See* Public Notice Nos. 5105 and 5106 (70 Fed. Reg. 44146-44147 (August 1, 2005))).

42.  State has not acknowledged the request described in paragraph 41 as of this date, nor has it released any of the requested information.[1]

43.  By letter dated October 11, 2007, plaintiff ACCG requested the same material described in paragraph 41.

44.  State has not acknowledged plaintiff ACCG's request as of this date, nor has it released the requested material.

### Count VI

45.  By letter dated January 20, 2006, plaintiffs IAPN and PNG requested the report of the CPAC as well as any dissents that led to the Extension of Import

---

[1] This request was made in the same letter as another request for information about the relative size of the markets for Chinese artifacts.  State acknowledged receipt of that particular request in a letter dated September 16, 2005, giving it request number 200503753.  On August 27, 2007, State produced in redacted form a document that another party interested in the legitimate international trade in Chinese artifacts prepared for CPAC's deliberations.  State charged plaintiffs IAPN and PNG $100 for the costs of producing this document that was already known to plaintiffs.  If IAPN and PNG had not already had in their possession a copy of the unredacted document, the source of the document would have been unclear to IAPN and PNG.

Restrictions on Certain Categories of Archaeological Material Representing the Pre-

Classical and Imperial Roman Periods of Italy (Public Meeting Date: September 8, 2005)

(*See generally* Notice of Extension of Import Restrictions, *reported at* 71 Fed. Reg. 3000-

01 (January 19, 2006).)

46.  By letter dated January 30, 2006, State acknowledged the request described in

paragraph 45 and assigned it request number 200600298.  As of this date, State has not

released any of the requested information.

47.  By letter dated October 11, 2007, plaintiff ACCG requested the same

information described in paragraph 45.

48.  State has not acknowledged plaintiff ACCG's request as of this date, nor has

it released any of the requested material.

### Count VII

49.  By letter dated July 25, 2007, plaintiffs IAPN and PNG requested the Report

of the CPAC and any dissents that led to the Extension of Import Restrictions on Pre-

Classical and Classical Archaeological Objects and Byzantine Ritual Ethnological

Material from Cyprus.  (Public Meeting Date: January 25, 2007).  The request also

sought any documentation evidencing the extension of import restrictions to coins of

Cypriot types for the period January 25, 2007 to July 31, 2007, any report to Congress

with respect to the restrictions, as provided for in the Convention on Cultural Property

Implementation Act ("CPIA") § 303(g), any written communications (including e-mails)

between staff of the Cultural Heritage Center and third parties (who are not State

Department employees) with regard to the restrictions on coins, for the period November

1, 2006 to July 31, 2007, and any correspondence from attorney Theodore Rogers to the

State Department with regard to a recusal request for Dr. Joan Connelly for the period

December 1, 2006 to February 1, 2007.

50.  By letter dated November 1, 2007, State acknowledged the request described

in paragraph 49 and assigned it FOIA request number 200704168.  However, State has

not released any of the requested information.

51.  By letter October 11, 2007, plaintiff ACCG requested the same information

described in paragraph 49.

52.  State has not acknowledged plaintiff ACCG's request as of this date, nor has

it released any of the requested information.

<h3 align="center">Count VIII</h3>

53.  By letter dated August 1, 2007, plaintiffs IAPN and PNG requested a copy of

any request by the Republic of Cyprus for import restrictions on coins pursuant to Article

9 of the 1970 UNESCO Convention made in or about January 2007.

54.  State has not acknowledged the request described in paragraph 53 as of this

date, nor has it released any of the requested information.

55.  By letter dated October 11, 2007, plaintiff ACCG requested the same

information described in paragraph 53.

56.  State has not acknowledged plaintiff ACCG's request as of this date, nor has

it released any of the requested information.

<h3 align="center">Count IX</h3>

57.  By letter dated October 11, 2007, plaintiffs IAPN, PNG and ACCG sought

the following information:

> 1. Copies of any communications to the State Department Decision Maker
> outlining the Cultural Property Advisory Committee's ("CPAC")

13

recommendation made with respect to import restrictions on coins of Cypriot types from January to July 2007.

2. Copies of the State Department Decision Maker's decision (made between January to July 2007) to impose import restrictions on coins of Cypriot types.

3. Copies of any communications with the Department of Homeland Security ("DHS"), or any component agency of DHS, with regard to the imposition of import restrictions on coins of Cypriot types from January to July 2007.

4. Copies of any and all memorandum, drafts, communications, emails or any other information related to the Bureau of Educational and Cultural Affairs Media Note 2007/615 (June 20, 2007) entitled "U.S. and Cyprus Extend Agreement to Protect Archeological and Ethnological Heritage of Cyprus" available at http://exchanges.state.gov/news/2007/072007.htm.

5. Copies of any and all memorandum, drafts, communications, emails or any other information related to the Office of the Spokesman Media Note 2007/615 (July 20, 2007) entitled "U.S. and Cyprus Extend Agreement to Protect Archeological and Ethnological Heritage of Cyprus" available at http://www.state.gov/r/pa/prs/ps/2007/88794.htm.

6. Copies of any and all memorandum, drafts, communications, emails, or any other information related to the plans for any remarks made at the Cyprus signing ceremony on July 19, 2007, available at http://www.state.gov/p/us/rm/2007/89515.htm for the period December 1, 2006 to October 1, 2007.

7. Copies of any and all memorandum, drafts, communications, emails, or any other information related to the entry on the Cultural Heritage Center's web site under the "What's New" section about the inclusion of coins in Cypriot import restrictions, available at http://exchanges.state.gov/culproper/whatsnew.html.

8. Copies of any and all memorandum, drafts, communications, emails, and any other information related to Federal Register Vol. 72 No. 134, Friday July 13, 2007 pp. 38470-38474 entitled "Extension of Import Restrictions Imposed on Pre-Classical and Classical Archaeological Objects and Byzantine Period Ecclesiastical and Ritual Ethnological Material from Cyprus."

9. Copies of any and all memorandum, drafts, communications, emails, and any other information related to the "Illustrations of the Categories of the Objects Subject to U.S. Import Restrictions-Cyprus (Coins of Cypriot

Types)" available at
http://exchanges.state.gov/culprop/cyimagecomb.html.

58.  State has not acknowledged plaintiffs' request described in paragraph 57 as of

this date, nor has it released any of the requested information.

## REQUESTS FOR RELIEF

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

(1)  Declare that the U.S. Department of State has violated the Freedom of

Information Act by failing to lawfully satisfy plaintiffs' FOIA requests;

(2)  Order State to release immediately all records responsive to plaintiffs' FOIA

requests;

(3) Award plaintiffs their reasonable attorney fees and litigation costs in this

action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____/s/_____
Scott A. Hodes
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833

Attorney for Plaintiffs

Dated:  **November 15, 2007**