UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANCIENT COIN COLLECTORS GUILD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2074 (RJL) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR SUMMARY JUDGMENT

Plaintiffs brings this action against Defendant United States Department of State, pursuant to the Freedom of Information Act ("FOIA"). Defendant hereby moves pursuant to Federal Rule of Civil Procedure ("Rule") 56, because there is no genuine issue of material fact which would prevent a judgment as a matter of law in Defendant's favor.

In support of this Motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities, Statement of Undisputed Facts, and attached exhibits.

Dated: March 13, 2009
Washington, DC

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____

BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————

ANCIENT COIN COLLECTORS GUILD, et al.,    )
                                          )
                Plaintiffs,               )
                                          )
        v.                                )        Civil Action No. 07-2074 (RJL)
                                          )
UNITED STATES DEPARTMENT OF STATE,        )
                                          )
                Defendant.                )
                                          )
———————————————————

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant United States Department of State ("State Department," "State," "Department," or "Defendant"), by and through its undersigned counsel, respectfully submits this memorandum of points and authorities in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(b).

**PRELIMINARY STATEMENT**

Plaintiffs purport to bring this action under the Freedom of Information Act ("FOIA") seeking the production of certain Department records requested by Plaintiffs through a series of FOIA requests (the "FOIA Requests"), of which seven remain at issue in this action. State has now released all reasonably segregable information responsive to these requests, and summary judgment is thus proper on Plaintiffs' claims.

**BACKGROUND**

**I.    SUMMARY OF PLAINTIFF'S COMPLAINT.**

Plaintiffs -- the Ancient Coin Collectors Guild ("ACCG"), the International Association of Professional Numismatists ("IAPN"), the Professional Numismatists Guild, Inc. ("PGN") --

purport to be non-profit trade groups whose focus is largely the collecting and trading of rare and antique coins. *See* Compl. at ¶¶ 4-6. Through their FOIA Requests, Plaintiffs have generally sought information relating to the imposition of import restrictions on ancient coins from Cyprus, Italy, and China. *See* Compl. at ¶ 15. In particular, Plaintiffs' requests have sought information from the Bureau of Educational and Cultural Affairs ("ECA"), a component of State, which is advised by the Cultural Proper Advisory Committee ("CPAC"), a panel of experts charged with advising the President and his designees on the application of the Convention on Cultural Property Implementation Act (the "CPIA"), 19 U.S.C. § 2601, *et seq. See generally* Compl. at ¶ 8; CPAC Homepage, http://culturalheritage.state.gov/committee.html (Last Checked 03/12/2009).

Plaintiffs allege that the State Department failed to provide adequate and timely responses to their FOIA Requests and seek, through this action, an order compelling State to immediately release all records responsive to Plaintiffs' FOIA Requests. The State Department believes that it has now produced all releasable information to Plaintiffs and, thus, summary judgment is proper on Plaintiffs' claims in this action.

## II.    PROCEDURAL HISTORY.

### A.    Plaintiffs Make Their FOIA Requests, Seven of Which Remain At Issue in This Action.

Through their Complaint, Plaintiffs assert claims regarding eight separate FOIA Requests made from July 30, 2004, to October 11, 2007. *See* Compl. at Counts I to IX (due to a numbering error there is no Count V).[1] By letter dated May 22, 2008, Plaintiffs' counsel

---

[1]    Additionally, after this action was instituted, on January 14, 2008, Plaintiffs submitted a ninth FOIA request to State. *See* Letter Hodes to State of 01/14/2008, attached hereto as Ex. B ("Mot. Ex. B"). This ninth FOIA request was resolved without judicial intervention on or about April 17, 2008, and Plaintiffs have not sought to administratively appeal State's response or amended their Complaint in this action to include a Count regarding that ninth request.

informed Defendant that Plaintiffs no longer contest the FOIA Request set forth in Count IV of the Complaint.  *See* Letter Hodes to State of 05/22/2008, Mot. Ex. C.  Consequently, the remaining seven FOIA Requests at issue in this litigation are:

Count I:  A FOIA request (No. 200402941) made by a faxed letter dated July 30, 2004, by IAPN and PNG requesting four reports of the CPAC.  *See* Compl. at ¶ 22; Grafeld Decl. at 3-4, Ex. 1, Mot. Ex. A.

Count II:  A FOIA request (No. 200501372) made by a faxed letter dated March 29, 2005, by IAPN and PNG requesting "the original Chinese Request for import restrictions pursuant to the 1970 UNESCO Treaty,[2] which Request formed the basis of the PUBLIC SUMMARY" of the Chinese request displayed on State's wesbsite.  *See* Compl. at ¶ 26; Grafeld Decl. at 5-7, Ex. 5, Mot. Ex. A.

