# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Ancient Coin Collectors Guild, et al.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of State,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 07-2074 |

DECLARATION OF MARGARET P. GRAFELD

I, Margaret P. Grafeld, declare and state as follows:

I am the U.S. Department of State's (the Department's) Information and Privacy Coordinator and the Director of the Department's Office of Information Programs and Services ("IPS"). In these capacities, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been in the employ of the Department of State since 1974, and have served with the Department's Information Access Program for most of my tenure

with the Department.   I am authorized to classify and
declassify national security information pursuant to Executive
Order ("E.O.") 12958, as amended, and Department of State
regulations set forth in 22 C.F.R. §§ 9.7, 9.14.   I make the
following statements based upon my personal knowledge, which
in turn is based on a personal review of the records in the
case files established for the processing of the subject
requests, and upon information furnished to me in the course
of my official duties.   I have read the complaint filed by the
Plaintiffs in the above-captioned matter, and I am familiar
with efforts of Department personnel to process the subject
requests.

The core responsibilities of IPS include:   records access
requests made by the public (under the FOIA, the Privacy Act,
and the mandatory declassification review requirements of E.O.
12958, as amended, or the Ethics in Government Act), members
of Congress, and other government agencies, and those that
have been made pursuant to judicial processes, such as
subpoenas, court orders, and discovery requests; records
management; privacy protection; national security
classification management and declassification review;
corporate records archives management; research; operation and
management of the Department's Library; and the application of
technology that supports these activities.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

The purpose of this declaration is to describe the
Department's handling of Plaintiffs' seven FOIA requests
submitted to the Department that are still at issue in this
lawsuit.  A description of the material aspects of the
Department's administrative processing of these requests
follows, as well as a detailed description of the information
withheld and applicable FOIA exemptions claimed.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFFS' REQUESTS

All in all, in response to Plaintiffs' seven requests,
the Department located a total of 127 documents.  Of these, 65
documents were released in full, 39 documents were withheld in
part, and 23 documents were withheld in full.  A description
of the correspondence regarding these FOIA requests is below,
followed by descriptions of the Department's search for
responsive records, the classification of certain records, the
exemptions applied, and the particular withholdings.

### REQUEST NO. 200402941 (Count I of the Complaint)

By faxed letter dated July 30, 2004 (Exhibit 1), Peter K.
Tompa, counsel for the International Association of
Professional Numismatists (IAPN) and the Professional
Numismatists Guild (PNG) (hereinafter, along with the Ancient
Coin Collectors Guild (ACCG), referred to as "Plaintiffs"),

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

requested four specific Cultural Property Advisory Committee (CPAC or Committee) reports related to import restrictions on historical material originating in Cyprus and Italy. Plaintiffs stated their willingness to pay applicable fees.

By letter dated August 3, 2004 (Exhibit 2), IPS acknowledged receipt of the request and assigned it case control number 200402941. IPS notified Plaintiffs that their request was being processed; they would be notified when responsive material was retrieved and reviewed; the cut-off date for retrieving records was the date that the search was initiated; they were in the fee category of "commercial use" requesters; and the Department's response would likely be delayed.

By two letters dated October 11, 2007 (Exhibit 3), Plaintiffs' counsel requested the same information for each of his clients (IAPN, PNG, and ACCG) that any of the other clients had sought in the FOIA requests at issue in Counts I through VIII of the request.

By letter dated May 9, 2008 (Exhibit 4), IPS informed Scott Hodes, counsel for Plaintiffs, of the results of the Department's search and review of responsive records.

REQUEST NO. 200501372 (Count II of the Complaint)

By faxed letter dated March 29, 2005 (Exhibit 5),
Plaintiffs requested a copy of "the original Chinese Request
for import restrictions pursuant to the 1970 UNESCO Treaty, in
Chinese, which Request formed the basis of the PUBLIC SUMMARY"
of the request on the Department's website.  Plaintiffs agreed
to pay all applicable fees.

By letter dated April 15, 2005 (Exhibit 6), IPS
acknowledged receipt of the request, assigned it case control
number 200501372 and erroneously advised Plaintiffs that the
Department did not maintain the records sought, instead
directing Plaintiffs to the United Nations Educational,
Scientific and Cultural Organization (UNESCO).  After further
communications with Plaintiffs, the Department reinstituted
its search for responsive material.  By letter dated
August 23, 2006 (Exhibit 7), the Department informed
Plaintiffs that six documents had been located, that they had
to be withheld in full under FOIA exemption (b)(1), and that
the Department had now completed processing of case number
200501372.

By letter dated August 29, 2006 (Exhibit 8), Plaintiffs
appealed "the denial of their March 29, 2005 request for a
copy of the Chinese Request for import restrictions on
cultural artifacts in the original Chinese."

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

By letter dated September 12, 2006 (Exhibit 9), IPS acknowledged receipt of Plaintiffs' appeal by the Chairman of the Appeals Review Panel.

By letter dated April 23, 2008 (Exhibit 10), IPS informed Plaintiffs that action on the administrative appeal had been overtaken by litigation in federal court and the appeal had been closed.

By letter dated May 9, 2008 (Exhibit 11), IPS advised Plaintiffs that their administrative appeal had been overtaken by litigation and had been terminated. Nevertheless, IPS advised Plaintiffs that the Department had reexamined the records at issue and confirmed that they must be withheld in full. In this letter, and again in a subsequent letter dated June 27, 2008 (Exhibit 12), IPS also advised that the Department did not have an "original Chinese Request for import restrictions pursuant to the 1970 UNESCO Treaty, in Chinese, which Request formed the basis of the public summary that the Department published," because the original request from the Chinese government that formed the basis of the public summary that the Department created and published was in English, not Chinese. Although the People's Republic of China initially attempted to submit its request in Chinese, the Department rejected it and informed the Chinese government that the Department could only accept a request in English.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

Accordingly, the Chinese government submitted an English-language request on May 27, 2004, which formed the basis for the Department's notice in the Federal Register (69 Fed. Reg. 53970) and all subsequent action.  Although a copy of the initial Chinese-language attempt at a request was located, it did not constitute an official request and was never considered or used by the Department in any way.

### REQUEST NO. 200502767 (Count III of the Complaint)

By letter dated June 27, 2005 (Exhibit 13), Wayne G. Sayles, Executive Director of ACCG ("Plaintiffs") submitted a request on behalf of ACCG for certain records concerning the People's Republic of China's request for import restrictions and the inclusion of coins in the list of items proposed to be restricted during the period June 26, 2004 - December 28, 2004.  Plaintiffs agreed to pay all applicable fees and requested expedited processing.

By faxed letter dated July 6, 2005 (Exhibit 14), Plaintiffs amended the June 27, 2005 request by expanding the time frame for the requested records to March 27, 2004 - December 28, 2004.

By letter dated September 15, 2005 (Exhibit 15), IPS acknowledged receipt of the request and assigned it case control number 200502767.  IPS informed Plaintiffs that

additional information was needed to process the request,
specifically, the circumstances leading them to believe the
Department held the records sought.  IPS noted Plaintiffs'
willingness to pay applicable fees and advised them of their
inclusion in the "all other" fee category.  IPS further
advised Plaintiffs that their case had been closed and if they
wished to pursue the request they should send the Department a
new request that included the additional information needed.

By letter dated September 19, 2005 (Exhibit 16),
Plaintiffs inquired about the status of their request.

Pursuant to follow-up conversations and correspondence
between IPS and Plaintiffs, IPS re-opened the request and
informed Plaintiffs of the status by letter dated November 17,
2005 (Exhibit 17).  By letter dated March 15, 2006 (Exhibit
18), Plaintiffs were advised that the Department's searches
had resulted in a "no record" finding and of the right to
appeal this determination.

By letter dated April 17, 2006 (Exhibit 19) to the
Chairman of the Appeals Review Panel, Plaintiffs appealed the
Department's "no record" response.

By letter dated May 1, 2006 (Exhibit 20), IPS
acknowledged the receipt of Plaintiffs' appeal by the Chairman
of the Appeals Review Panel.  As a result of this litigation,
the Department has closed this appeal.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

By letter dated May 9, 2008 (Exhibit 21), IPS confirmed
that no responsive records were located, even in additional
searches that had been recently undertaken in an abundance of
caution.  In this letter IPS also clarified that, based on the
original request letter, the Department interpreted the scope
of the request as seeking only communications between the
outside archeological community and CPAC staff.  Plaintiffs
have not communicated any disagreement with this
interpretation.

### REQUEST NO. 200600298 (Count VI of the Complaint)

By letter dated January 20, 2006 (Exhibit 22), Plaintiffs
requested "The Report of the Cultural Property Advisory
Committee (CPAC) and any Dissents that led to the Extension of
Import Restrictions on Certain Categories of Archaeological
Material Representing the Pre-Classical and Imperial Roman
Periods of Italy (Public Meeting Date:  September 8, 2005)."
Plaintiffs stated their willingness to pay up to $500.

By letter dated January 30, 2006 (Exhibit 23), IPS
acknowledged receipt of the request, assigned it case control
number 200600298, and advised that unusual circumstances might
arise for extending the time limit within which to respond.

By letter dated May 9, 2008 (Exhibit 24), IPS advised
Plaintiffs of the results of the Department's search and
review of responsive records.


REQUEST NO. 200704168 (Count VII of the Complaint)

By letter dated July 25, 2007 (Exhibit 25), Plaintiffs
requested records in five categories related to extension of
import restrictions to Cypriot coins as reported in 72 Fed.
Reg. 38470-74 (July 13, 2007).  Plaintiffs stated their
willingness to pay up to $1,000 for this request.

By letter dated November 1, 2007 (Exhibit 26), IPS
acknowledged receipt of the request, assigned it case control
number 200704168, and notified Plaintiffs that their request
was being processed; the cut-off date for retrieving records
was the date the search was initiated unless they provided a
different date; they were in the "all other" fee category;
unusual circumstances might arise for extending the time
limit; and their fee agreement was noted.

