# Exhibit C

**SCOTT A. HODES, ATTORNEY AT LAW**
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

MEMBER DC AND MD BARS

(301) 404-0502

INFOPRIVACYLAW@YAHOO.COM

May 22, 2008

Mr. Brian P. Hudak
Assistant U.S. Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

<u>ACCG, et. al. v. United States Dep't of State, Civ. No. 07-2074 (RJL)</u>

Dear Mr. Hudak:

As you know, the Court's Order dated February 4, 2008 in the above-captioned case requires my clients to review the material released by the State Department on May 9, 2008 and advise you of any issues remaining in this lawsuit by June 2, 2008. My clients have reviewed the material, and by this letter, will advise you of issues remaining in the lawsuit.

Initially, there appear to be six documents that were referred, at least in part, to other government agencies for consultation prior to a release decision being made on them. My clients continue to be interested in the release of these documents and want to know when the State Department plans to make a release determination on them. I believe, from previous experience litigating Freedom of Information ("FOIA") matters, that any motions in this case should be delayed until a determination on the release of these six documents is determined by the State Department.

While my clients are pleased that some information was released to them, they are disappointed with the broad use of various FOIA exemptions to withhold responsive material from them. I will address the use of each exemption specifically and I would ask that you and your client review these issues to see if further releases can be made prior to requiring them to complete a <u>Vaughn</u> index.

My clients contest the use of Exemption 1 to redact material as confidential material provided by a foreign government. It appears that some of the information in documents marked as exempt pursuant to Exemption 1 was declassified on the cover pages. If that is not the case, the confidential markings on these documents are not procedurally correct and the material is not properly classified. Further, even if all of the material withheld pursuant to FOIA Exemption 1 was properly marked, my clients do not believe that this material is properly classified at the confidential level and plan to contest it before the court.

● Page 2                                                                                           May 22, 2008

Next, my clients challenge the use of exemption 3 to withhold responsive material. 19 U.S.C. § 2605(h)-(i) is the statue cited for the withholdings under this exemption. However, my clients do not believe that this statute qualifies as an exemption 3 statute for the withholdings made by the State Department. Even if this statute would qualify as an exemption 3 statute, it contains certain requirements that must be made prior to withholding the attached material. It does not appear these requirements have been met. Additionally, it has been invoked to withhold material in an e-mail chain between Andrew Cohen and the late Danielle Parks. This material is clearly not within any withholding pursuant to the FOIA that may, in any event, be allowed by the statute and should certainly be released. Thus, my clients will contest the use of this exemption before the court as well.

My clients will also challenge the State Department's expansive use of Exemption 5 to withhold material deemed deliberative. It appears that some of this material fails to be inter/intra agency, and therefore cannot be withheld pursuant to an Exemption 5 privilege. Additionally, this privilege only applies to deliberative material and it appears that purely factual material was not segregated and released by your clients. Thus, my clients will contest the use of Exemption 5 before the court.

My clients concede and will not contest the use of Exemption 6 to protect purely personal information pertaining to non-government third parties such as e-mail, home addresses and home phone numbers. However, the withholding of the names of third parties pursuant to this exemption is not proper--such as those found on pages 23-29 of the CPAC Italy report. As such, my client will contest the withholding of names of third parties pursuant to Exemption 6.

My clients also contest the response to FOIA Request 200501372 which states that "there is no 'original Chinese Request for import restrictions pursuant to the 1970 UNESCO treaty, in Chinese, which Request formed the basis' of the public summary that the Department published." My clients' request is based on whatever the State Department published its summary of the request on and the State Department response to this request is not clear what the summary was based on or even who made it.

The search for certain responsive records is also an issue. For instance, Andrew Cohen's e-mails with the late Professor Danielle Parks indicate that she made comments to CPAC, those comments were not located and released. Finally, the fact that only 10 documents were located pursuant to Request Number 200704168 indicates that the search may not have been sufficient. There is no correspondence from a number of individuals specifically named in my clients' narrowed request, including attorney Theodore Rogers, nor are there any comments at all from the Cyprus American Archaeological Research Institute ("CAARI"). CAARI has touted in its newsletter a meeting it arranged between Maria Kouroupas and the Director of the Cypriot Archaeological Service before the renewal of the Memorandum of Understanding with Cyprus. Finally, there do not seem to be any e-mails to or from Maria Kouroupas about the Cyprus issue, even though Ms. Kouroupas worked extensively on this matter and as described above held meetings on the subject with

● Page 3                                                                                          May 22, 2008

outside parties. Thus, the search for information pertaining to the activities of Ms. Kouroupas, as well as other items, appears inadequate and will be challenged.

Finally, my clients will contest the executive review fees of $1491.00 for Request Number[1] 200600298 and $710.00 for Request Number 200402941. While payment will be made so that the lawsuit may go on, my clients will seek a refund of this amount. The fact that "executive" review time took 21 hours for two (2) documents for one request (200600298) and ten (10) hours for three (3) documents in another appear to be excessive. It is not apparent what took so long to review so little material. In light of this, my clients seek further documentation as to the "executive" review time for these requests, and will contest these fees unless they can be adequately substantiated by your clients.

I can inform you that my clients will not contest Count IV (Request Number 200503753) any further in this matter.

If your client wishes to reprocess any of the withheld material discussed above, conduct further searches for responsive documents, or recalculate its fees, my clients are willing to reevaluate the areas of concern discussed in the letter.

Thank you for your time and consideration. I hope to hear from you soon concerning these matters.

Sincerely,


Scott A. Hodes

---

[1] Even though the State Department reduced the overall fees my clients are responsible for to $500 for this request, this amount is still excessive and will be contested.

**SCOTT A. HODES, ATTORNEY AT LAW**
POST OFFICE BOX 42002
WASHINGTON, DC 20015



SUBURBAN MD 208
22 MAY 2008 PM 1 T

RECEIVED
2008 MAY 29 A 11: 47

X-RAYED
MAY 29 2008
**DOJ MAILROOM**

Mr. Brian P. Hudak
Assistant U.S. Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530