UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
ANCIENT COIN COLLECTORS GUILD, et al.,    )
                                                    )
            Plaintiffs,                             )
                                                    )        Civil Action No. 07-2074 (RJL)
      v.                                            )
                                                    )
UNITED STATES DEPARTMENT OF STATE,        )
                                                    )
            Defendant.                              )
                                                    )
_____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs, the International Association of Professional Numismatists ("IAPN"), the Professional Numismatists Guild ("PNG"), and the Ancient Coin Collectors Guild ("ACCG") brought this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to attempt to bring transparency to the public on the workings of the State Department's Bureau of Education and Cultural Affairs ("ECA") and the advisory committee that advises ECA (the Cultural Property Advisory Committee ("CPAC").[1]  Plaintiffs are all non-profit organizations

_____

[1] ECA and CPAC share responsibility for overseeing the imposition of import restrictions on cultural artifacts.  Foreign requests for import restrictions are made pursuant to the 1970 United Nations Educational Scientific and Cultural Organization Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property ("1970 UNESCO Convention").  See 823 U.N.T.S. 231 (1972).

The U.S. Senate gave its consent for ratification of the 1970 UNESCO Convention in 1972.  See U.S. Senate Report 97-564, located at http://culturalheritage.state.gov/97-564.html (last visited April 6, 2009).  The 1970 UNESCO Convention is not self-executing.  Accordingly, in 1983, the U.S. Congress passed the Cultural Property Implementation Act ("CPIA").  Under the CPIA, the U.S. reserved its "independent judgment" regarding the scope and need for import controls on cultural artifacts.  Id.  Hence, U.S. actions in these complex matters are not bound by the

that represent various interests of the numismatic community – and the information sought by

Plaintiffs will assist them in reaching their important organizational goals.  Complaint for

Declaratory Judgment and Injunctive Relief at ¶¶ 4-6 ("Compl.").

Plaintiffs filed suit only after months, and in some instances, years had passed without

Defendant responding to their FOIA requests.  During this same time frame, ECA has imposed

unprecedented import restrictions on ancient coins of Cypriot and Chinese type. [2]  While ECA

---

characterizations of other countries.  Id.  Instead, CPAC reviews and makes recommendations to
the executive branch about whether and to what extent to honor foreign requests for import
restrictions on cultural artifacts.  Id. at 22.  In so doing, CPAC aims to recommend a balance
between efforts to control looting at archeological sites and the needs of a legitimate
international exchange of cultural artifacts.  See id.

[2] ECA and/or its predecessor, the U.S. Information Agency, previously declined to impose
import restrictions on coins of Cypriot type in 2002.  See
http://culturalheritage.state.gov/chart.html (last visited April 6, 2009).  ECA also declined to
impose import restrictions on coins of Italian type in 2001 and 2006.  Id.  ECA first imposed
import restrictions on coins of Cypriot type on July 16, 2007.  Id.  Import restrictions were next
imposed on ancient Chinese coins on January 14, 2009.  See
http://culturalheritage.state.gov/whatsnew.html (last visited April 6, 2009).

Plaintiffs are very concerned that the recent Cypriot and Chinese "precedents" will be used "to
justify" overturning the current exemption from import restrictions enjoyed by ancient Roman
and Greek coins of Italian type when import restrictions on Italian artifacts are up for renewal in
2010.  Plaintiffs seek information in this FOIA lawsuit about the Cypriot, Italian and Chinese
requests in order to secure information necessary to argue for the preservation of this current
exemption.

Plaintiffs note that in particular the Chinese and Cypriot requests to impose import restrictions on
coins were fraught with irregularities.  Defendant has apparently admitted that China never
actually asked for import restrictions on coins.  See Grafeld Declaration at 7-9 (noting there were
no responsive records for the inclusion of coins in the list of items proposed to be restricted at the
behest of China).  Though Defendants produced documents indicating that Cyprus did request
import restrictions on coins, that last minute request also has raised many questions.  In
particular, irregularities related to the Cypriot request included:   (1) the receipt of a request from
Cyprus for new restrictions on coins after the period for public comment had elapsed; (2) failure
to publish notice of that request in the Federal Register (as has been done with other requests) or
to provide adequate time for comment pursuant to a Federal Register notice; (3) public
announcement of that request only at a January 25, 2007, CPAC hearing noticed to address
extension of current restrictions; (4) after complaint, provision of only ten days to receive public
comment; and (5) failure to recuse a CPAC member associated with the archaeological

has now required the small businesses of the numismatic trade and collectors to comply with extensive documentation requirements before such ancient coins of Cypriot or Chinese type may be imported legally into the United States, ECA has refused to fully document its own decision making processes for imposing import restrictions to Plaintiffs, to other members of the public interested in the legitimate international exchange of cultural artifacts and even to our elected representatives in the United States Congress.  See Id. ¶ 1.  Accord Declaration of Jay I. Kislak, the immediate past Chairman of CPAC ¶¶ 9-10 attached herein as Exhibit A ("Kislak Decl.") (noting that the State Department has misled Congress about CPAC's recommendations concerning whether to impose import restrictions on coins of Cypriot type).

As the Kislak Declaration and various newspaper articles demonstrate, the issues raised in Plaintiffs' lawsuit are a matter of public interest.  See Kislak Decl., ¶9; Exhibit B (newspaper articles reporting on import restriction and transparency issues); see also http://www.accg.us/issues/news/foia-suit-is-widely-supported/ (last visited April 15, 2009). Release of the requested information can only promote much needed transparency of process. See Kislak Decl. ¶¶ 4-6.  Such transparency of process will in turn encourage informed public

---

community who must secure permits from the Cypriot government to excavate on the Island from voting on the request to extend import restrictions to coins.