Count III:  A FOIA request (No. 200502767) amended by fax on July 6, 2005, by ACCG requesting copies of certain records related to China's request for import restrictions during the period from June 26, 2004, to December 28, 2004.  *See* Compl. at ¶ 26; Grafeld Decl. at 7-9, Exs. 13-14, Mot. Ex. A.

Count VI:  A FOIA request (No. 200600298) made by letter dated January 20, 2006, by IAPN and PNG requesting "The Report of [CPAC] and any Dissents that led to the Extension of Import Restrictions on Certain Categories of Archaeological Material Representing the Pre-Classical and Imperial Roman Periods of Italy (Public Meeting Date: September 8, 2005)."  *See* Compl. at ¶ 45; Grafeld Decl. at 9-10, Ex. 22, Mot. Ex. A.

Count VII:  A FOIA request (No. 200704168) made by letter dated July 25, 2007, by IAPN and PNG requesting records in five categories relating to the extension of import restrictions to Cypriot coins as reported in 72 Fed. Reg. 38470-74 (July 13, 2007).  *See* Compl. at ¶ 49; Grafeld Decl. at 10-11, Ex. 25, Mot. Ex. A.

Count VIII:  A FOIA request (No. 200704596) made by letter dated August 1, 2007, by IAPN and PNG requesting a "copy of any request by the Republic of Cyprus for import restrictions on coins pursuant to Article 9 of the 1970 UNESCO Convention made in or about January 2007."  *See* Compl. at ¶ 49; Grafeld Decl. at 11-12, Ex. 32, Mot. Ex. A.

Count IX:  A FOIA request (No. 2007006194) made by letter dated October 11, 2007, by ACCG, IAPN, and PNG requesting records in nine categories relating

---

[2]     The 1970 UNESCO "Convention" or "Treaty" is officially entitled the 1970 UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, which was implemented by the United States through the CPIA.

to import restrictions on material from Cyprus.  *See* Compl. at ¶ 49; Grafeld Decl. at 12, Ex. 35, Mot. Ex. A.

**B.**   **State Administratively Processes The FOIA Requests.**

Upon receipt of each FOIA Request, State conducted certain initial processing including acknowledging receipt of all but one of the FOIA Requests remaining at issue in this litigation. The facts regarding this processing are undisputed and are set forth in great detail in the Complaint and in the attached Declaration of Margaret Grafeld.  *See* Compl. at ¶¶ 22-58; Grafeld Decl. at 3-12, Exs. 1-36, Mot. Ex. A.

**C.**   **State Searches for and Collects Records Responsive to the FOIA Requests.**

As described in great detail in the attached Grafeld Declaration, the State Department conducted multiple searches for records based upon the FOIA Requests that remain at issue in this litigation, which were designed to uncover all responsive records in the Department's possession.  *See* Grafeld Decl. at 14-26, Mot. Ex. A.  These searches included:

(a)   Searches for office and post files of ECA, including searches of records maintained by the Cultural Heritage Center (which handles, among other things, issues arising under the 1970 UNESCO Convention).  *See* Grafeld Decl. at 14-17, Mot. Ex. A.

(b)   Searches of records of the Office of the Legal Adviser, including the Office of Public Diplomacy.  *See id.* at 19.

(c)   Searches of ECA's country specific files, in both hard copy and electronic format.  *See id.* at 17-18.

(d)   Searches of records maintained by the Bureau of European and Eurasian Affairs and the Bureau of Public Affairs.  *See id.* at 19-21.

(e)   Searches of files maintained by the State Department's Executive Secretariat, including records of the Under Secretary for Political Affairs.  *See id.* at 21.

(f)   Searches of files maintained by the United States Embassy in Beijing and the Bureau of East Asian and Pacific Affairs.  *See id.* at 22-23.

(g)   Searches of retired files maintained by IPS including retired files of the Under Secretary for Political Affairs.  *See id.* at 23-24.

> (h)   Searches of the Central Foreign Policy File / State Archiving System.  *See id.* at 24-26.

Further, in all instances where the FOIA Requests sought specific documents, ECA staff knew the exact number of documents involved and located all of them or, in the case of one requested report on an interim review, knew that the requested document never existed.  *See* Grafeld Decl. at 17, Mot. Ex. A.  More information regarding these searches and the types of information maintained by the above noted components are set forth in exhaustive detail in the attached Grafeld Declaration.  *See id.* at 14-26.