In response to Defendant's counsel's email of April 15,
2008 (Exhibit 27), noting that the search as provided would
yield records of questionable utility, Plaintiffs' counsel
narrowed the scope of Plaintiffs' request by letters or emails
to Defendant's counsel dated April 17, 2008 (Exhibit 28),
April 23, 2008 (Exhibit 29), and June 13, 2008 (Exhibit 30).

By letter dated May 9, 2008 (Exhibit 31), IPS advised
Plaintiffs of the results of the Department's search and
review of responsive records.

In its letter dated June 27, 2008 (Exhibit 12), IPS
informed Plaintiffs that additional material responsive to
this request was located and being released in full.

### REQUEST NO. 200704596 (Count VIII of the Complaint)

By letter dated August 1, 2007 (Exhibit 32), Plaintiffs
requested a "copy of any request by the Republic of Cyprus for
import restrictions on coins pursuant to Article 9 of the 1970
UNESCO Convention made in or about January 2007," and agreed
to pay up to $25.00 for this request.

By letter undated in our files (Exhibit 33), IPS
acknowledged receipt of the request and assigned it case
control number 200704596 and notified Plaintiffs that the
request was being processed; the cut-off date for retrieving
records was either a date provided in the request or the date
the search was initiated; Plaintiffs were in the "all other"
fee category; unusual circumstances might arise for extending
the time limit within which to respond; and the fee agreement
was noted.

By letter dated May 9, 2008 (Exhibit 34), IPS informed Plaintiffs of the results of the Department's search and review of responsive records.

### REQUEST NO. 200706194 (Count IX of the Complaint)

By letter dated October 11, 2007 (Exhibit 35), Plaintiffs requested copies of documents in nine categories relating to import restrictions on material from Cyprus, agreed to pay applicable fees, and asked to be notified if estimated fees exceeded $100.

By letter dated May 9, 2008 (Exhibit 36), IPS informed Plaintiffs of the results of the Department's search and review of responsive records.

### REQUEST NOS. 200402941 (Count I), 200501372 (II), 200502767 (III), 200503753 (IV), 200600298 (VI), 200704168 (VII), 200704596 (VIII), and 200706194 (IX)

By letter dated May 22, 2008 to the Assistant U.S. Attorney representing Defendant (Exhibit 37), counsel for Plaintiffs advised of issues that remained to be resolved. Among other things, Plaintiffs noted that they were no longer contesting the Department's actions in response to request number 200503753 (Count IV of the Complaint).

By letter dated June 27, 2008 (Exhibit 12), IPS addressed the issues raised in Plaintiffs' May 22, 2008 letter and in cooperative ongoing discussions with Plaintiffs aimed at resolving the outstanding issues without the need for litigation.  This letter informed Plaintiffs that a reexamination of IPS' searches was in progress.

By letter dated July 16, 2008 (Exhibit 38), Plaintiffs responded to IPS' June 27, 2008 letter, requested the status of the additional searches, and notified IPS of withholdings Plaintiffs intended to contest or would not contest.

By letter dated September 8, 2008 (Exhibit 39), IPS advised Plaintiffs of the results of the reexamination of its searches and review of additional records responsive to the requests numbered 200704168 and 200706194.

By letter dated September 11, 2008 (Exhibit 40), Plaintiffs advised the Defendant of their ongoing concerns related to the Department's response to Plaintiffs' FOIA requests.

By letter dated December 2, 2008 (Exhibit 41), IPS advised Plaintiffs that it had identified additional releasable information and corrected a small number of mis-markings on information that continued to merit withholding.

After consultation with the Government of Cyprus, IPS advised Plaintiffs in its letter dated March 13, 2009 (Exhibit 42), that additional information was being released.

## II. THE SEARCH PROCESS AND DEPARTMENT RECORD HOLDINGS

The Department's searches for records responsive to Plaintiffs' seven FOIA requests at issue in this lawsuit were designed to uncover all responsive records.  When a FOIA request is received, IPS evaluates the request and determines which offices and/or bureaus, overseas posts, or other records systems within the Department may reasonably be expected to contain the information requested.  This determination is based on the description of records set forth in the request letter, and is tempered by any specified limitation on applicable fees and/or any specified limitation on records systems to be searched.  It also requires a familiarity with Department records system holdings, applicable records disposition schedules, and the substantive and functional mandates of the numerous offices within the Department, as well as its Foreign Service posts and missions overseas.

Office/Post Files

Each office within the Department, and each Foreign Service post, maintains active working files concerning

foreign policy and other functional matters related to the daily operations of that office, post, or mission.   These files consist generally of working copies of documents as well as other specialized documents prepared by or furnished to the office or Foreign Service post in connection with the performance of its official duties.   The searches of these files were performed by individuals employed within those organizations who are familiar with the subject matter of Plaintiffs' requests.

In all seven of Plaintiffs' requests, thorough searches were conducted of the files of the Bureau of Educational and Cultural Affairs (ECA).   ECA is generally responsible for administering the Department's educational and cultural exchange activities with other countries, including maintaining relationships with other Federal agencies, private groups, and non-governmental organizations and institutions in support of educational and cultural exchange programs.   ECA is also responsible for administering certain provisions of the Fulbright-Hays Act (22 U.S.C. § 2451 et seq.) and other legislation relating to worldwide educational and cultural exchange programs.

Most relevant for present purposes, ECA is the Department bureau that houses the Cultural Heritage Center, which works on issues arising under the 1970 UNESCO Convention on the

Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (the Convention), and the Convention's implementing legislation, the Convention on Cultural Property Implementation Act (19 U.S.C. § 2601 et seq.; CPIA). Most statutory cultural property responsibilities were originally delegated to the U.S. Information Agency (USIA) but now rest with the Department as a result of the consolidation of USIA and State in October 1999. ECA staff in the Cultural Heritage Center work closely with the Cultural Property Advisory Committee (CPAC or Committee), which was established to advise the President and the Department on issues related to the application of the Convention. To assist the Committee, ECA staff in the Cultural Heritage Center review requests submitted by foreign governments for assistance under the Convention. The staff also conducts research and creates briefing materials to assist the Committee in the performance of its duties. In addition, the ECA staff in the Cultural Heritage Center prepares Committee meeting minutes, drafts Committee reports, and receives public comments related to the Committee's work.

The Cultural Heritage Center maintains shared files of paper and electronic documents related to requests pursuant to the CPIA. Both the paper and the electronic files are

organized by country.  Records about some ongoing issues are maintained in working files maintained by the staff member handling the issue; these too are organized by country.  The searches for records responsive to Plaintiffs' FOIA requests were conducted by all ECA staff involved in issues regarding China, Cyprus, and Italy, including the involved cultural property analysts and the Center's executive director.  Each of these individuals has an email account containing email records, and there is also a shared email account for receiving general inquiries.

In many cases, Plaintiffs' requests sought specific documents:  requests submitted by foreign governments, Committee reports and/or dissents, reports to Congress, and communications to and from the Department official charged with making the final decision about cultural property import restrictions.

In response to the requests, ECA staff manually searched all the extant central files concerning the relevant country (China, Cyprus, or Italy), including both the files stored in paper form and those stored electronically.  Staff and the executive director also manually searched their working files on the relevant countries and searched their emails as well as the archived emails of a former staff member involved in some of the issues and of the shared email account.  These searches

involved sorting emails on the relevant country chronologically, and scanning the name of the sender, the name of the recipient, and the subject line. ECA staff also conducted an automated search for email records, using "coin," "coins," and the last names of individuals mentioned in the requests as the search terms. Nothing that the staff located indicated the likely existence of additional materials responsive to any of the Plaintiffs' FOIA requests, nor any additional ECA records that needed to be searched. Except for some of the records responsive to request number 200706194 and item 5 of request number 200604168 (correspondence to attorneys in the Office of the Legal Adviser involving a recusal request), all of the records responsive to Plaintiffs' FOIA requests at issue in this lawsuit were located through these searches in ECA.

With their knowledge of the nature of the documents requested and of the records generated in the course of the activities and issues underlying the requests, ECA and IPS personnel consulted in order to determine what other bureaus, offices, or Foreign Service posts would have a reasonable possibility of possessing additional responsive materials. All such bureaus, offices, and posts conducted searches, as described below.

The Department also searched the records of the Office of
the Legal Adviser (L) for materials responsive to the FOIA
requests numbered 200502767 (Count III), 200704168 (Count
VII), and 200706194 (Count IX). Specifically, attorneys in
two offices within L searched their records for responsive
material. The first L office, the Office of Public Diplomacy
(L/PD), advises ECA on cultural property matters. L/PD
searched all locations within its paper and electronic files
with any reasonable likelihood of retaining additional
responsive information and found none. This is not surprising
since: a) documentation upon which L/PD relies in advising
Heritage Center staff and/or the Committee is provided
primarily by ECA, and b) documentation reflecting final ECA
Assistant Secretary determinations and/or other Assistant
Secretary or Under Secretary decisions would contain Heritage
Center staff input and be copied to appropriate staff members.
The second L office, L/Ethics, advises the Department on
ethical issues. L/Ethics searched for the correspondence
requested in item 5 of request number 200704168, regarding a
conflict-of-interest allegation, and located responsive
materials.

Request number 200706194 involves records related to an
agreement to impose import restrictions on archaeological
material and ethnological material from Cyprus including

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

coins.   Because the Department's role included a July 19, 2007

ceremonial exchange of diplomatic notes hosted by the then

Under Secretary for Political Affairs and attended by the

Ambassador of the Republic of Cyprus, the Department also

searched the records of the Bureau of European and Eurasian

Affairs (EUR) and the Bureau of Public Affairs (PA). EUR is

responsible for conducting U.S. foreign relations with

countries in the European and Eurasian geographic regions

(including Cyprus), as well as relations with the North

Atlantic Treaty Organization (NATO), Organization for Security

and Cooperation in Europe (OSCE), Organization for Economic

Cooperation and Development (OECD), European Union (EU), and

other transatlantic and European international organizations.