These irregularities beg the question whether CPAC really departed from its prior recommendation against imposing import restrictions on Cypriot coins and whether ECA accurately reported to Congress whether there was any difference between CPAC's recommendations and the decision to impose import restrictions on coins.  See Kislak Decl. ¶¶9-10 (attached as Exhibit A); 19 U.S.C. § 2602 (g)(2) (also cited as CPIA § 303(g)(2)).  The report to Congress produced in this litigation ignores this issue, and instead wrongly suggests that the decision to add coins to the designated list was in the hands of US Customs.  Documents produced in this litigation belie this claim. They clearly demonstrate that ECA directed US Customs about adding coins to the designated list.

comment about requests for import restrictions, better recommendations by CPAC, and more accountability from ECA staff to both CPAC and the public at large.  Id.

Accordingly, Plaintiffs respectfully request that the Court order the release of the documents at issue in this matter.  If the Court determines that it cannot order the release of these documents without first reviewing them, Plaintiffs ask that the Court undertake an in camera review of the materials in question prior to ordering release of the requested materials. See Ray v. Turner, 597 F.2d 1187, 1194-95 (D.C. Cir. 1978).

## ARGUMENT

## PLAINTIFFS' SPECIFIC FOIA REQUESTS

Plaintiffs specifically sought information via the FOIA from the State Department and its component ("ECA") on the inclusion of coins in the restrictions of cultural artifacts with China, Italy and Cyprus.  Eight FOIA requests were made from July 30, 2004 to October 11, 2007.  See Compl. at Counts I to IX[3].  When no responsive material was released pursuant to these requests, Plaintiffs filed this action.

Following the commencement of this action, Defendant located a number of documents and withheld others pursuant to FOIA exemptions 1, 2, 3, 5, 6, and 7(C).  Defendant has moved for summary judgment on these withholdings as well as for its search for responsive documents.

Plaintiffs, however, oppose Defendant's motion for summary judgment as to the search for responsive records, its use of exemptions 1, 2, 3, 5, 6 and 7(C) to withhold certain responsive records and its duty to segregate and release responsive information.  Defendant has not met its burden in showing that it conducted a reasonable search for responsive records nor has it established that the certain records may be withheld pursuant to the cited exemptions.  Thus,

---

[3] There is no Count V of the Complaint.  Further, Plaintiffs no longer contest Count IV of the Complaint.

Defendant's motion for summary judgment should be denied[4] and Plaintiffs' Cross-Motion should be granted.

## I. Defendant Has Not Established That It Conducted A Reasonable Search

Defendant alleges that it conducted an adequate search for responsive records. Defendant describes the search methods used in locating 127 responsive documents. Defendant's Memorandum at 4-5, 10-11; Declaration of Margaret Grafeld at 14-16 ("Grafeld Decl."). However, Defendant's description of its search does not fully establish that it conducted a reasonable search for all of the records requested by Plaintiffs.

This Circuit has consistently held that in order to meet its burden of an adequate FOIA search, an "agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" Weisberg v. U.S. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)(quoting Weisberg v. Department of Justice, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). To fulfill its obligation under the FOIA, an agency must demonstrate "beyond material doubt" that its search was "reasonably calculated to uncover all relevant documents." Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999). Defendant has failed to meet this burden in some instances in this matter.

The request of Plaintiffs' at issue[5] in Count VII of the Complaint specifically sought "any documentation evidencing the extension of import restrictions to coins of Cypriot types for the period January 25, 2007 to July 31, 2007" as well as "any written communications (including e-mails) between staff of the Cultural Heritage Center and third parties (who are not State Department employees) with regard to the restrictions on coins, for the period November 1, 2006

---

[4] Plaintiffs are not pursuing the names and identifying information pertaining to Customs and Border Patrol employees withheld pursuant to exemptions 6 and 7(C) of the FOIA.

[5] This request is identified as request number 200704168 by Defendant.

5

to July 31, 2007." See Complaint at ¶ 49.  The request of Plaintiffs at issue[6] in Count IX of the Complaint also specifically sought e-mails from Defendants.

It does not appear that anyone searched the computer of Maria Kouroupas, the Executive Director of CPAC, even though CPAC was heavily involved in the matters at issue in the requests and Defendants have produced only a few email chains that include e-mails from Ms. Kouroupas.  See Exhibit C.  This issue was highlighted to the State Department in a letter from Plaintiffs' counsel to Defendant's counsel on May 22, 2008 and included as an exhibit to the Grafeld Decl.  See Exhibit C to the Grafeld Decl.

Defendant does not indicate whether Ms. Kouroupas's computer was properly searched.  Initially, it should be noted that Ms. Grafeld and her staff did not actually conduct the search for the documents that would include emails that would have originated from computers of Ms. Kouroupas and other staff of the ECA.  According to Ms. Grafeld, this search was undertaken by ECA staff themselves and involved searching both manually and electronically for responsive documents.  Grafeld Decl. at 17-18.  No mention is made by Defendant of how long email is preserved by ECA staff, nor did Grafeld state that ECA staff searched archived or back up email tapes for responsive records.  In fact, Defendant does not state that no other responsive records exist, or did exist at one time.  As Plaintiffs only have the statements of Ms. Grafeld attesting to what another office within the State Department reported to her, Defendant has not adequately described its search for any possibly responsive emails—missing records Plaintiffs specifically brought to the attention of Defendant.[7]

---

[6] This request is identified as request number 200706194 by Defendant.