### D.   State Reviews the Responsive Records Located Through Its Searches.

As a result of its searches, the Department located a total of 127 documents.  *See* Grafeld Decl. at 79, Mot. Ex. A.  At the completion of the Department's review of these 127 responsive documents, 65 documents were released in full, 39 documents were withheld in part, and 23 documents were withheld in full.  *See id.*  As set forth in the Grafeld Declaration, Margaret Grafeld, the State Department's Information and Privacy Coordinator and the Director of State's Office of Information Programs and Services ("IPS"), confirms that all of the responsive documents located by State were carefully reviewed for reasonable segregation of non-exempt information and she "determined that no further segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law."  *See* Grafeld Decl. at 79, Mot. Ex. A.

## III.   STATE'S WITHHOLDINGS IN DOCUMENTS RESPONSIVE TO PLAINTIFFS' FOIA REQUESTS ARE PROPER.

As described in detail in the Grafeld Declaration, the State Department properly withheld certain pages of documents and portions of other pages pursuant to well established FOIA exemptions.  *See* Grafeld Decl. at 27-45, Mot. Ex. A.

A.      **The Department Properly Withheld Materials Under Exemption 1.**

As described in the Grafeld Declaration (part of which identifies the specific withholdings and serves as Defendant's *Vaughn* index), the Department withheld certain information in 43 documents under Exemption (b)(1) of FOIA, because such information has been classified as "Confidential" under Executive Order 12958 either because it (i) consists of foreign government information protected under Section 1.4(b) of that Executive Order or (ii) is comprised of information regarding foreign relations or foreign activities of the United States protected under Section 1.4(d) of that Executive Order. *See* Grafeld Decl. at 27-32, Mot. Ex. A.

As noted in the descriptions of the specific withholdings, information withheld under Exemption (b)(1) largely consists of information in CPAC reports and other documents provided by foreign government officials with an express understanding that such information was to be held in confidence by the Department, including information containing the identification of known vulnerabilities of, and instances of looting at sensitive archaeological sites, physical means of protecting such sites, and specific law enforcement actions taken against looting and smuggling. *See id.* at 51-52, 56-58, 64-66, 70-73.

B.      **The Department Properly Withheld Materials Under Exemption 2.**

Also, as described in the Grafeld Declaration, the State Department withheld information in one document under a "low 2" Exemption of FOIA because such information is administrative in nature and could not possibly be the subject of any legitimate public interest. *See* Grafeld Decl. at 32, Mot. Ex. A.   Specifically, State has withheld "case file numbers, record identification codes, and other internal [Customs and Boarder Protection ("CBP")] codes." *Id.* at 58-60.

### C.   The Department Properly Withheld Materials Under Exemption 3.

Also, as described in the Grafeld Declaration, the State Department withheld certain information under Exemption (b)(3) of FOIA, as such information is protected from disclosure by a specific statute, namely the CPIA.  *See* Grafeld Decl. at 32-40, Mot. Ex. A.  As described in detail in the Grafeld Declaration and discussed further below, Sections 306(h), (i)(1) and (2) of the CPIA -- 19 U.S.C. § 1605(h), (i)(1) and (2) -- specifically provide (a) that the provisions of the Federal Advisory Committee Act (including the requirements relating to open meetings and disclosure of materials) shall not apply to CPAC whenever the President or his designee believes that the disclosure of CPAC's proceedings would compromise the government's negotiating objectives; (b) that information submitted in confidence by persons in the private sector to U.S. officials or CPAC "in connection with the responsibilities of" CPAC is "Confidential Information;" and (c) that information submitted by U.S. officials to CPAC in confidence is also "Confidential Information."  *See* 19 U.S.C. § 1605(h), (i)(1) and (2); Grafeld Decl. at 34-40, Mot. Ex. A.

Based upon these provisions of the CPIA, the State Department has withheld certain information including: (a) portions of CPAC reports that disclose matters about which closed CPAC proceedings took place, including information provided to CPAC in closed proceedings and the views of CPAC discussed in those closed proceedings (*see* Grafeld Decl. at 52-54, 71-72, Mot. Ex. A); (b) portions of CPAC reports that contain information disclosed to ECA staff or the Committee in confidence (*see id.* at 52-54, 71-72); and (c) portions of emails sent by private sector persons to ECA staff in confidence regarding the possible extension of a cultural property agreement with Cyprus (*see id.* at 60-61).