PA is responsible for articulating U.S. foreign policy

objectives to foreign and domestic audiences and for serving

as a primary liaison with the American public, state and local

governments, and the media.   The ceremony on July 19, 2007

between the U.S. and the Republic of Cyprus cited in

Plaintiffs' request was attended by the Ambassador of Cyprus

and hosted by the Department's then Under Secretary for

Political Affairs.   The searches of EUR and PA files were

performed by individuals employed within those organizations

who are familiar with the subject matter of Plaintiffs'

requests.   These searches located responsive material relating

to the ceremony, most of which appears to have been improvised based on these records.

The Department also searched the files of its Executive Secretariat.  The Department's Executive Secretariat maintains centralized records of the Secretary of State and of certain other high-ranking Department officials, including the Under Secretary for Political Affairs.  This records system is a unique collection of material used to support the work of the highest levels of the Department.  The search of this records system was performed by individuals employed within that organization who are familiar with the organization of the records maintained there as well as the subject matter of request number 200706194, for documents related to an agreement to impose import restrictions on coins of Cypriot types, including the July 19, 2007 signing ceremony hosted by the Under Secretary for Political Affairs.  The search of the records of the Executive Secretariat included records of the Under Secretary for Political Affairs.  This search yielded no responsive material, but indicated a retired box of the Under Secretary's records that had a reasonable possibility of containing additional responsive material.  (The search of this material is described under "Retired Office/Post Files," below.)

In an abundance of caution, in request no. 200502767,
which was for copies of any communications between Committee
staff and members of certain organizations concerning the
People's Republic of China's request for import restrictions
and coins, the Department also searched the records of the
United States Embassy in Beijing, and the Bureau of East Asian
and Pacific Affairs (EAP).  EAP is responsible for conducting
U.S. foreign relations with countries and Freely Associated
States in the East Asian and Pacific geographic regions
(including China).  In general, U.S. embassies overseas, such
as the Embassy in Beijing, carry out activities that further
the conduct of the foreign relations of the U.S. government.
The searches of these files were performed by individuals
employed within those organizations who were familiar with the
subject matter of Plaintiffs' requests.  As expected, given
ECA's primary role in the underlying issues, no responsive
material was located in these searches.  The United States
Embassy in Beijing was specifically consulted as a result of
Plaintiffs' repeated insistence upon the existence of a
Government of China request in the Chinese language, which was
found among ECA's materials.  The United States Embassies in
Nicosia and Rome were not searched because Cyprus and Italy
relied on their respective embassies in Washington to interact

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

with the Department on the issue of extending cultural
property agreements.

## Retired Office/Post Files

Records are transferred to and stored at an off-site
storage facility when they are no longer needed operationally
by an office and/or bureau or post, which generally, though
not mandatorily or uniformly, takes place after two to three
years.  While they remain under the Department's control, IPS
is responsible for conducting searches of retired files in
response to FOIA and other types of requests.  Retired
(inactive) office and post files consist generally of working
copies of documents, information copies of documents
maintained in the Central File, as well as other specialized
documents prepared by or furnished to the office or Foreign
Service post in connection with the performance of its
official duties.  Retired records manifests are used to
document the contents of retired files, copies of which are
maintained at IPS for analysts to use in identifying
potentially responsive retired files.  Bureaus, offices, and
posts conducting searches in response to FOIA requests may
also provide IPS with information about which retired files
need to be searched.  Periodically, retired files are screened

and documents are destroyed according to authorized
disposition schedules.

Both ECA and the Office of the Legal Adviser informed IPS
that no responsive records had been retired from their
offices.  IPS examined the retired records manifests for
records falling within the time period covered in Plaintiffs'
request for records retired by the United States Embassy in
Beijing (request no. 200502767) and records retired by the
Office of the Under Secretary for Political Affairs (for
request no. 200706194).  In the latter case, one box from the
records retired by the Office of the Under Secretary for
Political Affairs containing speeches/remarks from
January 26 - December 18, 2007 was retrieved and its contents
were thoroughly examined.  The search of retired files was
conducted by personnel in IPS who are familiar with the
subject matter of Plaintiffs' requests.  This search yielded
no responsive documents.

Central Foreign Policy File/State Archiving System (SAS)

The Central Foreign Policy File (or "Central File") is
the Department's primary centralized records system and
contains documents of a substantive nature that establish,
discuss, or define foreign policy, set precedents, or require
action or use by more than one office.  Among other things,

the Central File includes official record copies of almost all
incoming and outgoing Departmental telegrams between the
Department and Foreign Service posts as well as other select
substantive correspondence documents including diplomatic
notes, correspondence to and from the White House, members of
Congress, and other federal agencies, position papers and
reports, memoranda of conversations, and interoffice
memoranda. Searches of the Central File are conducted through
an automated interface known as SAS (State Archiving System),
which searches the full text of approximately 30 million
telegrams and the more recent of the other substantive
correspondence documents in the Central File. For all
documents in the Central File that are not directly full-text
searchable through SAS, including the older correspondence
documents, SAS will search the text of a customized index
reference that directs a searcher to a full copy of the
document. Thus, a SAS search will encompass all documents in
the Central File.

Searches of the Central File were conducted in request
numbers 200502767 and 200600298 and performed by researchers
in IPS who are familiar with the subject matter of Plaintiffs'
requests. These searches were conducted out of an abundance
of caution, as Plaintiffs' requests seek records of the sort
that would not typically be maintained in the Central File.

Responsive records, to the extent they exist, would ordinarily be located in the program office that handles cultural property issues. The Department's searches of the Central File used terms and names set forth in the relevant requests. For example, searches were conducted using names of individuals identified by Plaintiffs, relevant phrases identified by Plaintiffs (such as Cultural Property Advisory Committee), and terms including coins and import restriction. As expected, the searches of the Central File did not yield any documents responsive to these requests.

Results of Searches/Reviews of Responsive Records in Requests

As noted above, in response to Plaintiffs' seven requests, the Department located a total of 127 responsive documents. Of these, 53 documents were released in full, 33 documents were withheld in part, and 41 documents were withheld in full. Descriptions of the classification of certain documents, the exemptions applied, and the denied documents are below. There are no other places that if searched would have a reasonable likelihood of containing additional responsive material.

### III. EXEMPTIONS CLAIMED

FOIA Exemption (b)(1) - Classified Information

Title 5 U.S.C. Section 552 (b)(1) states that the FOIA does not apply to matters that are:

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . .

State Department information in those documents to which the (b)(1) exemption has been applied continues to meet the classification criteria of Executive Order 12958, as amended.[1]

The information in documents in this case withheld under exemption (b)(1) is classified Confidential.

Section 1.2(a)(3) of E.O. 12958 states that:

"Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

Section 6.1(j) of E.O. 12958 states that:

"Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility and provenance of that information.

---

[1] All references to Executive Order 12958 are to that Order as amended by Executive Order 13292.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

Section 1.4 of E.O. 12958 states in pertinent part that:

"Information shall not be considered for classification unless

it concerns: . . . (b) foreign government information; . . .

[or] (d) foreign relations or foreign activities of the United

States, including confidential sources . . . ."

### Section 1.4(b) – Foreign Government Information

Section 6.1(r) of E.O. 12958 states in pertinent part

that:

> "Foreign government information" means:
> (1) information provided to the United States
> Government by a foreign government or
> governments, an international organization of
> governments, or any element thereof, with the
> expectation that the information, the source of
> the information, or both, are to be held in
> confidence;
> (2) information produced by the United States
> Government pursuant to or as a result of a
> joint arrangement with a foreign government or
> governments, or an international organization
> of governments, or any element thereof,
> requiring that the information, the
> arrangement, or both, are to be held in
> confidence . . . .

An essential understanding that governs all diplomatic

intercourse, and that constitutes an essential element in all

successful diplomatic exchanges, is that confidentiality will

be observed.  Mutual trust in this realm is vital for the

development of cordial and productive diplomatic relations.

Unwillingness or inability to maintain confidentiality in

diplomatic exchanges would inevitably chill our relations with

other countries and lead to diminished access to sources of

information important to the successful formulation and
implementation of U.S. foreign policy, and thereby would
damage the national security.

The ability to obtain information from foreign
governments is essential to the formulation and successful
implementation of U.S. foreign policy.  Disclosure of foreign
government information provided in confidence, either
voluntarily by the Department or by order of a court, would
cause foreign officials to believe that U.S. officials are not
able or willing to observe the confidentiality expected in
such interchanges.  Governments would become less willing in
the future to furnish information important to the conduct of
U.S. foreign relations, and in general less disposed to
cooperate with the United States in the achievement of foreign
policy objectives of common interest.

In the current case, the specific information concerns
the ability to conduct successful negotiations on issues of
mutual concern to the United States and other countries.  The
risk of harm to U.S. foreign relations is particularly clear
where, as here, each of the foreign governments that provided
information has expressly reached a joint arrangement with the
United States whereby information confidentially exchanged
with it relating to import restrictions under the Convention
cannot be publicly released, and materials such as the

original requests submitted to the Department of State under the Convention contain such confidential information.

Information that was received from or provided to foreign government officials in the course of negotiations on the extension and modification of the MOU on protecting Cypriot antiquities was originally withheld from 43 documents on the basis of an express mutual understanding regarding information exchanged in confidence.  Notwithstanding this understanding, and in view of the fact that the negotiations had been successfully concluded, the Department took the additional step in this case of requesting that the Government of Cyprus (GOC) review materials that it had provided for confirmation of continued sensitivity.  The GOC replied to this request through its Ambassador in Washington by letter dated February 12, 2009.  The Cypriot Ambassador informed the Department that the GOC would now have no objection to the release of some documents.  The Cypriot Ambassador also informed the Department that the GOC did not wish the disclosure of other documents.