[7] As Defendant, through Ms. Grafeld and her office, has not adequately described ECA staff's search for or retention of these responsive records, Plaintiffs' respectfully request that it be permitted to take discovery of ECA staff on this issue.

Furthermore, Defendant's description of its search for records responsive to the requests at issue that were sought in the Bureau of Public Affairs, the Bureau of European and Eurasian Affairs and the Office of the Undersecretary for Political Affairs is not adequate to merit summary judgment.  Defendant describes in depth its search of these offices for records responsive to Plaintiffs' requests and highlights these offices involvement with the July 19, 2007 exchange of diplomatic affairs hosted by the Under Secretary for Political Affairs.  Grafeld Decl. at 20-21.  Defendant does not explain what search terms were actually used to locate responsive records, whether manual or electronic searches were conducted, nor what time frames were included in these searches.  Defendant's description of its search is confusing and appears to say it only searched for records concerning the July 19, 2007 ceremony from these offices.  While records associated with the ceremony were located, no other records from the former Under Secretary of Political Affairs dating from the time the decision to impose import restrictions on coins of Cypriot type were located by Defendants and no explanation has been provided.[8]

Thus, Defendant has not demonstrated that it conducted a search reasonably calculated to locate all responsive documents.  Therefore, Defendant's motion for summary judgment on its search for responsive records should be denied.

## II.  Defendant Has Not Established That Records Were Properly Withheld

Defendant has asserted that certain documents are properly withheld pursuant to FOIA exemptions 1, 2, 3, 5, 6 and 7(C).  As described below, Defendant has failed to establish that all

---

[8] Curiously, Cypriot lobbing groups awarded then Undersecretary of State Nicholas Burns with an award just days before Burns' subordinate, Dina Powell, signed an "action memo" authorizing import restrictions on coins of Cypriot type.  See http://news.pseka.net/uploads/img/documents/PSEKA-SAE_2007_Conference_EN_01_CEH_01.pdf (last visited April 7, 2009); see also Exhibit D (Redacted copy of Action memo produced in this litigation as well as letter from Burns' department supporting imposition of import restrictions.)

of these documents are properly exempt under the FOIA.[9]  Further, it should be pointed out that

Defendant and the Department of Justice, who is responsible for representing Defendant in this

matter, has not followed government policy in withholding documents in this matter.  The

President and the Attorney General have issued policy statements about the FOIA, and the

Attorney General has stated agencies should not withhold records simply because a FOIA

exemption applies and that the Department of Justice will defend agencies "only if (1) the

agency responsibly foresees that disclosure would harm an interest protected by one of the

statutory exemptions or (2) disclosure is prohibited by law."  FOIA Memorandum of Attorney

General Holder dated March 19, 2009 (located at http://www.usdoj.gov/ag/foia-memo-

march2009.pdf last visited April 3, 2009).  As much of the withheld material should be released

by Defendants under this standard, Defendant has not followed the governments own policies in

defending this action.

### A. Exemption 1

Defendant asserts that certain documents are protected pursuant to exemption 1 of the

FOIA because they are classified "confidential" pursuant to Executive Order 12958

Section1.4(b) or 1.4(d) as amended.  Defendant's Memorandum at 6 and 11-13.  Defendant relies

on the Grafeld Decl. at 51-52, 56-58, 64-66, and 70-73 to justify these classification decisions,

and therefore these withholdings.

Under Executive Order 12,958, as amended, information may not be classified unless

"the unauthorized disclosure of the information reasonably could be expected to result in damage

to the national security, which includes defense against transnational terrorism, and the original

classification authority is able to identify or describe the damage."  Exec. Order No. 12,958, as

---

[9] Plaintiffs are not contesting the withholdings made pursuant to exemption 7(C).

amended, § 1.1 (a) (4).  Information may not be classified to: "(1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of national security."  Id. § 1.7.

At the outset, it is difficult to comprehend how the "national security" or "foreign relations" of the United States is truly implicated by a request to impose import restrictions on ancient coins.  In addition, there must be an expectation that the information will be held in confidence for such information to be withheld.  Here, no such expectation of confidentiality can exist.  The Republic of Cyprus, the Republic of Italy and the People's Republic of China all provided the "foreign government information" in question pursuant to Article 9 of the 1970 UNESCO Convention, a provision that assumes that a foreign state will seek a concerted international response to problems of looting.[10]  Any effort to seek a "concerted international response" to the problem of looting is inconsistent with an expectation of privacy between member states.  Indeed, nowhere does the 1970 UNESCO Convention speak of such requests being "secret."  Under the circumstances, such "foreign government information" should not be held to be exempt from public disclosure.

---

[10] The text of Article 9 of the 1970 UNESCO Convention is as follows:

Any State Party to this Convention whose cultural patrimony is in jeopardy from pillage of archaeological or ethnological materials may call upon other States Parties who are affected. The States Parties to this Convention undertake, in these circumstances, to participate in a concerted international effort to determine and to carry out the necessary concrete measures, including the control of exports and imports and international commerce in the specific materials concerned.  Pending agreement each State concerned shall take provisional measures to the extent feasible to prevent irremediable injury to the cultural heritage of the requesting State.

See http://exchanges.state.gov/unesco01.html (last visited April 22, 2009).