**D.      The Department Properly Withheld Materials Under Exemption 5.**

Also, as described in the Grafeld Declaration, the State Department withheld certain information under Exemption (b)(5) of FOIA, as such information is protected from disclosure by the deliberative process privilege and/or the attorney-client privilege.  *See* Grafeld Decl. at 40-42, Mot. Ex. A.  Specifically, under Exemption (b)(5), the Department withheld

(a)      information from CPAC reports recounting discussions among CPAC members concerning whether or not to make certain recommendations (*see id.* at 54-55);

(b)      information in CPAC reports conveying summaries of Committee discussions and non-binding recommendations resulting from earlier closed meetings (*see id.*);

(c)      information in CPAC reports consisting of summaries culled by the Committee from a much larger universe of facts presented to it such that its release would reveal the deliberative process by reflecting the discretionary distillation of information and the relative importance of that information to CPA (*see id.*);

(d)      non-final drafts of notices of proposed rulemaking and diplomatic notes containing comments and detailing various issues of concern, and emails containing the same types of non-final deliberative information (*see id.* at 58-59, 62-63, 76);

(e)      non-final draft communications to foreign governments containing pre-decisional legal recommendations (*see id.* at 63-64);

(f)      documents containing non-binding specific recommendations of CPAC and Department officials for consideration by the Assistant Secretary of the State Department and summaries of relevant views provided by the Department's attorneys (*see id.* at 70); and

(g)      a non-final draft of a press release containing substantively different language than that used in the final release (*see id.* at 75-76).

**E.      The Department Properly Withheld Materials Under Exemption 6.**

Also, as described in the Grafeld Declaration, the State Department withheld certain information under Exemption (b)(6) of the FOIA.  *See* Grafeld Decl. at 42-44, Mot. Ex. A. Specifically, the Department has excised names and other personal identifying information, largely of mid-level career Department employees.  *See id.*  Indeed, the privacy interests of these

mid-level employees are further heightened given the harsh personal accusations set forth in public forums. *See, e.g.*, Blog postings, Ancient Coin Collecting, http://ancientcoincollecting.blogspot.com/search?q=Kouroupas (Last Checked 03/12/2009) (posting reflecting personal criticisms of Maria Kouroupas, Executive Director, CPAC, including characterizing her as "Washington's smart weapon in its shadowy war on collecting antiquities."). Based upon this exemption, the Department has redacted such material from the responsive documents. *See* Grafeld Decl. at 55-56, 58-62, 66-69, 73-78, Mot. Ex. A.

**F.    The Department Properly Withheld Materials Under Exemption 7(C).**

Lastly, as described in the Grafeld Declaration, the Department withheld portions of two documents under Exemption (b)(7)(C) of FOIA. *See* Grafeld Decl. at 44-45, Mot. Ex. A. Specifically, the Department withheld names, email address, telephone numbers and fax numbers of lower level CBP employees from an email and a chain of five emails, as such emails were created as part of law enforcement efforts to implement and enforce cultural property restrictions. *See id.* at 58-60, 73-74. This information was also withheld under Exemption (b)(6). *See id.*

**ARGUMENT**

**I.    APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT.**

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 154 (D.D.C. 2007) (Bates, J.), *quoting* Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material facts. *Id.* In deciding whether a genuine issue of material facts exists, the court must "accept all evidence and make all

inferences in the non-movant's favor." *Id.*, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "A non-moving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* (citations and internal quotation marks omitted). That is, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.*, *quoting Anderson,* 477 U.S. at 249-50.

> In particular with regard to FOIA claims, this Court has recently noted the following:

> The court's jurisdiction under the FOIA extends only to claims arising from the improper withholding of agency records. *McGehee v. CIA,* 697 F.2d 1095, 1105 (D.C. Cir. 1983) (*quoting Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980)). In a FOIA suit, an agency is entitled to summary judgment once it bears its burden of demonstrating through reasonably detailed affidavits or declarations that no material facts are in dispute and its disclosure determinations satisfied the statute. *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted). To challenge such a showing, the non-moving party "must set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

*Barbosa v. DEA,* 541 F. Supp. 2d 108, 110 (D.D.C. 2008) (Roberts, J.) (granting summary judgment in agency's favor); *see also Singh v. FBI,* 574 F. Supp. 2d 32, 38-39 (D.D.C. 2008) (Leon, J.). Applying this standard it is clear that the Court should enter summary judgment on Plaintiffs' claims in Defendant's favor.