In light of the clearly stated views of the GOC, disclosure of information that the GOC expressly desired not be released "reasonably could be expected to result in damage to the national security" (Section 1.1(a)(4), E.O. 12958). The withheld information in these documents is currently and

properly classified pursuant to Section 1.4(b) of E.O. 12958
(information concerning foreign government information) and
is, therefore, exempt from disclosure under FOIA exemption
(b)(1).

Section 1.4(d) - Foreign Relations or
Foreign Activities of the U.S.

Information withheld from some documents described in
this declaration is classified under Section 1.4(d) of E.O.
12958, which protects information concerning foreign relations
or foreign activities of the United States.  The withheld
material concerns the protection of information relating to
negotiations wherein the negotiating parties agreed that the
information exchanged in the course of the negotiations would
be treated as confidential.  Release of this information
without the consent of our negotiating partner has the
potential to damage our relations with that government and to
harm the climate for future negotiations with that government
on this and other subjects of mutual concern, including issues
with potential impact on NATO allies such as Greece and
Turkey.  Additionally, some of the withheld information might
be used by those hostile to U.S. policies in the area to
attempt to show that the United States cannot be seen as an
honest broker in conflict resolution.  The withheld
information is currently and properly classified pursuant to

Section 1.4(d) of E.O. 12958 and is, therefore, exempt from disclosure under FOIA exemption (b)(1).

### FOIA Exemption (b)(2) – Internal Records

Title 5 U.S.C. Section 552(b)(2) states that the FOIA does not apply to matters that are:

> related solely to the internal personnel rules and practices of an agency.

Exemption (b)(2) encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of a legal requirement, sometimes referred to as "high 2" information.

The use of exemption (b)(2) in this case involves "low 2" information. The "low 2" information consists of internal file numbers. This type of administrative marking has no value to the public at large. The withholding of this information is, therefore, proper under exemption (b)(2).

### FOIA Exemption (b)(3) – Exempted by Statute

Title 5 U.S.C. Section 552(b)(3) states that the FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than Section 552(b) of this title), provided that such statute (A) requires the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for

    withholding or refers to particular types of
    matters to be withheld . . . .

    Among the statutes that bring information under
this exemption is Section 306 of the Convention on
Cultural Property Implementation Act (CPIA), which is
codified at 19 U.S.C. § 2605.  As described above, the
CPIA was passed to implement the UNESCO Convention on
the Means of Prohibiting and Preventing the Illicit
Import, Export, and Transfer of Ownership of Cultural
Property.

    The CPIA establishes the Cultural Property Advisory
Committee, which consists of eleven individuals representing
the interests of museums; experts in the fields of
archaeology, anthropology, ethnology, or related areas;
experts in the international sale of archaeological,
ethnological, and other cultural property; and members who
represent the interest of the general public.  The Committee
is charged under the CPIA with recommending to the ECA
Assistant Secretary, the President's designated decision-
maker, whether four statutory prerequisites for import
restrictions on endangered archaeological and ethnological
material have been met and whether import restrictions are,
therefore, warranted.  The ECA Assistant Secretary then
considers the Committee's recommendation, as well as other

relevant information, before determining whether import

restrictions are warranted.  If they are, the ECA Assistant

Secretary seeks authority from the Under Secretary for Public

Diplomacy and Public Affairs to conclude an agreement

concerning the imposition of import restrictions (E.O. 12555 §

2(c)).  The Department of Homeland Security promulgates the

import restrictions.

In particular, the Department has relied on Section 306

of the CPIA as a statute that falls within exemption (b)(3) of

the FOIA.  Subsection 306(h) of the CPIA, 19 U.S.C. § 2605(h),

provides:

> FEDERAL ADVISORY COMMITTEE ACT.-The provisions of
> the Federal Advisory Committee Act (Public Law
> 92-463; 5 U.S.C. Appendix I) shall apply to the
> Committee except that the requirements of
> subsections (a) and (b) of section 10 and section
> 11 of such Act (relating to open meetings, public
> notice, public participation, and public
> availability of documents) shall not apply to the
> Committee, whenever and to the extent it is
> determined by the President or his designee that
> the disclosure of matters involved in the
> Committee's proceedings would compromise the
> Government's negotiating objectives or bargaining
> positions on the negotiations of any agreement
> authorized by this title.

The President's authority to make such a determination

was delegated to the U.S. Information Agency (USIA) director

under E.O. 12555 § 1(i) of March 10, 1986, 51 F.R. 8475, as

amended by E.O. 13286 of February 28, 2003.  With the

consolidation of USIA and State in 1999, this authority then

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

fell to the Secretary of State and was eventually delegated to the ECA Assistant Secretary.  (Foreign Affairs Reform and Restructuring Act of 1998, as amended; Delegation of Authority No. 236-2, as amended (May 8, 2000)).

Both at USIA and at State, this determination has been evidenced through corresponding determinations by the official with delegated authority to close Committee meetings pursuant to this provision of the CPIA, as well as 5 U.S.C. 552b(c)(9)(B).  Although portions of Committee meetings at which foreign government requests are entertained for the first time are now open to the public, most Committee discussions consist of candid evaluations of foreign government information (including specific assertions of ongoing looting), and information obtained from the private sector or other government agencies, and/or resulting from ECA research on the Committee's behalf.  Such discussions are held in closed session so as not to interfere with the multi-step decision-making process and the ability to work with the foreign government requester in the possible negotiation of a bilateral agreement, if such course is warranted.

The Department and USIA have consistently determined that the disclosure of matters involved in Committee proceedings would compromise the U.S. Government's negotiation objectives and/or bargaining position on the negotiation of

agreements.  They have felt, further, that the statutory
composition of the Committee, by definition, includes "public
participation" in the process but that further participation,
as a rule, would be counter productive and harmful overall.
For example, if one were to share, through premature
disclosure of either an actual foreign government request or
derivative information presented to the Committee for its
consideration, one would be placing at risk of further looting
and pillage the very materials for which protection has been
sought.  Such an approach would be counter-intuitive.

Each time the ECA Assistant Secretary makes a
determination under subsection 306(h) that an issue can be
discussed only in a closed Committee meeting, a determination
has been made that disclosure of the matters involved would
compromise the Government's negotiating objectives or
bargaining positions in negotiations authorized by the CPIA.
All of the information withheld by the Department under CPIA
§ 306(h) in this case arises in the context of a matter about
which closed Committee proceedings took place.  Accordingly,
such information cannot be disclosed without harm to U.S.
interests.

Subsection 306(i)(1) of the CPIA, 19 U.S.C.
§ 2605(i)(1), reads:

(i) CONFIDENTIAL INFORMATION.- (1) IN GENERAL-
Any information (including trade secrets and
commercial or financial information which is
privileged or confidential) submitted in
confidence by the private sector to officers or
employees of the United States or to the
Committee in connection with the responsibilities
of the Committee shall not be disclosed to any
person other than to-
 (A) officers and employees of the United
States designated by the Director of the United
States Information Agency;
 (B) members of the Committee on Ways and
Means of the House of Representatives and the
Committee on Finance of the Senate who are
designated by the chairman of either such
Committee and members of the staff of either such
Committee designated by the chairman for use in
connection with negotiation of agreements or
other activities authorized by this title; and
 (C) the Committee established under this
title.

In consultations with ECA, my office has learned how the

Committee and the Department obtain the information necessary

to determine whether the United States should enter into

agreements relating to import restrictions on cultural

property.  That information comes from several sources,

including foreign governments (discussed above in the section

on exemption (b)(1)), the private sector, and the Department

itself.

I have been advised that members of the private sector

frequently share information with the Committee and the

Department on a confidential basis.  Those who collect, study,

and curate archaeological and ethnological material often

share their observations about how such material enters the
U.S.  These individuals provide this information with the
expectation of confidentiality, not least because the illicit
trade in cultural property involves significant, worldwide
criminal activity.

Members of the private sector also provide information
to ECA staff during research-gathering trips to the requesting
country.  Such research-gathering allows on-site inspections
of cultural property sites.  On-site inspections allow the
Department to learn about situations in which the pillaging of
cultural objects occurs, as well as foreign law enforcement
measures designed to prevent such acts.  The unauthorized
disclosure of this information could undermine the
Department's relationships with the private individuals who
provide this information.  Disclosure of the specific location
of sites subject to looting, for example, could cause further
looting of those or similar sites.

Subsection 306(i)(2) of the CPIA, 19 U.S.C.
§ 2605(i)(2), reads:

> (i) CONFIDENTIAL INFORMATION.- . . . (2)
> GOVERNMENTAL INFORMATION.- Information submitted
> in confidence by officers or employees of the
> United States to the Committee shall not be
> disclosed other than in accordance with rules
> issued by the Director of the United States
> Information Agency, after consultation with the
> Committee.  Such rules shall define the
> categories of information which require

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

restricted or confidential handling by such
Committee considering the extent to which public
disclosure of such information can reasonably be
expected to prejudice the interests of the United
States.  Such rules shall, to the maximum extent
feasible, permit meaningful consultations by
Committee members with persons affected by
proposed agreements authorized by this title.

Just as members of the private sector submit information
directly to the Department or the Committee with the
expectation of confidentiality, the Department itself submits
information to the Committee in confidence.  This information
may consist of information originally provided to ECA staff in
confidence, such as a request for import restrictions from a
foreign government or information provided in confidence by
individuals in the private sector.  It may also consist of
information developed by ECA staff, including analysis of a
request for the imposition of import restrictions, information
regarding a foreign government's ability to secure cultural
property sites, or other information provided in confidence.
The disclosure of this type of information could harm the
Department's ability to obtain reliable information in the
future.

In some circumstances, disclosure of this information
could reasonably be expected to undermine the very purpose of
the Convention and the CPIA, for disclosure of certain
information about the nature or location of the items under

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

consideration for import restrictions can affect the markets
for such items.  This might happen, for example, by causing a
run on the very archaeological, ethnological, or ecclesiastic
items that the Convention and the CPIA seek to protect, as
individuals rush to locate, sell, or collect cultural property
items before import restrictions take effect.