This is particularly true of the information provided by the Republic of Cyprus.  A private group, the Cyprus American Archaeological Research Institute ("CAARI"), has made no secret of the fact that it has worked hand in glove with Cypriot officials on the renewal of import restrictions and their extension to coins.  See "Cyprus American Research Institute Celebrate 30 Years," (dated May 29, 2008) available at:

http://www.thecypriot.com/pages/tempalp.aspx?ID=676&sub=1 (last visited April 7, 2009) (Quoting CAARI's President, Gustave Feissel, as saying, "CAARI…, has been instrumental in the renewal of a Memorandum of Understanding between Cyprus and the US to restrict the import of Cypriot antiquities into the US, including for the first time ancient coins.").[11]  Indeed, CAARI acted as an intermediary between the chief Cypriot cultural bureaucrat and ECA officials, including Maria Kouroupas.  See Joseph A. Green, "Cyprus Director of Antiquities, Dr. Pavlos Flourentzos, Visits the US," 31 CAARI News 3 (Winter 2006) (available at:

http://www.caari.org/newsletters/CAARI-News-31.pdf)  (last visited April 7, 2009) ("Next he [Florentzos] was in Washington DC (hosted by CAARI Vice President Ellen Herscher) where he held …consultations on cultural property issues with Maria Kourpupas and Andrew Cohen of the U.S. State Department's Cultural Heritage Center.").  In addition, a heavily redacted email released by Defendant confirms that Cohen later corresponded with the late Danielle Parks, a CAARI affiliated archaeologist,[12] about imposing import restrictions on coins *even before* the Republic of Cyprus requested that the United States extend import restrictions to ancient coins.

---

[11] Oddly, despite this proclamation, Defendants have only produced one document from CAARI to CPAC.  See Exhibit E.

[12] Parks was awarded a Fellowship at CAARI and then served as Assistant to CAARI's Director. See Stuart Swiny and Bill Andreas, "Danielle Parks, An Appreciation," 34 CAARI News 2 (Fall 2007) (available at http://www.caari.org/newsletters/CAARI-News-34.pdf) (last visited April 7, 2009).

See Exhibit F.  As it is clear that the Republic of Cyprus and a third party worked together to press for import restrictions, there can be no expectation of confidentiality and/or the Court should hold that Cyprus waived any confidentiality claim.

Defendants have also withheld details of the PRC's request for import restrictions, FOIA Request No.  200501372, Compl. Ct. II.  The fact that the State Department's ECA placed what purported to be a summary of the PRC request on its web site should be dispositive of this issue.  See Exhibit G.  Placing such material in the public domain negates any claim that it is confidential.  Washington Post v. Department of Defense, 766 F. Supp. 1, 12-13 (D.D.C. 1991) (suggesting that the burden is on the agency when comparing publicly disclosed information with that which has been withheld).  Alternatively, posting what purports to be an English language summary on the State Department web site should constitute a waiver of any claim of confidentiality.  See Public Citizen v. Department of State, 11 F.3d 198 (D.C. Cir. 1993) (holding under facts of case that no such waiver occurred).

Defendant has not met its burden in establishing that the material it attempts to protect pursuant to FOIA exemption 1 is properly classified.  Therefore, summary judgment is not appropriate for the government on this issue.

**B. Exemption 2**

Defendant has withheld certain "case file numbers, record identification codes and other internal [Customs and Boarder [sic] Protection ("CBP"] codes" pursuant to exemption 2 of the FOIA.  See Defendant's Memorandum at 6 and 13-14; Grafeld Decl. at 59.  Defendant asserts that these are withheld pursuant to the low-2 portion of exemption 2.  Id.

Defendant does not provide any further description of this information—it merely states that it is "low 2" information.  In support of withholding this material, Defendant merely cites a number of cases that it claims allow "low-2" information to be protected.  Memorandum at 14.

Plaintiffs do not disagree that low-2 information may be withheld under FOIA case law; however, Defendant has not clearly established that the material it has withheld is actually low-2 information.  In fact, the Department of Justice counsels agencies to release low-2 information where it is less burdensome than invoking an exemption and withholding it, as Defendant has done here.  See Department of Justice FOIA Guide, Exemption 2 at 7, located at http://www.usdoj.gov/oip/foia_guide07/exemption2.pdf (last visited March 27, 2009); see also FOIA Post, April 17, 2009, located at http://www.usdoj.gov/oip/foiapost/2009foiapost8.htm (last visited April 22, 2009) ("Information covered by "Low 2" is, by definition, trivial to begin with, thus there would no reasonably foreseeable harm from release, and discretionary release should be the general rule.")

For information to actually be withheld pursuant to low-2, it must be (1) predominantly internal and (2) of a trivial nature and not of any genuine public interest.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  Defendant's summary description of this material does not meet its burden in establishing that this material qualifies as low-2 information.  Further, a number of the cases Defendant cites state that the type of information withheld by Defendant is protectable as both low-2 and high-2 information.  See, e.g. Coleman v. FBI, 13 F. Supp. 2d 75, 79 (D.D.C. 1998); Ferrenti v. Bureau of Alcohol, Tobacco & Firearms, 177 F. Supp. 2d 41, 45 (D.D.C. 2001).  Thus, it is not clear what the withheld information really encompasses and if it is truly being protected as only low-2 information.  As such, Defendant is not entitled to summary judgment on its use of this exemption.

### C. Exemption 3

Defendant next argues that 19 U.S.C. §§ 2605(h) and (i) are portions of a statute that allow the government to withhold information pursuant to FOIA exemption 3.  Defendant's reliance on 19 U.S.C. §§ 2605(h) and (i) is misplaced as subsection 2605(h) is not an exemption 3 withholding statute and defendant has not established that the provisions of subsection 2605(i) that would possibly allow it to invoke exemption 3 have been met in this instance.

Exemption 3 of the FOIA allows for the withholding of material that is "[s]pecifically exempted from disclosure by statute . . . provided that such statue (A) requires that the material be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).