## II.   THE DEPARTMENT'S SEARCH WAS REASONABLE.

The Department conducted an extensive search of numerous systems and files thought to contain responsive information. Consequently, the Department's search was reasonable.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Singh,* 574 F. Supp. 2d at 39 (finding the agency's search to be reasonable*), quoting Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999) (citations omitted). While, "[t]he agency bears the burden of showing that its search was calculated to uncover all relevant documents[,]

. . . [t]o meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Id.* (internal quotations and citations omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA." *Id.*, *quoting Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Indeed, although the Agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith[.]'" *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

Here, the Department's search of numerous file systems and locations for responsive records undoubtedly was reasonable under the circumstances. *See supra* at 4-5. Further, State's search efforts are described in exhaustive detail in the Grafeld Declaration attached hereto. *See* Grafeld Decl. at 14-26, Mot. Ex. A. *See generally Davis v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006) ("adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case. And we expressly cautioned that it would be inappropriate for the court to mandate a bright-line set of steps for an agency to take in this situation, because FOIA requires both systemic and case-specific exercises of discretion and administrative judgment and expertise") (internal citations and quotations omitted).

## III.   STATE PROPERLY APPLIED THE RELEVANT FOIA EXEMPTIONS.

As noted above, and as set forth in great detail in the Grafeld Declaration, the Department properly withheld certain records and portions of records based upon certain FOIA exemptions.

### A.   <u>The Agency Properly Invoked Exemption 1.</u>

Exemption 1 of the FOIA exempts from mandatory disclosure records that are:

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1).   A record is protected if it has been properly classified based on the substantive and procedural criteria set forth in the currently applicable Executive Order.   *See Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *Weisman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).

As in any FOIA case, when determining whether the records at issue are properly within the scope of the exemption, this Court must "determine the matter de novo."   5 U.S.C. § 552(a)(4)(B).   In Exemption 1 cases, however, the legislative history of the FOIA makes clear that "courts must 'recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record.'"   *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982), *quoting* S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974).

Courts therefore generally defer to the expert opinion of the agency in this area, reasoning that judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case."   *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (high degree of deference to be paid to agency's classification judgment); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) ("substantial weight [must be given] to agency statements"); *Bowers v. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991) ("What fact or bit of information may compromise national security is best left to the intelligence experts."); *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) ("utmost deference"); S. Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 12, reprinted in 1974 U.S. Code Cong. & Admin. News 6285, 6290 ("[T]he conferees expect the Federal courts, in making de novo determinations in section 552(b)(1) cases . . . will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.").

As the Court of Appeals for this Circuit stated in *Halperin*:

> Congress has indicated that courts should give "substantial weight" to such agency [affidavits] while conducting a de novo review of agency decisions that withhold information on the basis of FOIA Exemption 1. . . .  We have held that summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.
>
> If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency.  Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case.

*Halperin*, 629 F.2d at 147-48 (footnotes omitted).  Thus, an agency's invocation of Exemption 1 will ordinarily be upheld if the agency's affidavits are sufficiently specific and there is no evidence of bad faith.  *Public Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002); *Students Against Genocide*, 257 F.3d at 837.

Here, the Grafeld Declaration meets this standard.  The Grafeld Declaration explains in depth the basis for withholding, the Executive Order under which State is withholding materials, and why State believes the withheld materials to be foreign government information and/or information related to the foreign relations or activities of the United States.  *See* Grafeld Decl. at 27-32, Mot. Ex. A.  Consequently, the Court should deem State's withholding in this regard proper under Exemption 1.

### B.     The Agency Properly Invoked Exemption 2.

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Not long after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest

"where disclosure may risk circumvention of agency regulation."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976).

Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2").  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *see Crooker v. ATF*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material).  Notably, computer codes, internal file numbers, and internal operation information (of the type withheld here) have been held to be protected under the "low 2" exemption. *See Key*, 510 F. Supp. 2d at 127-28; *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 384 F. Supp. 138, 147 (D.D.C. 2005) (Lamberth, J.), *reconsid. on ot. grnds.* 393 F. Supp. 2d 15 (internal file numbers are exempt from disclosure under (b)(2)); *Branch v. FBI*, 658 F. Supp. 204, 208 (D.D.C. 1987) (same); *Coleman v. FBI*, 13 F. Supp. 2d 75, 79 (D.D.C. 1998) (Lamberth, J.) (same); *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001) (Lamberth, J.) (internal agency computer codes "clearly fall with Exemption 2").