Information in nine documents in this case has
been withheld under CPIA § 306, in accordance with one
or more of the subsections described above.

### FOIA Exemption (b)(5) – Deliberative Process And Attorney-Client Privileges

Title 5 U.S.C. Section 552(b)(5) states that the FOIA
does not apply to:

> inter-agency or intra-agency memoranda or
> letters which would not be available by law to
> a party other than an agency in litigation with
> the agency . . . .

This exemption is meant to protect internal material that
would be subject to a litigation privilege.  One such
privilege, the deliberative process privilege, protects the
quality of agency decision-making by protecting the candid
views and advice of U.S. Government officials in their
predecisional deliberations respecting policy formulation and
administrative discretion.  Material containing such
deliberations in this case includes materials providing
recommendations from the Committee to the final decision-

makers on CPIA-related issues in the Department, or from Department employees to their superiors or colleagues in other executive branch agencies, as well as draft versions of documents later perfected in final form. Disclosure of such deliberative material or of predecisional material on which such deliberations are based would prejudice the free flow of internal recommendations and other necessary exchanges and would severely hamper the ability of responsible officials to formulate and carry out executive branch programs. Information has been withheld on the basis of the deliberative process privilege and this exemption. Disclosure of this information, which is predecisional and contains selected factual material inextricably intertwined with opinion, would inhibit candid internal discussion and the expression of recommendations and judgments regarding current problems and preferred courses of action.

In the case of some excisions from the Committee reports, described below in the "document descriptions" section, certain material that at first blush may appear factual in nature has been withheld where its very inclusion in the report represents the deliberative distillation of the information provided to the Committee into a selection of facts that compose the reasoning of the Committee in reaching its recommendation. For example, in analyzing whether a given

request merits import restrictions, a Committee report may highlight selected events because of what they tend to show about whether a given type of item has been pillaged or effectively protected.  Similarly, the Department is sometimes faced with distilling a request into a sample list of the representative types of material to which import restrictions may eventually apply.  Such a list effectively serves as a deliberative draft of the list and description of items for which import restrictions might ultimately be imposed.  Such lists are subject to change, and their disclosure could undermine both the Committee's and the Department's deliberative processes by altering the facts under analysis (e.g., the activity in the market for such items in anticipation of potential import restrictions) even as the deliberations are ongoing.

Material in other documents describes consultations undertaken in confidence between ECA employees and Department attorneys charged with providing legal advice and support to ECA.  Such material is subject to the attorney-client privilege, and as such has also been withheld on the basis of this exemption.

### FOIA Exemption (b)(6) - Personal Privacy

Title 5 U.S.C. Section 552 (b)(6) states that the FOIA does not apply to:

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

> personnel and medical files and similar
> files the disclosure of which would
> constitute a clearly unwarranted invasion
> of personal privacy . . . .

The courts have interpreted the language of exemption

(b)(6) broadly to encompass all information that applies to an

individual without regard to whether it was located in a

particular type of file.  A number of documents in this case

contain information that has been withheld under this privacy

exemption by excising names and other identifying personal

information.  The underlying issue in this case - restrictions

on the importation of certain antiquities - is one that has

engaged strong personal and professional interests.  There

are, moreover, criminal elements involved in the illicit

trafficking in cultural property, causing some to have an

interest in the process of regulating the importation of such

artifacts into the United States.  Consequently, there is

particular concern that the personal privacy of involved

individuals be protected.

Inasmuch as the information withheld is personal to an

individual, there is clearly a privacy interest involved.  In

the area of cultural property, in particular, the privacy

interest is increased, as demonstrated by instances in which

career Department employees have been denounced in harsh

personal accusations in public fora.  Given the existence of a

privacy interest, I am required, therefore, to determine whether there exists any public interest in disclosure and to weigh any such interest against the extent of the invasion of privacy.

In United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989), the Supreme Court considered whether disclosure would serve the "core purpose" for which Congress enacted the FOIA, i.e., to "shed[] light on an agency's performance of its statutory duties." I have concluded that disclosure of the information would result in a clearly unwarranted invasion of personal privacy and that disclosure of the information would not serve the "core purpose" of the FOIA. Accordingly, the privacy interest clearly outweighs any public interest in disclosure of such personal information and must, therefore, prevail.

FOIA Exemption (b)(7)(c) – Invasion of Privacy

Title 5 U.S.C. Section 552 (b)(7) states that the FOIA does not apply to:

> records or information compiled for law
> enforcement purposes, but only to the extent
> that the production of such records or
> information … (C) could reasonably be expected
> to constitute an unwarranted invasion of
> personal privacy ….

Names and identifying data of law enforcement personnel have been withheld to protect their personal privacy. The

discussion of exemption 6 above applies also to this
exemption.  The information is, therefore, exempt from
disclosure under FOIA exemption (b)(7)(C).

## IV. CLASSIFICATION OF DOCUMENTS

In the Department of State's initial FOIA review of the
documents in this case, it was determined that the release of
information in 43 documents could reasonably be expected to
cause damage to the national security.  These documents had
not previously been formally classified but, as explained
above, the foreign governments involved understood that
material exchanged in the course of negotiations would be
treated as confidential.  Consequently, the documents
containing such material were classified in whole or part
under the provisions of Section 1.7(d) of Executive Order
(E.O.) 12958, as amended, as required for classification of
information after a document has been requested under the
FOIA.  (All references herein to E.O. 12958 are to that order
as amended by E.O. 13292 of March 25, 2003.)  Section 1.7(d)
reads in pertinent part:

> (d) Information that has not previously been
> disclosed to the public under proper authority
> may be classified or reclassified after an
> agency has received a request for it under the
> Freedom of Information Act (5 U.S.C. 552) … only
> if such classification meets the requirements of
> this order and is accomplished on a document-by-

document basis with the personal participation
or under the direction of the agency head, the
deputy agency head, or the senior agency
official designated under section 5.4 of this
order.

At the Department of State, the senior agency official is

the Under Secretary of State for Management.   The Under

Secretary, by Public Notice 2977, published in the Federal

Register on February 12, 1999, authorized and directed the

Deputy Assistant Secretary of State for Records and Publishing

Services (a position which has since been re-designated the

Deputy Assistant Secretary for Information Sharing Services,

and which has been delegated original classification

authority) to exercise this function.   On various dates during

the course of reviewing materials located in the Department's

search for responsive records, this official personally

approved the classification of each document that was

classified after receipt of a FOIA request to which it was

responsive.

As regards Cyprus, in view of the fact that negotiations

with that country had been successfully concluded, those

documents originating with the GOC were sent to that

government with the request that they be reviewed for

continuing sensitivity.  As a result of this consultation, and

as described below, much previously classified and withheld

material is now being declassified and released.

## DOCUMENT DESCRIPTIONS

Document numbers below refer to the documents as processed internally, although because of the way in which some records were administratively processed in this case, as noted below a single document number sometimes encompasses multiple records (e.g., multiple emails, or a packet of similar letters). This occasional clustering of multiple records into a single document number was of administrative effect only and has no effect on what material within those records has been released and what withheld. There is no non-exempt material in these records that can be declassified (where applicable), meaningfully segregated from the exempt material, and released.

## CULTURAL PROPERTY ADVISORY COMMITTEE REPORTS

In response to Plaintiffs' FOIA requests, the Department has withheld certain Committee reports. These reports contain various redactions of material withheld on different and sometimes multiple bases. Below is a listing of the reports containing withheld material and the bases for withholding such material.

## Withheld Committee Reports

Case Number 200402941, Document E1 is the "Report of the Cultural Property Advisory Committee on the Request from the Government of the Republic of Cyprus Recommending U.S Import Restrictions in Certain Categories of Archaeological Material," dated March 19, 1999.  The document is forty-three pages in length.  Originally unclassified, the document is currently classified CONFIDENTIAL in part under Executive Order ("E.O.") 12958, Section 1.4(b) and (d).  The document has been withheld in part under FOIA Exemptions (b)(1), (b)(3), (b)(5) and (b)(6).

Case Number 200402941, Document E2 is the "Report of the Cultural Property Advisory Committee on the Request from the Government of the Republic of Cyprus," dated December 4, 1998.  The document is nine pages in length.  Originally unclassified, the document is currently classified CONFIDENTIAL in part under E.O 12958, Section 1.4(b) and (d). The document has been withheld in part, under exemptions (b)(1), (b)(3) and (b)(5).

Case Number 200402941, Document E3 is the "Cultural Property Advisory Committee Report on the Proposal to Extend the 1999 Emergency Action on Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus," dated August 2003.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

The document is fourteen pages in length.  Originally
unclassified, the document is currently classified
CONFIDENTIAL in part under E.O 12958, Section 1.4(b) and (d).
The document has been withheld in part under FOIA exemptions
(b)(1), (b)(3), (b)(5) and (b)(6).

Case number 200704168, Document E1 and Case number
200706194, Document E11 are duplicates.  Each document is a
copy of a "Report of the Cultural Property Advisory Committee
on the Proposal to Extend the Memorandum of Understanding
Between the Government of the United States of America and
the Government of the Republic of Cyprus Concerning the
Imposition of Import Restrictions on Pre-Classical and
Classical Archeological Material and Byzantine Period
Ecclesiastical and Ritual Ethnological Materials," dated May
7, 2007.  The documents are twenty-six pages in length.
Originally unclassified, the documents are currently
classified CONFIDENTIAL in part under E.O. 12958, Section
1.4(b) and (d).  The documents have been withheld in part
under FOIA exemptions (b)(1), (b)(3), (b)(5) and (b)(6).