For material to be protected pursuant to Exemption 3, it must be established that the asserted statute is a statute of exemption under the FOIA and second, the material must satisfy the criteria for exemption under that statute. Id.; CIA v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).  As will be shown below, Defendant has failed to establish that subsection 2605(h) is a statute of exemption under the FOIA and that, even if subsection 2605(i) can be construed as an exemption under the FOIA it has failed to establish that it satisfies the criteria under the statute.

### Subsection 2605(h) is not an Exemption 3 Statute

Defendant claims that subsection 2605(h) is an exemption 3(B) statute of exemption under the FOIA that exempts from disclosure materials discussed at closed CPAC meetings. Defendant's Memorandum at 15-16.  This subsection states that:

> The provisions of the Federal Advisory Committee Act (Public Law 92-463; 5 U.S.C.

Appendix) shall apply to the Committee except that the requirements of subsections (a) and (b) of section 10 and section 11 of such Act (relating to open meetings, public notice, public participation, and public availability of documents)  shall not apply to the Committee, whenever and to the extent it is determined by the President or his designee that the disclosure of matters involved in the Committee's proceedings would compromise the Government's negotiating objectives or bargaining positions on the negotiations of any agreement authorized by this chapter.

19 U.S.C. § 2605(h).  This language, despite Defendant's assertion, does not specifically exempt matters discussed at closed CPAC meetings from disclosure pursuant to the FOIA.

This subsection allows for CPAC to disregard the provisions of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. §§ 2 et. seq. when specific determinations are made that following the provisions of the FACA would "compromise the Government's negotiating objectives or bargaining positions on the negotiations of any agreement . . ."  19 U.S.C. § 2605(h).

For a statute to allow for exemption under exemption 3(B), the agency's exercise of its discretion under the withholding statute is governed not by the FOIA, but by the withholding statute itself.  See Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987).  The FOIA is not mentioned in the purported withholding statute at all.  This subsection only protects certain information from disclosure pursuant to the FACA for a certain period of time when specific conditions are met.  Thus, despite Defendant's assertion, the statute does not exempt the material from release when a FOIA request is made.

In fact, a FOIA request is only necessary for FACA material, where as here, the government purports that the material is not subject to the disclosure requirements of the FACA. See generally Food Chemical News v. Department of Health and Human Services, 980 F.2d 1468, 1472 (D.C. Cir. 1993) ("Disclosure of section 552(a)(2) materials clearly does not require a FOIA request, as FOIA requests are needed only for materials not "made available under

paragraphs (1) and (2)" of section 552(a)."). Thus, once a FOIA request is made for this information the agency must review the request under the FOIA, not the FACA, which has not been done in this instance. As such, summary judgment is not appropriate for the material Defendant asserts is exempt pursuant to subsection 2605(h)[13].

### Defendant has not Established that Subsection 2605(i) Protects the Withheld Information

Defendant next argues that subsection 2605(i) also protects certain information from disclosure pursuant to FOIA exemption 3 as it alleges that this subsection is clearly a non-disclosure statute. Defendant's Memorandum at 16-17. Unfortunately for Defendant, there is more to meeting the requirements of a non-disclosure statute than just citing the statute and saying it met the requirements of the statute. In this case, Defendant has not established that portions of this subsection are an exemption 3 statute nor, if it can be construed as an exemption 3 statute, that it has met the underlying requirements of either subsection 2605(i)(1) or (i)(2). Thus, Defendant is not eligible to withhold responsive information under these provisions from Plaintiffs.

Subsection 2605(i)(1) states that:

Any information (including trade secrets and commercial or financial information which is privileged or confidential) submitted in confidence by the private sector to officers or employees of the United States or to the Committee in connection with the responsibilities of the Committee shall not be disclosed to any person other than to- - (A) officers and employees of the United States designated by the Director of the United States Information Agency; (B) members of the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate who are designated by the chairman of either such Committee and members of the staff of either such Committee designated by the chairman for use in connection with negotiation of agreements or other activities authorized by this chapter; and (C) the Committee established under this chapter.

---

[13] Alternatively, even if subsection 2605(h) can be read as an exemption 3 withholding statute, Defendant has failed to meets its burden in establishing that this material is withholdable pursuant to the FOIA. Defendant cites to no actual findings made by any ECA Assistant Secretary closing CPAC meetings pursuant to subsection 2605(h). Without reference to these actual findings, Defendant has not established that this material is exempt from the FOIA.

19 U.S.C. § 2605(i)(1).  Thus, to be withheld under this subsection, the agency must show that

the information was given "in confidence" to it by a non-government employee.

Defendant does not demonstrate that this information was provided "in confidence."

Defendant provides just two conclusory paragraphs to justify this confidentiality from third

parties in the Declaration of Margaret Grafeld.  Ms. Grafeld states:

> I have been advised that members of the private sector frequently share information
> with the Committee and the Department on a confidential basis.  Those who collect,
> study and curate archaeological and ethnological material often share their observations
> about how such material enters the U.S.  These individuals provide this information
> with the expectation of confidentiality, not least because the illicit trade in cultural
> property involves significant, worldwide criminal activity.
>
> Members of the private sector also provide information to ECA staff during research-
> gathering trips to the requesting country.  Such research-gathering allows on-site
> inspections of cultural property sites.  On-site inspections allow the Department to
> learn about situations in which the pillaging of cultural objects occurs, as well as
> foreign law enforcement measures designed to prevent such acts.  The unauthorized
> disclosure of this information could undermine the Department's relationships with the
> private individuals who provide this information.  Disclosure of the specific locations of
> sites subject to looting, for example, could cause further looting of those or similar
> sites.

Grafeld Decl. at 37-38.