### C.      The Agency Properly Invoked Exemption 3.

Exemption 3 of the FOIA requires agencies to withhold information prohibited from disclosure by another statute only if one of two disjunctive requirements is met.  An agency may not release information if the underlying statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."   5 U.S.C. §

552(b)(3).  For purposes of qualifying as a withholding statute under Exemption 3, the D.C.

Circuit has explained that a statute:

> must on its face exempt matters from disclosure.  We must find a congressional purpose [to] exempt matters from disclosure in the actual words of the statute (or at least in the legislative history of FOIA) -- not in the legislative history of the claimed withholding statute, nor in an agency's interpretation of the statute.

*National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002), *quoting Reporters Comm. for Freedom of the Press v. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).  In other words, a nondisclosure statute must evidence a congressional determination that certain materials ought to be kept in confidence, to qualify under FOIA Exemption 3.  *Irons & Sears v. Dunn*, 606 F.2d 1215, 1220 (D.C. Cir. 1979), *cert. denied*, 444 U.S. 1075 (1980).  Accordingly, in examining the CPIA's anti-disclosure provision, the Court applies essentially a traditional plain meaning rule.  *Reporters Comm.*, 816 F.2d at 735.  By its own terms the CPIA expressly exempts from disclosure three types of information, and thus, State's withholdings in this regard are proper.

          **1.**        **CPIA Section 306(h) is an Exemption 3 Provision and Exempts From Disclosure Materials Discussing Closed CPAC Meetings.**

Section 306(h) of CPIA, 19 U.S.C. § 2605(h), exempts CPAC from Sections 10 and 11 of the Federal Advisory Committee Act ("FACA," Mot. Ex. D), including its requirements for public availability of documents generated or used by an advisory committee, if the President or his designee determines that the release of CPAC's proceedings would harm the government's negotiating positions or objectives.  *See* 19 U.S.C. § 2605(h).  Section 10(b) of the FACA incorporates FOIA to advisory committees such as CPAC.  *See* FACA § 10(b), Mot. Ex. D. Consequently, by exempting CPAC from FACA Section 10 for particular types of matters (*i.e.*, when disclosure would harm the negotiating interests of the United States), Congress expressly exempted CPAC from the disclosure requirement of FOIA.  Therefore, CPIA Section 306(h) is

- 15 -

an Exemption 3(B) statute.  *See generally Mudge Rose Guthrie Alexander & Ferdon v. U.S. Int'l Trade Comm'n*, 846 F.2d 1527, 1530-31 (D.C. Cir. 1988) (finding § 777 of the Tariff Act qualifies under Exemption 3(B) as a withholding statute, noting that a statute is a withholding statute under 3(B) when it specifies "particular types of matters" where disclosure is inappropriate).

As described in the Grafeld Declaration, the ECA Assistant Secretary has been delegated the authority described in Section 306(h) of CPIA.  *See* Grafeld Decl. at 34-35, Mot. Ex. A.  As such, when the ECA Assistant Secretary determined that a CPAC meeting be closed, he did so under Section 306(h) of CPIA.  *See id.* at. 34-36.  Accordingly, the Department properly withheld from disclosure under Exemption 3 and CPIA Section 306(h) materials that disclosed the matters occurring during closed meetings of CPAC.  *See supra* at 7; Grafeld Decl. at 34-36, Mot. Ex. A.

## 2. CPIA Section 306(i)(1) is an Exemption 3 Provision and Exempts From Disclosure Materials Submitted to ECA or CPAC from the Private Sector.

Section 306(i)(1) of CPIA, 19 U.S.C. § 2605(i)(1) could not more clearly be an Exemption 3 nondisclosure statute.  In relevant part, Section 306(i)(1) states

> (i) CONFIDENTIAL INFORMATION. - (1) IN GENERAL - Any information . . . submitted in confidence by the private sector to officers or employees of the United States or to [CPAC] in connection with the responsibilities of [CPAC] shall not be disclosed to any person other than to [relevant executive and legislative officials of the United States.]

19 U.S.C. § 2605(i)(1).  This unequivocal prohibition on disclosure to the general public undoubtedly satisfies the requirements of Exemption 3(A) or (B).  *See Liberman v. FTC*, 771 F.2d 32, 39, n.14 (2d Cir. 1985) (finding that prohibition in Hart-Scott-Rodino Antitrust Improvement Amendments on disclosure of premerger-notification materials from third parties was an Exemption 3 statute).  Therefore, the Department's withholdings of certain emails sent by

persons in the private sector to ECA in connection with its CPAC duties are protected from release.  *See supra* at 7; Grafeld Decl. at 36-38, Mot. Ex. A.