Case number 200600298, Document C1 is "The Report of
the Cultural Property Advisory Committee on the Proposal to
Extend the Agreement Between the Government of the United
States of America and the Government of the Republic of Italy

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

Concerning the Imposition of Import Restrictions on
Categories of Archeological Material Representing the Pre-
Classical and Imperial Roman Periods of Italy" dated November
2005.  The document is twenty-six pages.  Originally
unclassified, the document is currently classified
CONFIDENTIAL in part under E.O 12958, Section 1.4(b) and (d).
The document has been withheld in part under FOIA exemptions
(b)(1), (b)(3), (b)(5) and (b)(6).

Case 200600298, Document C2 presents the views of
certain Committee members regarding the Committee discussion
and recommendations presented in Document C1 in the same case
number.  The document is two pages.  One page is dated
October 28, 2005 and bears the name of one Committee member
as its author.  The second page was dated November 10, 2005
and bears the name of another Committee member as its author.
This document contains two individual Committee members'
views and recommendations on issues related to the Committee
recommendation-development process.  These pages were
submitted to the Department with the Committee report that is
document C1.  These views do not embody the Department's
final decision on the matter discussed by these Committee
members, and accordingly these minority views are
predecisional and deliberative.  As such, they are exempt

from disclosure under FOIA exemption (b)(5), and there is no
meaningful factual information that may be segregated and
released.

## Bases for Withholding the Aforementioned Committee Reports

Except as otherwise noted above, the type of information
withheld from the aforementioned Committee reports falls into
one or more of the following categories:

Information withheld under FOIA Exemption (b)(1).  All of
these Committee reports contain information that was provided
by officials of the Government of Italy (GOI) or the
Government of the Republic of Cyprus (GOC), and the Department
has an express understanding with those governments that such
information is to be held in confidence.  Some of this
information was contained in the original requests made to the
United States under the 1970 UNESCO Convention, while other
information was communicated to the Department separately
(e.g., in interviews with Bureau of Educational and Cultural
Affairs (ECA) staff).  The sensitivity of these documents
derives from, in part, the identification of known
vulnerabilities of, and instances of looting at, sensitive
archaeological sites, any physical means of protecting such
sites, and specific law enforcement actions against looting
and smuggling.

As described above, the Department requested the views of the GOC as to the continuing sensitivity of information that it provided in connection with the decision to extend the protection agreement.  The GOC response as to what information it wants to continue to be protected and what information it now believes may be released has been taken into account in determining what information must still be withheld as foreign government information (FGI) in the Committee Reports. Accordingly, release of this material without the consent of the government which provided it in confidence could reasonably be expected to cause damage to our relations with that country.  Therefore, the material is foreign government information that concerns our foreign affairs, and is currently and properly classified CONFIDENTIAL under Section 1.4(b) and (d) of E.O. 12958, as amended.  As such, the classified material in these documents is exempt from release under FOIA exemption (b)(1).

Information withheld under FOIA Exemption (b)(3).
Additionally, the Department has withheld material from these Committee reports under exemption (b)(3), citing 19 U.S.C. § 2605 (Section 306 of the Convention on Cultural Property Implementation Act (the Act)), particularly subsections (h), (i)(1), and (i)(2).  Some of the material withheld under

exemption (b)(3) in these reports has also been withheld under
exemptions (b)(1), as described above, and/or (b)(5), as
described below.

All of the material withheld in these documents under
§ 2605 concerns a matter about which closed Committee
proceedings took place and either consists of information
provided to and considered by the Committee, or conveys the
views of the Committee and of Committee members regarding the
recommendations it is tasked with making about the foreign
governments' requests.  These views and this information,
where withheld under exemption (b)(3), were discussed by the
Committee during closed proceedings only.  Consequently, such
material must be withheld under § 306(h) of the Act, because
its disclosure would reveal sensitive factual information or
sensitive Committee deliberations, and public release of the
information would compromise the U.S. government's
negotiations.  Indeed, the sensitivity of this information is
demonstrated by the determination to close the portions of the
Committee meetings at which such issues could be raised and by
those foreign governments' communication to the Department of
their expectations that material they provided would not be
publicly released.

Further, some of this information was provided in confidence to ECA staff or directly to the Committee by archaeologists, curators, collectors, dealers, auction house specialists, and other individuals in the private sector. The expectation of confidentiality was necessitated by the content of the information these individuals could and did provide, including sensitive information about the quantity, quality, and objects of looting. Accordingly, such material has been withheld under § 306(i)(1) of the Act.

Also, portions of the withheld information in these documents contain sensitive facts and analysis provided in confidence by ECA employees to the Committee for its nonpublic consideration and discussion in closed sessions, including information originally provided in confidence by the GOC to ECA staff. This material has been withheld on the basis of CPIA § 306(i)(2) of the Act.

Information withheld under FOIA Exemption (b)(5). These reports also recount discussions among Committee members concerning whether or not to recommend that import restrictions be imposed or extended, and contain the specific recommendations made by the Committee, as well as (in some reports) summaries of similar Committee discussions and recommendations resulting from earlier closed meetings. As

the Committee is composed of special government employees (per
18 U.S.C. § 202(a)) who are charged with providing nonbinding
recommendations to the Department for consideration in the
Department's subsequent final decisions, this material
constitutes pre-decisional deliberative process material (with
some inextricably intertwined facts that cannot be
meaningfully segregated), which is exempt from disclosure
under FOIA exemption (b)(5).

This exemption has also been applied in these reports to
withhold summaries that were culled by the Committee from the
much larger universe of facts presented to it such that their
release would harm the Committee's and the Department's
deliberative process by reflecting the discretionary
distillation of information and exercise of judgment as to
what issues are most relevant to the pre-decisional findings
and recommendations.

Information withheld under FOIA Exemption (b)(6).   The
names of various private individuals who could not be assumed
to be representing the position of a specific organization
have been withheld from these reports to protect their
privacy.   The names of individuals who were either officials
(as in the case of Committee members) or persons that appear
to have represented organizations with an institutional

interest in Committee affairs have been released.   Other
persons providing information would have had an expectation of
privacy and were not informed that their identities would be
publicly available, and accordingly the release of their names
would constitute a clearly unwarranted invasion of their
personal privacy.

In document E1 of case number 200704168, the withholdings
under exemption (b)(6) are of information that would
effectively identify individuals who provided information to
the Committee.   Revealing the identity of these persons might
result in personal or professional disadvantage to them and
would constitute a clearly unwarranted invasion of their
privacy.   Furthermore, it is in the public interest of the
United States to be able to receive such information candidly,
to facilitate good decision-making on these sometimes
sensitive issues.   The information is therefore exempt from
release under FOIA exemption (b)(6).

**OTHER DOCUMENTS**

**Documents Withheld in Case 200501372**

The following documents were provided to the United
States by the Government of the People's Republic of China
(PRC) pursuant its formal request under Article 9 of the 1970

UNESCO Convention, with the express understanding that the
U.S. government would hold them in confidence.  The premature
public release of such information could reasonably be
expected to damage our relations with the PRC and frustrate
potential negotiations that may ensue with the PRC regarding
import restrictions.  The information is currently and
properly classified under E.O. 12958 Section 1.4(b) and (d)
and therefore exempt from release under FOIA exemption (b)(1).

    Documents E1, E2, E2A, E2B, E2C, E2D together constitute
the "Application Filed by the Government of the People's
Republic of China According to the 1970 Convention of the
United Nations Educational, Scientific and Cultural
Organization to the Government of the United States for the
Restriction of Import of Cultural Relics in Order to Protect
Its Cultural Heritage."  These documents total 160 pages in
length, and are composed of 50, 30, 21, 19, 16 and 24 pages,
respectively.  These documents were originally and are
currently classified CONFIDENTIAL under E.O. 12958 Section
1.4(b) and (d).

    Document E1 is a largely narrative explanation of
background related to the looting of Chinese archaeological
sites and the smuggling of illicitly acquired objects,
including examples of artifacts passing to markets abroad.

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

Document E2 describes Chinese metal artifacts susceptible to illicit export while Documents E2A, E2B, E2C, and E2D deal with other types of artifacts, such as ceramics, stone items, paintings and calligraphy, and sundry articles (which includes silks, lacquers, and other artifacts from ancient China).

**Documents Withheld in Case 200704168**

In addition to the material in the Committee report described above, the Department withheld the following other documents in Case 200704168 for the reasons stated below.

Document E2.  The materials comprising this document were also responsive to request number 200706194, and were treated in that case as separate documents.  Consequently, the information withheld in these materials is the same information that was withheld for the same reasons in documents E2, E3, and E9 in case number 200706194 as described below.

Document E3 is a one-page e-mail with a 21-page draft attachment, from an ECA employee to employees of the U.S Customs and Border Protection (CPB) at the Department of Homeland Security (DHS), copying another ECA employee.  The document is dated May 29, 2007.  The document was originally and is currently UNCLASSIFIED.  The document has been withheld

in part under FOIA exemptions (b)(2), (b)(5), (b)(6), and (b)(7)(C).

This document is an email transmitting a draft of a notice of proposed rulemaking that was edited by Department of State employees. The deliberative process privilege was cited as the basis for the (b)(5) exemption, which was applied to withhold portions of this email and the entirety of the attached draft document. The draft contained comments detailing various issues of concern that the Department had regarding the draft and as such were deliberative in nature, and the portions of the email withheld under exemption (b)(5) also describe the nature of edits made within the attachment. Additionally, the draft was not a final draft and was thus pre-decisional. The "low 2" information withheld pursuant to exemption (b)(2) consists of administrative markings such as case file numbers, record identification codes and other internal CBP codes. Names, email addresses, direct dial phone numbers and fax numbers of government employees have been redacted pursuant to FOIA exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy, given the privacy interest in protecting these personnel from unnecessary, unofficial questioning, harassment, stigmatization, and the fact that release of this

material would not shed any light on how the agencies involved perform their statutory duties.  This information is also withheld pursuant to exemption (b)(7)(C) because the email was created as part of law enforcement efforts to implement and enforce cultural property restrictions and is considered to be a record created for law enforcement purposes.