Ms. Grafeld's statements do not show that this material was provided to the State

Department, in confidence in any of the specific occasions in which confidentiality has been

invoked.  Ms. Grafeld's statements are general as to the fact finding process used by the State

Department in gathering information.  Further, Ms. Grafeld makes a statement about criminal

activity in the illicit trade in cultural property without supporting this assertion

While this may be a novel case in the question of determining whether the State

Department properly invoked this subsection to withhold material, there is another analogous

FOIA exemption that can be used to determine if the State Department has adequately justified

its withholding.  Exemption 7(D) of the FOIA protects law enforcement information provided by

confidential sources.  5 U.S.C. § 552(b)(7)(D).  Under Exemption 7(D), the U.S. Supreme Court

has held that confidentiality is determined on a case-by-case basis.  U.S. Department of Justice v.

Landano, 508 U.S. 165, 179-80 (1993).  The Court further held that "the question is not whether

the requested document is of the type that the agency usually treats as confidential, but whether

the particular source spoke with an understanding that the communication would remain

confidential."  Id. at 172.  Defendant has provided no facts concerning the instances in which

third parties have provided information to the State Department under conditions in which they

believe the information was provided in confidence.  Without these specific facts in each and

every instance, Defendant has not shown that it is eligible for summary judgment for information

protected pursuant to subsection 2605(i)(1).

> Subsection 2605(i)(2) protects government information that:
>
> Information submitted in confidence by officers or employees of the United States to
> the Committee shall not be disclosed other than in accordance with rules issued by the
> Director of the United States Information Agency, after consultation with the
> Committee.  Such rules shall define the categories of information which require
> restricted or confidential handling by such Committee considering the extent to
> which public disclosure of such information can reasonably be expected to prejudice
> the interests of the United States. Such rules shall, to the maximum extent feasible,
> permit meaningful consultations by Committee members with persons affected by
> proposed agreements authorized by this chapter.

19 U.S.C. § 2605(i)(2).  Thus, to be withheld under this subsection, the government needs to

establish rules that define categories of material requiring "restricted or confidential handling" by

the Committee.  Id.  Defendant does not cite any such rule in stating that material is protected

under this subsection.  In fact, Defendant goes as far as to state that "Plaintiffs here do not allege,

because they cannot, that they requested materials in this action in accordance with rules

promulgated regarding the release of government information provided to CPAC."  Defendant's

Memorandum at 17.  Defendant is correct because as far as Plaintiffs can tell, these rules do not

exist.  Without these rules, it is not possible to establish that any material is protectable as an

exemption 3 statute pursuant to subsection (i)(2).

Furthermore, because of the great amount of discretion allowed in promulgating these

non-disclosure rules, it appears that subsection (i)(2) is not even an exemption 3 non-disclosure

statute.  See generally CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1137-43 (D.C. Cir. 1987);

Church of Scientology v. USPS, 633 F.2d 1327, 1333 (9th Cir. 1980)

Finally, as the discussion above concerning subsection (i)(1) demonstrated, even if this

subsection is construed as an exemption 3 statute, and if the required withholding rules actually

exist, Defendant's failure to describe the factual situations in which documents are withheld are

yet another reason why Defendant has not established that this material is properly withheld

under this subsection.

Thus, for the reasons provided above, Defendant has not established that any of the

material it has withheld pursuant to FOIA exemption 3 is appropriate for withholding under that

exemption.  Therefore, summary judgment on the exemption 3 material is not appropriate and

this material should be released to Plaintiffs.

### D. Exemption 5

Defendant next invokes the deliberative process privilege and attorney-client privilege

of exemption 5 to withhold certain documents.  Defendant's Memorandum at 8, 17-20.

Defendant asserts that material included in CPAC reports, including entirely factual material and

final CPAC recommendations, are protected by deliberative process privilege.  Id. at 8, Grafeld

Decl. at 54-55, 70.[14]  Despite Defendant's arguments, this material is not appropriate for

withholding pursuant to exemption 5 and should be released.

Defendant claims that discussions of CPAC meetings as well as CPAC's final

recommendations are protected by the deliberative process privilege.  Defendant argues that this

material "constitutes pre-decisional deliberative process material (with some inextricably

intertwined facts that cannot be meaningfully segregated)."  Grafeld Decl. at 55.  Further,

Defendant states that "summaries that were culled by the Committee from the much larger

universe of facts presented to it such that their release would harm the Committee's and the

Department's deliberative process by reflecting the discretionary distillation of information and

exercise of judgment as to what issues are most relevant to the pre-decisional findings and

recommendations."  Id.

While Defendant touches on all the appropriate FOIA buzzwords necessary to withhold

information under the deliberative process privilege, it omits certain facts that demonstrate that

this material, while possibly being a committee recommendation or even what is termed

"deliberative facts," is not appropriately withheld pursuant to exemption 5 of the FOIA.  CPAC

is an advisory committee and as discussed in Defendant's Memorandum such is required to

operate under the terms of the FACA except where the release of CPAC's proceedings would

harm the government's negotiating positions or objectives.[15]  Defendant's Memorandum at 15;

---

[14] Defendant also claims that it has consistently withheld CPAC reports, but that is untrue.  In
fact, as indicated in Plaintiffs' Exhibit H, Defendant has previously released a CPAC report
related to Italy in full.  Defendant does not explain why that report was released, but it has
refused to release others related to both Cyprus and Italy.  Additionally, CPAC reports are
required to be sent to Congress upon their completion without any limitations upon Congress as
to their use.  See 19 U.S.C. § 2605(f).