> **3.     CPIA Section 306(i)(2) is an Exemption 3 Provision and Exempts From Disclosure Materials Submitted to CPAC from ECA.**

Section 306(i)(2) of CPIA, 19 U.S.C. § 2605(i)(2), also could not more clearly be an Exemption 3 withholding statute.  In relevant part, Section 306(i)(2) states

> (i)  CONFIDENTIAL  INFORMATION. - . . .  (2)  GOVERNMENTAL INFORMATION. - Information submitted in confidence by officers or employees of the United States to [CPAC] shall not be disclosed other than in accordance with rules issued by [the State Department] after consultation with [CPAC.]

19 U.S.C. § 2605(i)(2).  Plaintiffs here do not allege, because they cannot, that they requested materials in this action in accordance with rules promulgated regarding the release of government information provided to CPAC.  Consequently, the Department's withholding of ECA materials submitted to CPAC is proper under this Exemption 3 provision.  *See supra* at 7; Grafeld Decl. at 38-40, Mot. Ex. A.  *see also Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C. Cir. 1998) (holding that Smith-Mundt Act qualifies as an Exemption 3(B) statute even though it permitted disclosure of the protected documents outside the United States); *DeLorme Publ'g Co. v. NOAA*, 917 F. Supp.. 867 (D. Me. 1996) (finding that Federal Transfer Technology Act was an Exemption 3(B) statute, though it allowed the agency to disclose, in its discretion, certain information).

> **D.      The Agency Properly Invoked Exemption 5.**

Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   The Supreme Court has interpreted Exemption 5 as allowing an agency to withhold from the public documents which a private party could not discover in litigation with the agency.  *U.S. v. Weber Aircraft Corp.*, 465 U.S. 792, 799

(1984); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). Exemption 5 incorporates privileges that the government enjoys under the relevant statutory and case law in the pretrial discovery context. *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). Agency documents that are not routinely discoverable in civil litigation are exempted from disclosure under Exemption 5. *Id.* at 27. Accordingly, Exemption 5 allows an agency to invoke civil discovery privileges, including the attorney-client privilege, attorney work-product privilege, and the executive deliberative process privilege, to justify the withholding of documents that are responsive to a FOIA request. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

### 1.   Attorney-Client Communications.

It is well settled that Exemption 5 exempts from disclosure materials protected by the attorney-client privilege. *See, e.g., Loving v. Dept. of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) ("Exemption 5 incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant -- including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege-and excludes these privileged documents from FOIA's reach.") (quotation marks omitted). The attorney-client privilege rests at the center of our adversary system and promotes "broader public interests in the observance of law and administration of justice" and "encourage[s] full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). "In the governmental

context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

Here, State has withheld under the attorney-client privilege (i) an email from ECA employees to an employee in the Department's Office of Legal Adviser seeking legal approval of a draft document and the attachment thereto (Grafeld Decl. at 63-64, Mot. Ex. A); and (ii) portions of an action memorandum containing summaries of relevant views by attorneys in the Department's Office of Legal Adviser (*id.* at 70-71). These materials are clearly protected by the attorney-client privilege, and thus, subject to withholding under Exemption 5.

### 2. Deliberative Process.

To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is "both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal State*s, 617 F.2d at 866. The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

The deliberative process privilege reflects Congress's judgment that public disclosure of predecisional, deliberative documents would inhibit "the full and frank exchange of ideas on legal policy matters" within an agency. *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). The Supreme Court has commented that, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *United States v. Nixon*, 418 U.S. 683, 705 (1974).

Applying this standard, it is clear that the Department properly withheld the above noted materials under the deliberative process privilege. *See supra* at 8. Specifically, non-final drafts of agency communications, actions and notices; factual summaries of larger universes of documents used to brief and prepare deliberation on committee recommendations; and non-binding recommendations from CPAC to State and discussions thereof have been found to be protected under this governmental privilege. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975) (finding that final written recommendations and advice from an agency without decisional authority to the deciding agency are protected from disclosure under the deliberative process privilege, because "the [non-deciding agency's] total lack of decisional authority brings their reports within Exemption 5 and prevent them from being 'final opinion'"); *Judicial Watch v. U.S. Dep't of Energy*, 310 F. Supp. 2d 271, 317 (D.D.C. 2004) (Lamberth, J.) (briefing papers are protected), *rev'd in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005); *Mapother v. Dep't of Justice*, 3 F.3d 1533 (D.C. Cir. 1993) ("Exemption 5 was intended to protect not simply deliberative material, but also the deliberative process of agencies. When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process, and is exempt from disclosure under exemption 5 of FOIA.") (citations omitted); *Judicial Watch v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 173 (D.D.C. 2004) (Lamberth, J.) (holding the following documents protected by the deliberative process privilege: draft agreement with foreign country, draft letter from agency official to foreign country, issues papers written to assist agency decisionmakers).