Document E7 is composed of six separate e-mails between a private individual and an ECA employee.  These emails are dated between January 17 and February 5, 2007, and collectively consist of twelve pages.  These emails were originally and are currently UNCLASSIFIED.  These documents have been withheld in part under FOIA exemptions (b)(3) and (b)(6).

These emails contain some information that was provided in confidence by Danielle Parks, an individual in the private sector, to a staff member of ECA's Cultural Heritage Center in connection with the then-upcoming Committee meetings regarding potential extension of the bilateral cultural property agreement with the GOC.  As this information may not be disclosed under § 306(i)(1) of the Act, it has been withheld under FOIA exemption (b)(3).

Additionally, some names and other personal information such as telephone numbers have been withheld.  Release of this

information might result in harassment or other clearly unwarranted invasion of personal privacy, and absent a public interest in its disclosure the information is exempt from release under FOIA exemption (b)(6).

Document E10 is a 17-page compilation of eight letters and e-mails dated between January 29 and February 5, 2007. These documents were originally and are currently UNCLASSIFIED. The documents have been withheld in part under FOIA exemption (b)(6).

The only information withheld in document E10 is a single private e-mail address. Release of that information would be a clearly unwarranted invasion of personal privacy, with no countervailing public interest in disclosure, and the information is therefore exempt from release under FOIA exemption (b)(6).

Document CA1 is a three-page letter, dated February 3, 2007, from Dr. Danielle Parks to the chairman of the Committee. The document was originally and is currently UNCLASSIFIED. This document was withheld in part under FOIA exemption (b)(6). The only excision in this document is the author's home telephone number. Although Dr. Parks is deceased, the telephone number may continue to be used by others in her household, and there is no public interest

whatsoever in its disclosure.   The information has therefore been withheld under FOIA exemption (b)(6).

Document EA1 is a one-page chain of three e-mails among Department employees, all dated July 13, 2007.   This document was withheld in part under FOIA exemption (b)(5).   The only information withheld in this document is a comment in the earliest of the three e-mails describing and explaining the reasoning behind some edits that were made in a draft of a diplomatic note to the Republic of Cyprus.   The comment is part of the pre-decisional exchange of views on what the final text of the proposed note to the GOC on Cypriot coins should be.   Accordingly, it is part of the Department's internal deliberative process and exempt from disclosure under FOIA exemption (b)(5).

Document EA1A is the draft diplomatic note attached to document EA1, above.   The document is two pages in length and dated July 13, 2007.   The document has been withheld in full under FOIA Exemption (b)(5).   This draft diplomatic note contains some editing marks and a blank space marking where text needed to be filled in later.   As an internal draft, it constitutes a pre-decisional recommendation on the text of the note and is exempt from disclosure under FOIA exemption (b)(5) as part of the deliberative process.

Document EA2 is an e-mail, one page in length, from ECA employees to an employee in the Department's Office of the Legal Adviser, dated July 6, 2007.  The document has been withheld in full under FOIA exemption (b)(5).

This email forwards an attached draft of a diplomatic note (document EA2A, described below) responding to a note from the GOC, which is also attached to the email (document EA3, described below).  This email seeks legal approval of the draft and continues specific previous deliberations about how best to respond to the GOC note.  It also includes a proposed schedule of events related to the draft note.  This email is part of the pre-decisional deliberative process involving the content and manner of correspondence between the U.S. and the GOC on the issue of importation of Cypriot items into the U.S. Furthermore, it is information shared by a Department employee with a Department lawyer, in confidence, for the purpose of obtaining legal advice and approval.  As such, this email contains information subject to the attorney-client and deliberative process privileges.  Accordingly, it is exempt from disclosure under FOIA exemption (b)(5).

Document EA2A is a draft diplomatic note forwarded by Document EA2.  The document is two pages, and prospectively marked with the date July 16, 2007.  The document has been

withheld in full under FOIA Exemption (b)(5).  The draft of a communication to be sent to a foreign government was one of the attachments subject to the consultations in document EA2. As a draft, it constitutes a pre-decisional legal recommendation regarding the text of the proposed diplomatic note and is, therefore, exempt from disclosure under FOIA exemption (b)(5) because it is protected by the deliberative process and attorney-client privileges.

Documents EA3A, EA6, and EA8

Document EA3A is a Greek-language communication from the Cypriot Ministry of Foreign Affairs to its embassy in Washington, dated January 19, 2007, and is one page in length.

Document EA6 is an email from the Second Secretary and Consul of the Cypriot Embassy in Washington, to an ECA employee, dated January 19, 2007, and is one page in length.

Document EA8 is an e-mail from the Second Secretary and Consul of the Cypriot Embassy in Washington to an ECA employee, dated February 5, 2007, and is one page in length.

The above three documents (EA3A, EA6, and EA8) are currently and properly classified CONFIDENTIAL under Section 1.4(b) and (d) of E.O. 12958.  These documents have been withheld in full under FOIA exemption (b)(1).

All the above documents are diplomatic communications sent
by officials of the GOC to the U.S. government in confidence.
They all constitute foreign government information, the
unauthorized disclosure of which is presumed to cause damage
to U.S. national security under Section 1.1 (c) of E.O. 12958.
Moreover, disclosure by the U.S. government of information
provided in confidence by a foreign government would
inevitably cause damage to relations with that government.
Any such disclosure would also damage U.S. foreign relations
by causing the foreign government concerned and, perhaps,
other governments, to hesitate to share information with the
U.S. government in the future.  Furthermore, the foreign
government has expressly indicated and reiterated its
expectation that these documents would be maintained in
confidence.  Accordingly, these foreign government documents
are currently and properly classified CONFIDENTIAL under
Section 1.4 (b) and (d) of E.O. 12958 and are exempt from
disclosure under FOIA exemption (b)(1).

Document EA7 is a memorandum from ECA's Cultural Heritage
Center to the Embassy of the Republic of Cyprus, dated June
14, 2007.  The document is two pages (each page of which was
counted as a separate document in internal processing and in
the letters sent to Plaintiff).  Originally classified

CONFIDENTIAL under Sections 1.4(b) and (d) of E.O. 12958. Denied in full under exemption (b)(1).

This document is part of the diplomatic exchange of communications between Department officials and officials of the GOC on questions pertaining to the importation into the U.S. of Cypriot archaeological and/or ethnological material, an exchange that the GOC understood to be, and has expressly requested be, treated as confidential.  The disclosure of this information could damage relations between the U.S. and Cyprus.  It is, therefore, currently and properly classified CONFIDENTIAL under Section 1.4 (b) and (d) of E.O. 12958 and exempt from disclosure under FOIA exemption (b)(1).

<u>Documents EA11, EA11A, EA12A, EA15, EA17, EA18, EA20,</u>
<u>EA20A, EA21, EA23, and EA23A</u>

Document EA11 is an e-mail from an ECA employee to an official in the Department of Antiquities of the Ministry of Communications and Works of the GOC, dated July 6, 2007, transmitting document EA11A.  The document is one page in length.  Withheld in part under FOIA exemption (b)(6).

Document EA11A is a letter from an ECA employee to an official in the Department of Antiquities of the Ministry of Communications and Works of the GOC, dated July 16, 2007.

The document is five pages in length.   (No material has been withheld from the last three pages of this document.) Withheld in part under FOIA exemption (b)(6).

EA12A is a letter sent on behalf of an official of the Department of Antiquities of the Cypriot Ministry of Communications and Works, to an ECA employee, dated July 10, 2007, and is one page in length.   Withheld in part under FOIA exemption (b)(6).

Document EA13 is an email from an ECA employee to an official in the Department of Antiquities of the Ministry of Communications and Works of the GOC, dated July 10, 2007, and is one page in length.

Document EA15 is an e-mail from an individual commenter addressed to the Committee, dated February 6, 2007, and is one page in length.   Withheld in part under FOIA exemption (b)(6).

Document EA17 is an e-mail from another individual commenter to the Committee, dated February 6, 2007, and is two pages in length.   Withheld in part under FOIA exemption (b)(6).

Document EA18 is an e-mail from an executive of the Cyprus-U.S. Chamber of Commerce to the Committee, dated February 6, 2007, and is one page in length.   Withheld in part under FOIA exemption (b)(6).

Documents EA20 and EA20A  are two parts of one e-mail to
the Committee (an essentially blank cover email and its
attachment) from two individuals who identify themselves in the
letter as "writers," dated February 6, 2007, and is two pages in
length.  Withheld in part under FOIA exemption (b)(6).

Document EA21 is an e-mail to the Committee from an
individual who identifies himself in the letter as a "writer-
historician" (*sic*), dated February 6, 2007, and is one page in
length.  Withheld in part under FOIA exemption (b)(6).

Document EA23 is an essentially blank e-mail transmitting
Document EA23A, a letter to the Committee from an art history
student.  The transmitting e-mail is dated February 6, 2007.
The letter is undated.  The two documents are collectively two
pages in length.  Withheld in part under FOIA exemption (b)(6).

All of the above documents (EA11, EA11A, EA12A, EA15,
EA17, EA18, EA20, EA20A, EA21, EA23, and EA23A) have been
released in part.  These documents are communications from
members of the public to the Department commenting on the
inclusion in an agreement between the U.S. and Cyprus of
provisions restricting the importation into the U.S. of
Cypriot coins and other antiquities or correspondence from ECA
staff members.

The only information withheld from these documents is personal information, such as the names, titles (where unrelated to the substance of the communication or where release would risk identification of a withheld name), email addresses, and telephone numbers of the senders. The disclosure of this information would further no significant public interest beyond what has already been released from these documents and thus would constitute a clearly unwarranted invasion of personal privacy. The withheld information is therefore exempt from release under FOIA exemption (b)(6).