[15] This statute actually states that CPAC may disregard the provisions of the FACA when
specific determinations are made that following the provisions of the FACA would "compromise

19 U.S.C. § 2605(h).  Defendant does not argue that the CPAC material withheld pursuant to exemption 5 would harm the government's negotiating positions or bargaining positions pursuant to 19 U.S.C. § 2605.  Absent, this harm, CPAC material, as coming from an advisory committee is required to be made public unless a finding is made to close the FACA meeting.  5 U.S.C. App. §§ 10-11.  Defendants have cited no instances where the FACA meetings were closed to the public, and even if it can be established that they were, the information that can be gleaned from closed and open meetings is not segregated in the CPAC report.  Thus, this information even if it is construed as deliberative and pre-decisional is not the type of information that is allowed to be withheld under the privilege by the laws implementing the CPAC.  See Wolfe v. Weinberger, 403 F. Supp. 238, 240-42 (D.D.C. 1975) ([A]n advisory committee cannot have a "double identity" as an agency and hence cannot invoke the (b)(5) exception.")

Even if Defendants can establish that this material was not subject to release under the FACA, the FACA exemption is temporal and should be released under the FOIA.  Jay Kislak, the chair of CPAC at the time many of these decisions were made states that the release of the documents would benefit the work of CPAC and actually allows it to make better recommendations.  Kislak Decl., ¶¶ 5-6.  As Mr. Kislak explains, the release of the material would not cause any chilling effect in the process of CPAC making recommendations to the State Department.  Id.  In fact, Mr. Kislak states that the Defendants have improperly reported the CPAC recommendations to Congress as required by law, and the release of this information would clarify the record on the issue.  Id. at ¶9.  Thus, even if this material could be withheld

the Government's negotiating objectives or bargaining positions on the negotiations of any agreement . . ."  19 U.S.C. § 2605(h).

under this privilege, the statements of Mr. Kislak clearly establish that in this case, the underlying rationale for withholding deliberative process material is not appropriate and would not cause the type of harm invoking the privilege is supposed to protect against.[16]  Thus, this information is not properly withheld under the deliberative process privilege and should be released.

Further, factual information is not appropriate to be withheld in this instance.  Factual material in an otherwise pre-decisional document is not protected pursuant to the deliberative process privilege.  See Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 867 (D.C. Cir. 1982).

Defendant claims that certain of the documents it is withholding pursuant to the deliberative process privilege are factual, but are "summaries that were culled by the Committee for the much larger universe of facts presented to it."  Grafeld Decl. at 55.  Thus, Defendant claims that this purely factual material is a distillation of facts and it can then withhold this material as deliberative.  However, it is clear that this factual material is not the type of deliberative facts that are appropriate for withholding pursuant under the deliberative process privilege of FOIA exemption 5.

Defendant is correct that there are some exceptions that allow for facts to be withheld as deliberative, and Defendant cites Mapother v. Dep't of Justice, 3 F. 3d 1533 (D.C. Cir. 1993) as allowing certain facts in this instance to be withheld.  Mapother involved agency personnel sifting through voluminous facts about the Nazi past of the late Austrian leader Kurt Waldheim,

---

[16] As stated previously, absent any harm, government policy states that this type of information should be released by agencies.  See FOIA Memorandum of Attorney General Holder dated March 19, 2009 (located at http://www.usdoj.gov/ag/foia-memo-march2009.pdf last visited April 3, 2009); see also FOIA Post, April 17, 2009, located at http://www.usdoj.gov/oip/foiapost/2009foiapost8.htm (last visited April 22, 2009).

making an "exercise of judgment" on these facts and then making a recommendation about whether or not the government should take action against Waldheim.  Id. at 1539.  Defendant's cursory statement about the "summaries" it attempts to protect does not rise to the level of an "exercise of judgment" by agency officials.  Nor are agency officials even making a judgment, it is CPAC, an advisory committee, that is summarizing the facts according to Defendant.  In fact, Mapother's finding that facts that "reflect[ed] no point of view," id. at 1539-40, is much more determinative to the issue at hand, and reflects that the facts here are not protected by the deliberative process privilege and should be released.

Defendant also claims that legal advice given to CPAC is protected by the deliberative process privilege.  Documents that "discuss established policies and decisions" are not withholdable pursuant to this privilege.  See Coastal States, , 617 F. 2d 854 at 868.  Thus, the advice given by attorneys that describe established law may not be withheld under the deliberative process privilege.

Defendant further tries to assert the attorney client privilege to protect this legal advice.  Interpretations of agency law – even if they meet all other requirements of the attorney client privilege are not protectable under the privilege.  See Tax Analysts v. IRS, 117 F. 3d 607, 619-20 (D.C. Cir. 1997).  Thus, the material Defendant attempts to withhold that comes from State Department attorneys is not withholdable pursuant to the FOIA.

Thus, Defendant has clearly not met its burden in establishing that it may withhold CPAC material pursuant to the deliberative process or attorney client privileges.  Therefore, summary judgment on these documents is inappropriate and this material should be released to Defendants.

**E. Exemption 6**

Defendant next asserts that it withheld the names and other personal identifying information of mid-level career State Department employees.  Memorandum at 8-9, 21-22.  Defendant's rationale for these withholdings is that "numismatists have already lodged personal attacks in public forums against Department employees for doing their jobs under the CPIA."  Id. at 21-22.

Initially, it should be noted that Defendant has withheld a great deal more information than the names and personally identifying information of State Department employees pursuant to exemption 6.  The Grafeld Declaration establishes that Defendant withheld names and other identifying information of Customs and Border Patrol ("CBP") employees pursuant to exemption 6, see Grafeld Decl. at 74, as well as the names and indentifying information of private individuals who allegedly provided information to CPAC in their personal capacity.  Id. at 55.  Defendant does not discuss these withholdings in its summary judgment memorandum.