E.     **The Agency Properly Invoked Exemption 6.**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  *Lepelletier v.  FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for . . . [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'"  *Lepelletier*, 164 F.3d at 46, *citing U.S. Dep't of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) (citations omitted).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 46, *quoting FLRA*, 510 U.S. at 497; *see also Reporters Comm.*, 489 U.S. at 773.

Here, the Department utilized this exemption to withhold names and contact information of Department employees.  *See supra* at 8-9.  This application is clearly proper under applicable precedent particularly where, as here, numismatists have already lodged personal attacks in

public forums against Department employees for doing their jobs under the CPIA.  *See, e.g.,* *Schoenman v. FBI*, 573 F. Supp. 2d 119, 145 (D.D.C. 2008) (Kollar-Kotelly, J.) (State's withholding of names of FBI officials and third parties under Exemption 6 was proper because, "[a]s this withheld information 'applies to a particular individual, it meets the threshold test for FOIA Exemption 6'"); *Barnard v. Dep't of Homeland Sec.*, --- F. Supp. 2d ---, 2009 WL 305070, *10 (D.D.C. Feb. 9, 2009) (Kollar-Kotelly, J.) (holding that agency properly redacted agency employees' names noting that "individuals generally have a privacy interest that encompasses their names and addresses," and "there is no question that Exemption 6 is designed to protect the names of individuals regardless of the particular file in which they may be found"), *citing Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 876 (D.C. Cir. 1989); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (agency properly withheld names and addresses of agency employees who worked on a regulatory action, noting that the public interest in the names and addresses of those involved "is not immediately apparent"); *Horowitz v. Peace Corps.*, 428 F.3d 271, 279 (D.C. Cir. 2005), *citing U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 502 (1994) (holding that (b)(6) shielded the names and home addresses of agency employees from being released under FOIA).

F.   **The Agency Properly Invoked Exemption 7(C).**

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  See also 5 U.S.C. § 552a (j)(2) (Privacy Act).   The Supreme Court affirmed the broad scope of Exemption 7(C) in *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).  Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider

whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776-780 (1989).

In interpreting this exemption, courts employ a balancing test weighing the privacy interests of the affected individuals against the public interest in disclosure of the information. *See, e.g., Oguaju v. United States*, 288 F.3d 448 (D.C. Cir. 2002); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice*, 475 F.3d 381, 386-87 (D.C. Cir. 2007) (citations omitted). It is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis. *Ditlow v. Schultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975).

Here, the Department properly withheld from disclosure the names and contact information of CBP employees in emails with a law enforcement purpose, which is consistent with applicable precedent. *See Canning v. U.S. Dep't of Justice*, 567 F. Supp. 2d 85, (D.D.C. 2008) (Kessler, J.) ("The names of law enforcement officers who work on criminal investigations have, traditionally, been protected from release by Exemption 7(C)."), *citing Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992), *and Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487-88 (D.C. Cir. 1980); *Gavin v. SEC*, Civ. A. No. 04-4522, 2007 WL

2454156, *10-11 (D. Minn. Aug. 23, 2007) (redaction of names, contact information and account numbers was proper under Exemption 7(C)).

## IV.    ALL REASONABLY SEGREGABLE MATERIAL HAS BEEN RELEASED TO PLAINTIFF

FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); *Mead Data Central v. U.S. Dep't of the Air Force*, 566, F.2d 242, 260 (D.C. Cir. 1977). In order to demonstrate that all reasonably segregable material has been released, all that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261, n.55.

The Grafeld Declaration specifically notes that the responsive documents "have been carefully reviewed for reasonable segregation of non-exempt information, and [Ms. Grafeld has] determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law."  Grafeld Dec. at pp. 78-79, Mot. Ex. A.  This review is evident from the fact that the Department released a substantial number of documents in full and a sizeable number of documents in part. Consequently, the Department has fulfilled the requirements of reasonable segregability in its release.

*    *    *

- 24 -

## CONCLUSION

For the foregoing reasons, summary judgment is appropriate on Plaintiffs' claims in

Defendant's favor.  A proposed order is attached.

Dated: March 13, 2009
        Washington, DC

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


        /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


        /s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*