**Documents Withheld in Case 200706194**

Documents E2, E3, E6, E7, E8, E9, E10. These seven documents are a three-page Action Memorandum, with four attachments collectively 25 pages in length, to the Assistant Secretary of ECA from the ECA Principal Deputy Assistant Secretary. The full packet was administratively treated as a single document (Document E2) in Case No. 200704168, and as separate documents in this case. Four of the documents, E6, E7, E8, and E10 have now been released in full and are not described below. The withheld material is the same in both cases, specifically:

Document E2 is the aforementioned "Action Memorandum" itself and also its first attachment (Tab A). This document is UNCLASSIFIED, and is three pages in length. The document has been withheld in part under FOIA exemption (b)(5). This Action Memorandum recommends approval of the extension of the Memorandum of Understanding (MOU) with the GOC concerning the restriction on importing certain types of objects into the United States. Material withheld from the first attachment to the memorandum (entitled "Additional Background") recounts the Committee's specific recommendations and provides additional reflections and comments on these recommendations for consideration by the Assistant Secretary, including candid reflection on the process and a summary of relevant views provided by attorneys in the Department's Office of the Legal Adviser. The withheld material is predecisional and deliberative, and also subject in part to the attorney-client privilege, and thus exempt from release under FOIA exemption (b)(5).

Document E3 is entitled "Determinations to Extend Memorandum of Understanding Between the Government of the United States and the Government of the Republic of Cyprus Concerning the Imposition of Import Restrictions on Pre-Classical and Classical Archeological Objects and Byzantine Ecclesiastical and

Ritual Ethnological Material."   The document was signed and
dated May 30, 2007 by then-Assistant Secretary Dina H. Powell.
The document is five pages in length.   Originally unclassified,
the document is currently classified CONFIDENTIAL in part under
E.O. 12958 Section 1.4(b) and (d).   The document has been
withheld in part under FOIA exemptions (b)(1) and (b)(3).

    This document represents the formal agency determinations
in support of a decision to extend an international agreement
and the full reasoning for that decision.   The only
withholdings in this document are five paragraphs of the
formal determinations in support of extending the agreement
between the U.S. government and the GOC concerning import
restrictions on relevant objects.   The withheld sections
summarize the specific factual considerations underlying each
of the Assistant Secretary's determinations pursuant to the
Act (that the patrimony of Cyprus is in jeopardy from pillage
of the relevant material, that Cyprus has acted consistently
with the 1970 UNESCO Convention, that U.S. import restrictions
would be beneficial, and that they would be in the
international interest).   This material relates to matters
involved in closed Committee proceedings (the Committee having
been tasked with providing the Assistant Secretary with
recommendations on the exact same issues), and its disclosure

would compromise U.S. negotiating objectives or bargaining positions in future cultural property issues with the GOC and other countries. This may result in a chilling effect on foreign governments' interests in engaging with the U.S. by making similar requests pursuant to the 1970 UNESCO Convention. Accordingly, this material has been withheld under exemption (b)(3), based on § 306(h) of the Act and, to the extent the information originated in confidence from the private sector or the GOC for provision to the Committee, § 306(i)(1) and (2) of the Act, respectively.

Similarly, because some of this information in these same paragraphs originates in materials that were provided by the GOC in confidence, and which the GOC has expressly requested continue to remain in confidence, disclosure of the information could reasonably be expected to harm U.S. foreign relations with the GOC and future international negotiations. Accordingly, material in these paragraphs is currently and properly classified based on Section 1.4(b) and (d) of E.O. 12958, such that it must be withheld under FOIA exemption (b)(1) as well.

Document E9 is a diplomatic note Number CQ/A.14.1.5, dated July 2006. The document is three pages in length. Originally not marked with classification, the document is

currently classified CONFIDENTIAL under Section 1.4(b) and (d) of E.O 12958. The document has been withheld in full under FOIA exemption (b) (1).

This formal diplomatic communication expresses specific GOC views regarding the renewal and terms of the aforementioned MOU. Originally sent by the GOC with the understanding that the information provided would be considered confidential, the GOC has subsequently confirmed that it regards the document as confidential. Unapproved release of this information, particularly in light of the request of the GOC that it remain confidential, could damage relations with the GOC. This information is currently and properly classified CONFIDENTIAL under Section 1.4 (b) and (d) of E.O. 12958 and is therefore exempt from disclosure under FOIA exemption (b) (1).

Documents E13 and E14 are an email and its attachment, and are together duplicates of document E3 in case 200704168, discussed above. The same material in these documents has been withheld for the same reasons.

Document E15 is a chain of five emails dated from July 10, 2007 to July 11, 2007. The e-mails span two pages as printed. These emails are UNCLASSIFIED. These emails have been withheld in part under FOIA exemptions (b)(6) and (b)(7)(C).

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

Names, email addresses, telephone numbers and fax numbers
of lower level CBP employees are redacted  pursuant to FOIA
exemption (b)(6) because release would be considered a clearly
unwarranted invasion of their privacy, for the same reasons as
described in document E3 in case 200704168 above. This
information is also withheld pursuant to exemption (b)(7)(C)
because these emails were created as part of law enforcement
efforts to implement and enforce cultural property
restrictions and is considered to be a record created for law
enforcement purposes.

Document E33 is a three e-mail chain, dated July 13-16,
2007, with the common subject: MOU Ceremony Guest List.   The
emails as printed span one page.   These e-mails are
UNCLASSIFIED, and have been withheld in part under FOIA
exemption (b)(6).

Names, email addresses, direct dial phone numbers and fax
numbers of lower level CBP employees are redacted pursuant to
FOIA exemption (b)(6) because release would be considered a
clearly unwarranted invasion of their privacy, for the same
reasons as described in document E3 in case 200704168 above.

Documents E28 and E31

Document E28 is a chain of two short e-mails dated July 11, 2007 on the subject "July 19 event."  This email chain spans two pages as printed, and is UNCLASSIFIED.  This email chain has been withheld in part under FOIA exemption (b)(6).

Document E31 is a July 13, 2007, email and attachment entitled "MOU Ceremony - Guest List".  The document collectively is four pages in length and is UNCLASSIFIED.  The document has been withheld in part under FOIA exemption (b)(6).

In these two email exchanges, email addresses, phone numbers, and private information wholly unrelated to official duties about a number of persons have been withheld.  Release of this information could lead to the possible harassment of these individuals and would constitute a clearly unwarranted invasion of their personal privacy.  The information is therefore exempt from release under FOIA exemption (b)(6).

Document E18 is a draft of a release by the Department's spokesman dated July 19, 2007, and entitled "U.S and Cyprus Extend Agreement to Protect Archeological and Ethnological Heritage of Cyprus."  The document is two pages in length and is UNCLASSIFIED.

The document has been withheld in full under FOIA exemption (b)(5).  This document is a draft version of a

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

statement to be issued by the Department spokesman.  The language of the draft is not identical to the final statement that was ultimately issued.  The alteration in the draft language reflects pre-decisional deliberations as to both the substance and phrasing of the statement, and as such this draft is material exempt from release under FOIA exemption (b)(5).

Document E30 is a two email chain among Department employees dated July 12 and 13, 2007, and is one page in length as printed.  The document is UNCLASSIFIED, and has been withheld in full under FOIA exemption (b)(5).  The emails in this chain involve a discussion of the wording of the invitation to the July 19 ceremony commemorating the signing of the Cyprus-U.S. MOU.  The original e-mail sends draft language, and the more recent email offers comments and corrections.  The information they contain is thus pre-decisional deliberative material and therefore exempt from disclosure under FOIA exemption (b)(5).

### Documents E41, E42, E44, E45, E47 E48 and E50

Document E41 is a one-page letter dated July 11, 2007, from the Director of the Department of Antiquities of the GOC to an ECA employee.  UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6).

Document E42 is a letter from an ECA employee to the Director of Cyprus Antiquities, dated July 16, 2007, bearing the signature of a GOC official dated October 7, 2007.  One page. UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6).

Document E44 is an e-mail from an ECA employee to an official of the Department of Antiquities.  Dated July 08, 2007. One page.  UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6).

Document E45 is the same as document E42, except without the GOC official's signature.  One page.  UNCLASSIFIED. Withheld in part under FOIA exemption (b)(6).

Document E47 is a July 10, 2007 exchange of e-mails between an ECA employee and an official of the Department of Antiquities.  The document is two pages in length. UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6).

Document E48 is a copy of a July 10, 2007 letter from the Department of Antiquities to an ECA employee.  The document is one page in length.  UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6)

Document E50 is a letter from the Director of Antiquities to an ECA employee, dated May 14, 2007.  One page. UNCLASSIFIED.  Withheld in part under FOIA exemption (b)(6).

These seven documents are correspondence exchanged in the course of the negotiations of the aforementioned extension of the MOU on Cyprus antiquities.  Originally withheld in full according to an understanding with the GOC, they are now released in part with the agreement of the GOC.  The only material currently withheld from these documents is the names and identifying information of ECA employees.  As explained above, the release of this information could result in the clearly unwarranted invasion of their personal privacy and it is therefore exempt from release under FOIA exemption (b)(6).

Document U4 is a proposed guest list, dated July 17, 2007, for the signing ceremony of a Memorandum of Understanding between the U.S. and Cyprus, on July 19, 2007.  The document is four pages, and has been withheld in part under FOIA exemption (b)(6).

The only items redacted from this document are the names and email addresses of certain law enforcement personnel, and the personal email addresses of certain invitees.  Disclosure of this information would constitute a clearly unwarranted invasion of personal privacy and would shed no further light on the operations of the government beyond what has already been released.  Accordingly, it is exempt from disclosure under FOIA exemption (b)(6).

*Ancient Coin Collectors Guild, et al. v. U.S. Department of State*
*Grafeld Declaration*

**CONCLUSION**

In summary, the Department initiated and completed searches of the records systems reasonably expected to contain the information sought by Plaintiffs.   One hundred twenty-seven (127) responsive records were located.   Of these, 65 documents were released in full, 39 documents were released with excisions, and 23 documents were withheld in full.   All of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and I have determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _19th_ day of March, 2009.

Margaret P. Grafeld