Defendant should be ordered to release the names of the third parties who Defendant's characterize as providing information to CPAC in their personal capacity.[17]  To protect this information, the public's right to this information must be balanced against any privacy interest in this material.  See Dep't of the Air Force v. Rose, 425 U.S. 353, 372 (1976).  Where no privacy interest is established, the information must be disclosed.  See Ripskis v. HUD, 746 F. 2d 1, 3 (D.C. Cir. 1984).  These individuals provided information to CPAC about the proposed import rules; as such they did so about a commercial, non-personal matter.  See Exhibit I (Redacted list of individuals providing information to CPAC on import rules).  The names of individuals who submit comments about a proposed agency rule are not appropriate for

---

[17] Plaintiffs do not seek the names of the CBP employees nor do they seek the addresses or phone numbers of any of the individuals names withheld pursuant to this exemption.

withholding pursuant to exemption 6.  See Alliance for the Wild Rockies v. DOI, 53 F. Supp. 2d 32, 36-37 (D.D.C. 1999).  Additionally, individuals who communicate with the government about business matters do so with no or little expectation of confidentiality.  See Fortson v. Harvey, 407 F. Supp. 2d 13, 17-18 (D.D.C. 2005); see also Sims v. CIA, 642 F. 2d 562, 574 (D.C. Cir. 1980); Bd. Of Trade v. Commodity Futures Trading Commission, 627 F. 2d 392, 399-400 (D.C. Cir. 1980).  Further, the release of these names would allow the public to know who is trying to influence agency decision makers – which goes to the core purpose of the FOIA, "shedding light on an agency's performance of its statutory duties."  United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989).  As such, the public interest outweighs any privacy interest that can be construed in these individual's names and this information should be released to Plaintiffs.

Next, Defendant makes scurrilous and unsubstantiated statements about threats "numismatists" made about a State Department employee.  In fact, Defendant appears to refer to a statement from an article that appeared in the March 2002 edition of Art & Auction magazine. This article is a profile of CPAC Staff Director Maria Kouroupas.  See Art & Auction, March 2002 attached as Exhibit J.  The article contains a great deal of comments critical of Ms. Kouroupas's performance in her official capacity as CPAC's staff director but contain no threats or even anything that could be construed as harassment.  Id.  One of the comments about Ms. Kouroupas refer to her as a "smart weapon," a characterization quoted in the blog of Plaintiff ACCG's Executive Director, which is located  at http://www.coinlink.com/News/ancients/the-phantom-opera/ (last visited April 2, 2009).  These writings, however, are not threats or anything that could be construed as harassment or even potential harassment.  In fact, Defendant points to

no actual threatening or harassing statements against government employees actually made by Plaintiffs or others in the numismatist community.

In actuality, the names of "mid level State Department employees" are not appropriate for a blanket withholding pursuant to exemption 6.  See Baez v. Dep't of Justice, 647 F. 2d 1328, 1338 (D.C. Cir. 1980).  To properly invoke exemption 6 for employee names, an agency must show that a threat to employees is real, not speculative.  Elec. Privacy Info. Ctr. v. DHS, 384 F. Supp. 2d 100, 116-117 (D.D.C. 2005).  Defendant does not assert any real harm in releasing the names of State Department employees.  As discussed above, the threat the Defendant asserts is not actually true and is best speculative.  Thus, no privacy interests have been established by Defendant.  Additionally, the identity of one such employee, Ms. Kouroupas, is well known as shown by the article in which Ms. Kouroupas was willingly interviewed for.  See Exhibit I. Further, the public interest in the identity of these employees and the role they played in the underlying matter is significant as it establishes what roles they as government employees played in the making of decisions in import restrictions.  As such, the public interest outweighs the minimal privacy interests of these State Department officials, and these names should be released pursuant to FOIA exemption 6.[18]

As such, Defendant should release the names of the third parties who provided information to CPAC as well as the identities of the State Department employees who have been withheld pursuant to FOIA exemption 6.

**F. Duty to Segregate**

Finally, Defendant claims that all reasonably segregable information has been released. Defendant's Memorandum at 24; Grafeld Decl.at 79.  However, Defendant has not fully met its

---

[18] As with the third parties who provided information to Defendant, Plaintiffs are only interested in receiving the names of these individuals not other personally identifying information.

burden in establishing that all segregable information was released.  In order to justify that no documents that are withheld in full can be segregated, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." Mays v. Drug Enforcement Administration, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting Neufeld v.IRS, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).  Grafeld merely states that "[a]ll of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and I have determined that no segregation of meaningful information in the withheld documents can be made . . ."  Grafeld Decl. at 79.  Defendant provides no other facts on how it reviewed the documents to ascertain that documents were not segregable.  This omission from which it may be inferred that staff reviewed each document for the purpose of determining whether the withheld documents contained any segregable information that could be released is determinative that summary judgment on the issue of segregability should be denied to Defendant.  See Durrani v. United States Department of Justice, 2009 WL 755219 at *8 (D.D.C. March 24, 2009).

## CONCLUSION

Defendant has failed to meet its burden of proving that it properly withheld portions of records at issue in this matter.  Accordingly, these records should be disclosed to Plaintiffs.

Dated:  April 24, 2008

Respectfully Submitted,

_____/s/_____
Scott A. Hodes, D.C. Bar #430375
P.O. Box 42002
Washington, D.C.  20015
301-404-0502
413-641-2833 (fax)

Attorney for Plaintiffs