# ANCIENT COIN COLLECTORS GUILD, et al.,

# v.

# UNITED STATES DEPARTMENT OF STATE

# Civil No. 07-2074 (RJL)

# Exhibit 2 to Kislak Declaration

2856



**United States Department of State**

*Washington, D.C. 20520*
*www.state.gov*
AUG 2 9 2007

Dear Madam Speaker:

Pursuant to the requirement of section 303(g) of the Convention on Cultural Property Implementation Act, 19 U.S.C. 2602(g) ("the Act"), the Department is reporting actions taken to extend the "Memorandum of Understanding Between the Government of the United States of America and the Government of the Republic of Peru Concerning the Imposition of Import Restrictions on Archaeological Material from the Pre-Hispanic Cultures and Certain Ethnological Material from the Colonial Period of Peru"; and, to extend the "Memorandum of Understanding Between the Government of the United States of America and the Government of the Republic of Cyprus Concerning the Imposition of Import Restrictions on Pre-Classical and Classical Archaeological Objects and Byzantine Ecclesiastical and Ritual Ethnological Material."

These actions were taken pursuant to Presidential authorities conferred by the Act that were vested in the Secretary of State pursuant to E.O. 12555 of March 10, 1986 and the Foreign Affairs Reform and Restructuring Act of 1998. Delegation of Authority Nos. 234 (October 1, 1999) and 236-2 (May 8, 2000) further delegated these authorities to the Under Secretary for Public Diplomacy and Public Affairs and the Assistant Secretary for Educational and Cultural Affairs, respectively.

As provided by the Act and Article 9 of the 1970 UNESCO Convention on the illicit transfer of cultural property, Peru and Cyprus requested assistance from the United States to reduce the incentive for pillage of archaeological and ethnological material putting their cultural heritage in jeopardy. With respect to Peru, an MOU setting forth import restrictions first entered into force on June 9, 1997, for five years, and was extended in 2002 for an additional five years. With respect to Cyprus, an MOU setting forth import restrictions entered into force on July 16, 2002, for five years, and was amended in 2006 to include

The Honorable
     Nancy Pelosi,
          Speaker of the House of Representatives.

- 2 -

Byzantine material which, up to that time, had been under emergency protection. The Cultural Property Advisory Committee ("the Committee") reviewed the proposals to extend each MOU for an additional five years. After considering the findings and recommendations of the Committee, and pursuant to the requirements of section 303 of the Act with respect to determinations to be made before extending or entering into an agreement with a State Party to impose import restrictions, final determinations were made to extend both MOUs. The Department exchanged diplomatic notes with each country in order to effectuate the MOUs.

In fulfillment of the reporting requirement, I am pleased to forward copies of these notes extending and amending the MOUs with Peru and Cyprus, and the Federal Register notices promulgated by the Department of Homeland Security which is responsible for implementation of corresponding import restrictions. The Federal Register notice for Cyprus was amended by the Department of Homeland Security, in consultation with the Department of State, to include coins of Cypriot types which are also vulnerable to archaeological looting.

Sincerely,

Jeffrey T. Bergner
Assistant Secretary
Legislative Affairs

Enclosure:  As stated.

10-24-07: 2:51PM:



**United States Department of State**

*Washington, D.C. 20520*
*www.state.gov*
AUG 2 9 2007

Dear Mr. President:

Pursuant to the requirement of section 303(g) of the Convention on
Cultural Property Implementation Act, 19 U.S.C. 2602(g) ("the Act"), the
Department is reporting actions taken to extend the "Memorandum of
Understanding Between the Government of the United States of America and
the Government of the Republic of Peru Concerning the Imposition of Import
Restrictions on Archaeological Material from the Pre-Hispanic Cultures and
Certain Ethnological Material from the Colonial Period of Peru"; and, to extend
the "Memorandum of Understanding Between the Government of the United
States of America and the Government of the Republic of Cyprus Concerning
the Imposition of Import Restrictions on Pre-Classical and Classical
Archaeological Objects and Byzantine Ecclesiastical and Ritual Ethnological
Material."

These actions were taken pursuant to Presidential authorities conferred
by the Act that were vested in the Secretary of State pursuant to E.O. 12555 of
March 10, 1986 and the Foreign Affairs Reform and Restructuring Act of 1998.
Delegation of Authority Nos. 234 (October 1, 1999) and 236-2 (May 8, 2000)
further delegated these authorities to the Under Secretary for Public Diplomacy
and Public Affairs and the Assistant Secretary for Educational and Cultural
Affairs, respectively.

As provided by the Act and Article 9 of the 1970 UNESCO Convention
on the illicit transfer of cultural property, Peru and Cyprus requested assistance
from the United States to reduce the incentive for pillage of archaeological and
ethnological material putting their cultural heritage in jeopardy. With respect to
Peru, an MOU setting forth import restrictions first entered into force on June 9,
1997, for five years, and was extended in 2002 for an additional five years.
With respect to Cyprus, an MOU setting forth import restrictions entered into
force on July 16, 2002, for five years, and was amended in 2006 to include

The Honorable
    Richard B. Cheney,
        President of the Senate.

10-24-07; 2:51PM;

- 2 -

Byzantine material which, up to that time, had been under emergency protection. The Cultural Property Advisory Committee ("the Committee") reviewed the proposals to extend each MOU for an additional five years. After considering the findings and recommendations of the Committee, and pursuant to the requirements of section 303 of the Act with respect to determinations to be made before extending or entering into an agreement with a State Party to impose import restrictions, final determinations were made to extend both MOUs. The Department exchanged diplomatic notes with each country in order to effectuate the MOUs.

   In fulfillment of the reporting requirement, I am pleased to forward copies of these notes extending and amending the MOUs with Peru and Cyprus, and the Federal Register notices promulgated by the Department of Homeland Security which is responsible for implementation of corresponding import restrictions. The Federal Register notice for Cyprus was amended by the Department of Homeland Security, in consultation with the Department of State, to include coins of Cypriot types which are also vulnerable to archaeological looting.

                                        Sincerely,

                                        Jeffrey T. Bergner

                                        Jeffrey T. Bergner
                                        Assistant Secretary
                                        Legislative Affairs

Enclosure: As stated.

No. 457

The Embassy of the United States of America presents its compliments to the Ministry of Foreign Relations of the Republic of Peru and has the honor to refer the Ministry of Foreign Affairs of the Government of Peru to the Memorandum of Understanding between the Government of the United States of America and the Government of the Republic of Peru concerning the Imposition of Import Restrictions on Archaeological Material from the Prehispanic Cultures and Certain Ethnological Material from the Colonial Period of Peru signed at Washington June 9, 1997 as amended and extended (hereinafter referred to as "the MOU").

The Embassy, on behalf of the Government of the United States of America, proposes that, pursuant to Article IV. A of the MOU, the MOU be extended for an additional five-year period.

The Embassy further proposes that, pursuant to Article IV. B of the MOU, the MOU be amended by replacing Article II with the attached revised Article II.

If the foregoing proposals are acceptable to the Ministry of Foreign Affairs, the Embassy proposes that this note, including the attached revised Article II, and the Ministry's note in reply, shall constitute an agreement to amend and extend the MOU, which shall enter into force on the date of your note in reply and shall be effective on June 9, 2007.

The Embassy of the United States of America avails itself of this opportunity to reiterate to the Ministry of Foreign Relations of the Republic of Peru the assurances of its highest consideration.

DIPLOMATIC NOTE

10-24-07; 2:61PM;

Enclosure: As stated.

Embassy of the United States of America,

    Lima, May 23, 2007.



10-24-07; 2:01PM;

United States of America-Republic of Peru Memorandum of Understanding

Extension 2007

Revised Article II

A. Representatives of the Government of the United States of America and representatives of the Government of Peru will take action to publicize this Memorandum of Understanding and the reasons for it.

B. The Government of the United States of America will use its best efforts to facilitate the provision to Peru of technical assistance in cultural resource management and security through available programs in the public and private sectors.

C. Both Governments will use their best efforts to encourage academic institutions, non-governmental institutions, and other organizations to collaborate in the preservation and protection of Peruvian cultural patrimony through the provision of technical assistance, expertise, and resources.

D. Both Governments will endeavor to facilitate the exchange of information on the effectiveness of the measures agreed to in this Memorandum of Understanding, including with respect to investigations undertaken by their respective law enforcement authorities.

E. The Government of Peru will consider granting, within current Peruvian law, long-term loans of objects of archaeological and ethnological interest for exhibit or study at museums and academic institutions in the United States, under circumstances in which such exchange does not jeopardize the cultural patrimony of Peru.

F. The Government of Peru will use its best efforts to carry out the legal reforms it deems necessary to improve further the protection of its archaeological and ethnological cultural patrimony, engaging in these efforts those responsible for investigating, prosecuting, and adjudicating crimes against its heritage.

G. The Government of Peru will use its best efforts to enforce its law requiring the registration of objects pertaining to its national cultural heritage, including those held in public institutions, religious institutions, and private collections.

H. The Government of Peru will use its best efforts to devise and maintain a comprehensive record of incidents of looting of archaeological sites as well as ecclesiastical institutions. Such record shall include an indication of the eventual outcome of such cases.

I. The Government of Peru will continue its impressive efforts in public awareness programs and professional training undertaken through the Directorate for the Defense of the Historic Heritage; and consider including judges, tour guides, and journalists in its target audiences.

J. The Government of Peru will endeavor to make available case studies of effective efforts to fight looting undertaken at the local level, so that other communities might try similar methods.

(0-24-07; 2:01PM;

NOTA (SPC) N° 6 - 3 /225

El Ministerio de Relaciones Exteriores - Subsecretaría de Política Cultural Exterior - saluda muy atentamente a la Honorable Embajada de los Estados Unidos de América, y tiene a bien referirse a su atenta nota N-457 del 23 de mayo del 2007, a través de la cual informa sobre la propuesta del Gobierno de los Estados Unidos de América, de renovar por cinco (5) años adicionales, la vigencia del "Memorando de Entendimiento    entre el Gobierno del Perú y el Gobierno de los Estados Unidos de América relativo a la imposición de restricciones de importación sobre material arqueológico de las culturas prehispánicas y cierto material etnológico del período colonial del Perú", suscrito en la ciudad de Washington, Estados Unidos, el día 9 de junio de 1997 y extendido en 2002, por cinco (5) años adicionales, el cual vence el próximo 7 de junio del 2007.

El Ministerio de Relaciones Exteriores - Subsecretaría de Política Cultural Exterior - tiene a bien informar a la Honorable Embajada de los Estados Unidos de América, que habiendo recibido la plena conformidad del Instituto Nacional de Cultura (INC), en relación al contenido de la Nota N-457-2007 de esa Honorable Embajada, así como la modificación del Artículo II del citado Instrumento, el Gobierno de Perú acepta la propuesta de prorrogar el citado "Memorando de Entendimiento" antes aludido, por un período de cinco (5) años, confirmando de esta manera que la citada Nota Diplomática, conjuntamente con la presente Nota Verbal de respuesta, constituirán un acuerdo para la extensión y enmienda del Memorando de Entendimiento en mención, y que entrará en vigencia el próximo 9 de junio del 2007.

El Ministerio de Relaciones Exteriores - Subsecretaría de Política Cultural Exterior - aprovecha la oportunidad para reiterar a la Honorable Embajada de los Estados Unidos de América, las seguridades de su más alta y distinguida consideración.

Lima,  28 de mayo de 2007



A LA HONORABLE
      EMBAJADA DE LOS ESTADOS
      UNIDOS DE AMÉRICA
      CIUDAD.-

10-24-07; 2:51PM;

Memorando de Entendimiento entre el Perú y los Estados Unidos de América

Extensión 2007

Revisión del Artículo II

A. Representantes del Gobierno de los Estados Unidos de América y representantes del Gobierno del Perú tomarán medidas para dar publicidad al presente Memorando de Entendimiento y los motivos para ello.

B. El Gobierno de los Estados Unidos de América hará todo lo posible por facilitar el suministro a Perú de asistencia técnica en gestión de recursos culturales y seguridad por medio de programas disponibles en los sectores público y privado.

C. Ambos gobiernos harán todo lo posible por alentar a las instituciones académicas, no gubernamentales y otras organizaciones a que colaboren en la preservación y protección del patrimonio cultural peruano por medio del suministro de asistencia técnica, conocimientos especializados y recursos.

D. Ambos gobiernos procurarán facilitar el intercambio de información sobre la eficacia de las medidas acordadas en el presente Memorando, incluidas las investigaciones emprendidas por sus respectivas autoridades en aplicación de la ley.

E. El Gobierno del Perú considerará otorgar préstamos a largo plazo, dentro de la legislación peruana vigente, de objetos de interés arqueológico o etnológico para su exposición o estudio en museos e instituciones académicas en los Estados Unidos, en circunstancias en las que dicho intercambio no ponga en peligro su patrimonio cultural.

F. El Gobierno del Perú hará todo lo posible por llevar a cabo las reformas jurídicas que estime necesarias para mejorar más la protección de su patrimonio cultural arqueológico y etnológico, y lograr la participación en estos esfuerzos de los responsables de investigar, enjuiciar y sentenciar en casos de delitos contra el patrimonio.

G. El Gobierno del Perú hará todo lo posible por hacer cumplir su ley que requiere el registro de objetos pertenecientes al patrimonio cultural nacional, incluidos los que se conservan en instituciones públicas y religiosas y en colecciones privadas.

H. El Gobierno del Perú hará todo lo posible por elaborar y mantener un registro detallado de los incidentes de saqueo de los emplazamientos arqueológicos, así como instituciones eclesiásticas, inclusive la resolución final de dichos casos.

I. El Gobierno del Perú continuará sus admirables medidas, como los programas de concientización pública y capacitación profesional emprendidos por medio de la Dirección de Defensa del Patrimonio Histórico; y considerará incluir en su público objetivo a jueces, guías de turismo y periodistas.

J. El Gobierno del Perú procurará poner a disposición los estudios de casos de medidas eficaces de lucha contra el saqueo que se hayan emprendido al nivel local, de modo que otras comunidades puedan ensayar el uso de métodos similares.

The Department of State refers the Embassy of the Republic of Cyprus to the Memorandum of Understanding Between the Government of the United States of America and the Government of the Republic of Cyprus Concerning the Imposition of Import Restrictions on Pre-Classical and Classical Archaeological Objects and Byzantine Period Ecclesiastical and Ritual Ethnological Material done at Washington July 16, 2002, and as amended August 17, 2006 (hereinafter referred to as "the MOU").

The Department, on behalf of the Government of the United States of America, proposes that, pursuant to Article IV.A of the MOU, the MOU be extended for an additional five-year period.

The Department further proposes that, pursuant to Article IV.B of the MOU, the MOU be amended by replacing Article II with the enclosed revised Article II.

If the foregoing proposals are acceptable to the Embassy of the Republic of Cyprus, the Department proposes that this note, including the enclosed revised

**DIPLOMATIC NOTE**

- 2 -

Article II, and the Embassy of the Republic of Cyprus' note in reply, shall

constitute an agreement to extend and amend the MOU, which shall enter into

force on the date of your note in reply and shall be effective as of July 16, 2007.

Enclosure:                           $RNB$

   As stated.

Department of State,

   Washington, July 3, 2007.

United States of America-Republic of Cyprus Memorandum of Understanding

Extension 2007

Revised Article II

A. The Government of the United States of America and the Government of the Republic of Cyprus should seek to publicize this Memorandum of Understanding and the reasons for it, through various means available.

B. The Government of the Republic of Cyprus will expand its efforts to discourage pillage of cultural resources, and the unauthorized export of such material, through tourist education programs, including posting appropriate warnings at airports, hotels, museums, and other public areas that draw attention to this Memorandum of Understanding and to the cultural heritage protection laws of Cyprus.

C. The Government of the Republic of Cyprus will expand its initiatives in support of the importance of protecting and preserving the cultural heritage of Cyprus into schools and to the general public.

D. Both Governments agree that, in order for United States import restrictions to be fully successful in deterring pillage, the Government of the Republic of Cyprus will continue to seek similar cooperation from countries with significant import trade in Cypriot archaeological artifacts and ethnological materials and will strengthen enforcement of its own cultural heritage protection laws.

E. The Government of the Republic of Cyprus will seek to complete its inventory of cultural resources in museums, ecclesiastical buildings, private collections, and archaeological sites. Every effort should be made to engage all Cypriots in this effort.

F. The Government of the Republic of Cyprus will develop management plans for the effective protection of those archaeological sites that are open to the public.

G. The Government of the Republic of Cyprus will use its best efforts to further restrict the use of metal detectors.

H. Recognizing that rapid land development can give rise to pillage, the Government of the Republic of Cyprus will seek ways to partner with private cultural resource management entities for the purpose of conducting salvage archaeology and historic preservation.

I. The Government of the Republic of Cyprus will, with the assistance of the international community, study ways to prevent illegal exports from anywhere on the island.

J. The Government of the Republic of Cyprus will seek to expand the exchange of its archaeological objects and its ethnological materials under circumstances in which such exchange does not jeopardize its cultural heritage, such as for temporary loans for exhibitions, including long-term loans whenever appropriate, and for other cultural, educational, and scientific purposes.

1

K. The Government of the United States of America will use its best efforts to expand exchanges with Cyprus that foster greater understanding and preservation of Cypriot heritage.

L. Both parties to this Memorandum of Understanding will continue to support bi-communal activity regarding cultural preservation on the island.

M. The Government of the United States of America and the Government of the Republic of Cyprus agree to provide each other, either upon request or on their own initiative, with information which helps to ensure proper application of the relevant legislation protecting archaeological materials as indicated in the Designated List, and any other available information on activities involving the smuggling of objects on the List or on persons who are involved in such activities.

z



## EMBASSY OF CYPRUS
### Washington, D.C.

The Embassy of the Republic of Cyprus presents its complements to the Department of State and has the honor to refer to the Latter's Note Verbale, dated July 3, 2007 concerning the Memorandum of Understanding Between the Government of the United States of America and the Government of the Republic of Cyprus Concerning the Imposition of Import Restrictions on Pre-Classical and Classical Archaeological Objects and Byzantine Period Ecclesiastical and Ritual Ethnological Material done at Washington July 16, 2002, and as amended on August 17, 2006 (hereinafter referred to as "the MOU").

The Embassy, on behalf of the Government of the Republic of Cyprus, accepts the proposal by the Government of the United States of America that, pursuant to Article IV.A of the MOU, the MOU be extended for an additional five-year period.

The Embassy further accepts that, pursuant to Article IV.B of the MOU, the MOU be amended by replacing Article II with the enclosed revised Article II.

The Embassy of the Republic of Cyprus, accepts that the Department's Note, including the enclosed revised Article II, and the Embassy's Note in reply, shall constitute an agreement to extend and amend the MOU, which shall enter into force on the date of this reply and shall be effective as of July 16, 2007.

2211 R St., N.W., Washington, D.C. 20008-4082, Tel (202) 462-6772, Fax (202) 485-6710
www.cyprusembassy.net

Received   Oct-24-07   14:14            From-1                To-Dillingham & Murphy.      Page 015

The Embassy of the Republic of Cyprus avails itself of the opportunity to renew to the Department of States the assurances of its highest consideration.

Enclosure:

As stated.

Washington, July 6, 2007.



U.S. Department of State
Washington, D.C.

United States of America-Republic of Cyprus Memorandum of Understanding

Extension 2007

Revised Article II

A. The Government of the United States of America and the Government of the Republic of Cyprus should seek to publicize this Memorandum of Understanding and the reasons for it, through various means available.

B. The Government of the Republic of Cyprus will expand its efforts to discourage pillage of cultural resources, and the unauthorized export of such material, through tourist education programs, including posting appropriate warnings at airports, hotels, museums, and other public areas that draw attention to this Memorandum of Understanding and to the cultural heritage protection laws of Cyprus.

C. The Government of the Republic of Cyprus will expand its initiatives in support of the importance of protecting and preserving the cultural heritage of Cyprus into schools and to the general public.

D. Both Governments agree that, in order for United States import restrictions to be fully successful in deterring pillage, the Government of the Republic of Cyprus will continue to seek similar cooperation from countries with significant import trade in Cypriot archaeological artifacts and ethnological materials and will strengthen enforcement of its own cultural heritage protection laws.

E. The Government of the Republic of Cyprus will seek to complete its inventory of cultural resources in museums, ecclesiastical buildings, private collections, and archaeological sites. Every effort should be made to engage all Cypriots in this effort.

F. The Government of the Republic of Cyprus will develop management plans for the effective protection of those archaeological sites that are open to the public.

G. The Government of the Republic of Cyprus will use its best efforts to further restrict the use of metal detectors.

H. Recognizing that rapid land development can give rise to pillage, the Government of the Republic of Cyprus will seek ways to partner with private cultural resource management entities for the purpose of conducting salvage archaeology and historic preservation.

I. The Government of the Republic of Cyprus will, with the assistance of the international community, study ways to prevent illegal exports from anywhere on the island.

J. The Government of the Republic of Cyprus will seek to expand the exchange of its archaeological objects and its ethnological materials under circumstances in which such exchange does not jeopardize its cultural heritage, such as for temporary loans for exhibitions, including long-term loans whenever appropriate, and for other cultural, educational, and scientific purposes.

1

K. The Government of the United States of America will use its best efforts to expand exchanges with Cyprus that foster greater understanding and preservation of Cypriot heritage.

L. Both parties to this Memorandum of Understanding will continue to support bi-communal activity regarding cultural preservation on the island.

M. The Government of the United States of America and the Government of the Republic of Cyprus agree to provide each other, either upon request or on their own initiative, with information which helps to ensure proper application of the relevant legislation protecting archaeological materials as indicated in the Designated List, and any other available information on activities involving the smuggling of objects on the List or on persons who are involved in such activities.

2

10-24-07; 2:01PM;

[Federal Register: June 6, 2007 (Volume 72, Number 108)]
[Rules and Regulations]
[Page 31176-31177]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr06jn07-3]

=====================================================================
---------------------------------------------------------------------

DEPARTMENT OF HOMELAND SECURITY

U.S. Customs and Border Protection

DEPARTMENT OF THE TREASURY

19 CFR Part 12

[CBP Dec. 07-27]
RIN 1505-AB79

Extension of Import Restrictions Imposed on Archaeological and
Ethnological Materials From Peru

AGENCIES: U.S. Customs and Border Protection, Department of Homeland
Security; Department of the Treasury.

ACTION: Final rule.

---------------------------------------------------------------------

SUMMARY: This document amends U.S. Customs and Border Protection (CBP)
regulations to reflect the extension of import restrictions on
archaeological material and certain ethnological materials originating
in Peru which were imposed by Treasury Decision (T.D.) 97-50 and
extended by T.D. 02-30. The Assistant Secretary for Educational and
Cultural Affairs, United States Department of State, has determined
that conditions continue to warrant the imposition of import
restrictions. Accordingly, the restrictions will remain in effect for
an additional 5 years, and the CBP regulations are being amended to
indicate this second extension. These restrictions are being extended
pursuant to determinations of the United States Department of State
made under the terms of the Convention on Cultural Property
Implementation Act in accordance with the United Nations Educational,
Scientific and Cultural Organization (UNESCO) Convention on the Means
of Prohibiting and Preventing the Illicit Import, Export and Transfer
of Ownership of Cultural Property. T.D. 97-50 contains the Designated
List of archaeological and ethnological materials that describes the
articles to which the restrictions apply.

DATES: Effective Date: June 9, 2007.

FOR FURTHER INFORMATION CONTACT: For legal aspects, George F. McCray,
Esq., Chief, Intellectual Property Rights and Restricted Merchandise
Branch, (202) 572-8710. For operational aspects, Michael Craig, Chief,
Other Government Agencies Branch, (202) 344-1684.

SUPPLEMENTARY INFORMATION:

Background

Pursuant to the provisions of the 1970 United Nations Educational, Scientific and Cultural Organization (UNESCO) Convention, codified into U.S. law as the Convention on Cultural Property Implementation Act (Pub. L. 97-446, 19 U.S.C. 2601 et seq.), the United States entered into a bilateral agreement with the Republic of Peru on June 9, 1997, concerning the imposition of import restrictions on pre-Columbian archaeological materials of Peru dating to the Colonial period and certain Colonial ethnological material from Peru. On June 11, 1997, the former United States Customs Service published T.D. 97-50 in the Federal Register (62 FR 31713), which amended 19 CFR 12.104g(a) to reflect the imposition of these restrictions, and included a list designating the types of archaeological and ethnological materials covered by the restrictions.

Import restrictions listed in 19 CFR 12.104g(a) are ``effective for no more than five years beginning on the date on which the agreement enters into force with respect to the United States. This period can be extended for additional periods not to exceed five years if it is determined that the factors which justified the initial agreement still

[[Page 31177]]

pertain and no cause for suspension of the agreement exists'' (19 CFR 12.104g(a)).

On June 6, 2002, the former United States Customs Service published T.D. 02-30 in the Federal Register (67 FR 38877), which amended 19 CFR 12.104g(a) to reflect the extension of these import restrictions for an additional period of five years until June 9, 2007.

After reviewing the findings and recommendations of the Cultural Property Advisory Committee, the Assistant Secretary for Educational and Cultural Affairs, United States Department of State, concluding that the cultural heritage of Peru continues to be in jeopardy from pillage of archaeological and certain ethnological materials, made the necessary determination to extend the import restrictions for an additional five years on April 26, 2007. Accordingly, CBP is amending 19 CFR 12.104g(a) to reflect the extension of the import restrictions.

The Designated List of Archaeological and Ethnological Material from Peru covered by these import restrictions is set forth in T.D. 97-50. The Designated List and accompanying image database may also be found at the following internet Web site address: http://exchanges.state.gov/culprop , by clicking ``III. Categories

of Artifacts Subject to Import Restriction'', and Federal Register. A complete list is published in the Federal Register notice of June 11, 1997.

It is noted that the materials identified in T.D. 97-50 as ``certain pre-Columbian archaeological materials of Peru dating to the Colonial period and certain Colonial ethnological material from Peru'' are referred to in the Determination to Extend as ``Archaeological Material from the Prehispanic Cultures and Certain Ethnological Material from the Colonial Period of Peru.'' The materials identified in T.D. 97-50 and those identified in the Determination to Extend are the same.

The restrictions on the importation of these archaeological and ethnological materials from Peru are to continue in effect for an additional 5 years. Importation of such material continues to be restricted unless the conditions set forth in 19 U.S.C. 2606 and 19 CFR 12.104c are met.

Inapplicability of Notice and Delayed Effective Date

(0-24-07; 2:51PM;

This amendment involves a foreign affairs function of the United States and is, therefore, being made without notice or public procedure (5 U.S.C. 553(a)(1)). For the same reasons, pursuant to 5 U.S.C. 553(d)(3), a delayed effective date is not required.

Regulatory Flexibility Act

Because no notice of proposed rulemaking is required, the provisions of the Regulatory Flexibility Act (5 U.S.C. 601 et seq.) do not apply.

Executive Order 12866

Because this rule involves a foreign affairs function of the United States, it is not subject to Executive Order 12866.

Signing Authority

This regulation is being issued in accordance with 19 CFR 0.1(a)(1).

List of Subjects in 19 CFR Part 12

Cultural property, Customs duties and inspection, Imports, Prohibited merchandise.

Amendment to CBP Regulations

0
For the reasons set forth above, part 12 of Title 19 of the Code of Federal Regulations (19 CFR part 12), is amended as set forth below:

PART 12--SPECIAL CLASSES OF MERCHANDISE

0
1. The general authority citation for part 12 and the specific authority citation for Sec. 12.104g continue to read as follows:

    Authority: 5 U.S.C. 301; 19 U.S.C. 66, 1202 (General Note 3(i), Harmonized Tariff Schedule of the United States (HTSUS)), 1624;
* * * * *
    Sections 12.104 through 12.104i also issued under 19 U.S.C. 2612;
* * * * *


Sec. 12.104g   [Amended]

0
2. In Sec. 12.104g(a), the table of the list of agreements imposing import restrictions on described articles of cultural property of State Parties is amended in the entry for Peru by removing the reference to ``T.D. 02-30'' and adding in its place ``CBP Dec. 07-27'' in the column headed ``Decision No.''.

    Approved: June 1, 2007.
Deborah J. Spero,
Acting Commissioner, U.S. Customs and Border Protection.
Timothy E. Skud,

Deputy Assistant Secretary of the Treasury.
[FR Doc. 07-2810 Filed 6-5-07; 8:45 am]
BILLING CODE 9111-14-P

10-24-07; 2:01PM;                                                                                    # 23/ 28

# F E D E R A L   R E G I S T E R   N O T I C E

### 9111-14 / R.P. 05 – 11 / ADM 9-03-RR:RD:TC / 915028 BC

DEPARTMENT OF HOMELAND SECURITY
BUREAU OF CUSTOMS AND BORDER PROTECTION
DEPARTMENT OF THE TREASURY
19 CFR PART 12    [CBP DEC. 07-52]    RIN 1505-AB80

## EXTENSION OF IMPORT RESTRICTIONS IMPOSED ON PRE-CLASSICAL AND CLASSICAL ARCHAEOLOGICAL OBJECTS AND BYZANTINE PERIOD ECCLESIASTICAL AND RITUAL ETHNOLOGICAL MATERIAL FROM CYPRUS

AGENCIES: U.S. Customs and Border Protection, Department of Homeland Security; Department of the Treasury.

ACTION: Final rule.

SUMMARY: This document amends U.S. Customs and Border Protection (CBP) regulations to reflect the extension of import restrictions on Pre-Classical and Classical Archaeological Objects and Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus which were imposed by Treasury Decision (T.D.) 02-37 and CBP Dec. 06-22. The Assistant Secretary for Educational and Cultural Affairs, United States Department of State, has determined that conditions continue to warrant the imposition of import restrictions. Accordingly, the restrictions will remain in effect for an additional 5 years, and the CBP regulations are being amended to indicate this extension. These restrictions are being extended pursuant to determinations of the United States Department of State made under the terms of the Convention on Cultural Property Implementation Act in accordance with the United Nations Educational, Scientific and Cultural Organization (UNESCO) Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property. This document also contains the Designated List of Archaeological Objects and Ethnological Material that describes the articles to which the restrictions apply. Note that one subcategory, Coins of Cypriot Types, has been added to the category entitled Metal.

EFFECTIVE DATE: July 16, 2007

FOR FURTHER INFORMATION CONTACT: For legal aspects, George F. McCray, Esq., Chief, Intellectual Property Rights and Restricted Merchandise Branch, (202) 572-8710. For operational aspects, Michael Craig, Chief, Other Government Agencies Branch, (202) 344-1684.

SUPPLEMENTARY INFORMATION: Background

Pursuant to the provisions of the 1970 United Nations Educational, Scientific and Cultural Organization (UNESCO) Convention, codified into U.S. law as the Convention on Cultural Property Implementation Act (Pub. L. 97-446, 19 U.S.C. 2601 et seq.), the United States entered into a bilateral agreement with the Republic of Cyprus on July 16, 2002, concerning the imposition of import restrictions on certain archaeological material of Cyprus representing the Pre-Classical and Classical periods of its cultural heritage. On July 19, 2002, the former United States Customs Service published Treasury Decision (T.D.) 02-37 in the Federal Register (67 FR47447), which amended 19 CFR 12.104g(a) to reflect the imposition of these restrictions, and included a list designating the types of archaeological materials covered by the restrictions.

Import restrictions listed in 19 CFR 12.104g(a) are "effective for no more than five years beginning on the date on which the agreement enters into force with respect to the United States. This period can be extended for additional periods not to exceed five years if it is determined that the factors which justified the initial agreement still pertain and no cause for suspension of the agreement exists" (19 CFR 12.104g(a)). T.D. 02-37 is set to expire on July 16, 2007.

We note that prior to the issuance of T.D. 02-37, the former United States Customs Service had issued T.D. 99-35 (64 FR 17529, April 12, 1999) imposing "emergency" import restrictions on certain Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus. Under T.D. 99-35, Sec. 12.104g(b) (19 CFR 12.104g(b)) of the regulations pertaining to emergency import restrictions was amended accordingly.

---

This emergency protection was extended in CBP Dec. 03-25 (68 FR 51903, August 29, 2003). The ethnological material protected by the emergency restrictions was not covered by the 2002 bilateral agreement and the 2002 Treasury Decision.

On August 17, 2006, the Republic of Cyprus and the United States amended the bilateral agreement of July 16, 2002, to include the list of Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus that was protected pursuant to the emergency action. The amendment of the bilateral agreement to include this material was reflected in CBP Dec. 06-22, which was published in the Federal Register (71 FR 51724) on August 31, 2006. CBP Dec. 06-22 set forth the list of Byzantine Ecclesiastical and Ritual Ethnological Material from Cyprus that was previously protected pursuant to emergency action and announced that import restrictions were now imposed on this cultural property pursuant to the amended bilateral agreement. The amended bilateral agreement is set to expire on July 16, 2007, unless extended by the Parties.

After reviewing the findings and recommendations of the Cultural Property Advisory Committee, the Assistant Secretary for Educational and Cultural Affairs, United States Department of State, concluding that the cultural heritage of Cyprus continues to be in jeopardy from pillage of certain archaeological objects and ethnological materials, made the necessary determination to extend the import restrictions on all the cultural property encompassed by the amended bilateral agreement for an additional five years on May 30, 2007. In addition to all the previously protected cultural material, import restrictions are also being imposed on a new subcategory of objects (Coins). Accordingly, CBP is amending 19 CFR 12.104g(a) to reflect the extension of the import restrictions on the currently protected cultural property as well as the new subcategory.

The Designated List of articles that are protected pursuant to the bilateral agreement, as extended, on Pre-Classical and Classical Archaeological Objects and Byzantine Period Ecclesiastical and Ritual Ethnological Material from Cyprus has been revised and is published below. We note that the subcategory Coins of Cypriot Types has been added to the category entitled Metal, pursuant to 19 U.S.C. 2604. This addition comes in response to a request from the Government of the Republic of Cyprus to amend the Designated List. Coins constitute an inseparable part of the archaeological record of the island, and, like other archaeological objects, they are vulnerable to pillage and illicit export.

### LIST OF ARCHAEOLOGICAL OBJECTS FROM CYPRUS REPRESENTING PRE-CLASSICAL AND CLASSICAL PERIODS RANGING IN DATE FROM APPROXIMATELY THE 8TH MILLENNIUM B.C. TO APPROXIMATELY 330 A.D.

I. Ceramic

A. Vessels

1. Neolithic and Chalcolithic (c. 7500-2300 B.C.)—Bowls and jars, including spouted vessels. Varieties include Combed ware, Black Lustrous ware, Red Lustrous ware, and Red-on-White painted ware. Approximately 10-24 cm in height.

2. Early Bronze Age (c. 2300-1850 B.C.)—Forms are hand-made and include bowls, jugs, juglets, jars, and specialized forms, such as askoi, pyxides, gourd-shape, multiple-body vessels, and vessels with figurines attached. Cut-away spouts, multiple spouts, basket handles, and round bases commonly occur. Incised, punctured, molded, and applied ornament, as well as polishing and slip, are included in the range of decorative techniques. Approximately 13-60 cm in height

3. Middle Bronze Age (c. 1850-1550 B.C.)—Forms are hand-made and include bowls, jugs, juglets, jars, zoomorphic askoi, bottles, amphorae, and amphoriskoi. Some have multiple spouts and basket or ribbon handles. Decorative techniques include red and brown paint, incised or applied decoration, and polishing. Varieties include Red Polished ware, White Painted ware, Black Slip ware, Red Slip ware, and Red-on-Black ware. Approximately 4-25 cm in height.

4. Late Bronze Age (c. 1550-1050 B.C.)—Forms include bowls, jars, jugs and juglets, tankards, rhyta, bottles, kraters, alabastra, stemmed cups, cups, stirrup jars, amphorae, and amphoriskoi. A wide variety of spouts, handles, and bases are common. Zoomorphic vessels also occur. Decorative techniques include painted design in red or brown, polishing, and punctured or incised decoration. Varieties include White Slip, Base Ring ware, White Shaved ware, Red Lustrous ware, Bichrome Wheel-made ware, and Proto-White Painted ware. Some examples of local or imported Mycenaean Late Helladic III have also been found. Approximately 5-50 cm in height.

10-24-07; 2:51PM;

5. Cypro-Geometric I-III (c. 1050-750 B.C.)—Forms include bowls, jugs, juglets, jars, cups, skyphoi, amphorae, amphoriskos, and tripods. A variety of spouts, handles and base forms are used. Decorative techniques include paint in dark brown and red, ribbing, polish, and applied projections. Varieties include White Painted I-II wares, Black Slip I-II wares, Bichrome II-III wares, and Black-on-Red ware. Approximately 7-30 cm in height.

6. Cypro-Archaic I-II (c. 750-475 B.C.)—Forms include bowls, plates, jugs and juglets, cups, kraters, amphoriskoi, oinochoe, and amphorae. Many of the forms are painted with bands, lines, concentric circles, and other geometric and floral patterns. Animal designs occur in the Free Field style. Molded decoration in the form of female figurines may also be applied. Red and dark brown paint is used on Bichrome ware. Black paint on a red polished surface is common on Black-on-Red ware. Other varieties include Bichrome Red, Polychrome Red, and Plain White. Approximately 12-45 cm in height.

7. Cypro-Classical I-II (c. 475-325 B.C.)—Forms include bowls, shallow dishes, jugs and juglets, oinochoai, and amphorae. The use of painted decoration in red and brown, as well as blue/green and black continues. Some vessels have molded female figurines applied.   Decorative designs include floral and geometric patterns. Burnishing also occurs. Varieties include Polychrome Red, Black-on-Red,  Polychrome Red, Stroke Burnished, and White Painted wares. Approximately 6-40 cm in height.

8. Hellenistic (c. 325 B.C.-50 B.C.)—Forms include bowls, dishes, cups, unguentaria, jugs and juglets, pyxides, and amphorae. Most of the ceramic vessels of the period are undecorated. Those that are decorated use red, brown, or white paint in simple geometric patterns. Ribbing is also a common decorative technique. Some floral patterns are also used. Varieties include Glazed Painted ware and Glazed ware. Imports include Megarian bowls. Approximately 5-25 cm in height.

9. Roman (c. 50 B.C.-330 A.D.)—Forms include bowls, dishes, cups, jugs and juglets, unguentaria, amphora, and cooking pots. Decorative techniques include incision, embossing, molded decoration, grooved decoration, and paint. Varieties include Terra Sigillata and Glazed and Green Glazed wares. Approximately 5-55 cm in height.

B. Sculpture

1. Terracotta Figurines (small statuettes).

 (a) Neolithic to Late Bronze Age (c. 7500-1050 B.C.)—Figurines are small, hand-made, and schematic in form. Most represent female figures, often standing and sometimes seated and giving birth or cradling an infant. Features and attributes are marked with incisions or paint. Figurines occur in Red-on-White ware, Red Polished ware, Red-Drab Polished ware, and Base Ring ware. Approximately 10-25 cm in height.

(b) Cypro-Geometric to Cypro-Archaic (c. 1050-475 B.C.)—Figurines show a greater diversity of form than earlier figurines. Female figurines are still common, but forms also include male horse-and-rider figurines; warrior figures; animals such as birds, bulls and pigs; tabular figurines; boat models; and human masks. In the Cypro-Archaic period, terra cotta models illustrate a variety of daily activities, including the process of making pottery and grinding grain. Other examples include musicians and men in chariots. Approximately 7-19 cm in height.

(c) Cypro-Classical to Roman (c. 475 B.C.-330 A.D.)—Figurines mirror the classical tradition of Greece and Roman. Types include draped women, nude youths, and winged figures. Approximately 9-20 cm in height.

2. Large Scale Terracotta Figurines—Dating to the Cypro-Archaic period (c. 750-475 B.C.), full figures about half life-size, are commonly found in sanctuaries. Illustrated examples include the head of a woman decorated with rosettes and a bearded male with spiral-decorated helmet. Approximately 50-150 cm in height.

3. Funerary Statuettes—Dating to the Cypro-Classical period (c. 475-325 B.C.), these illustrate both male and female figures draped, often seated, as expressions of mourning. Approximately 25-50 cm in height.

C. Inscriptions

Writing on clay is restricted to the Late Bronze Age (c. 1550-1050 B.C.). These occur on clay tablets, weights, and clay balls. Approximately 2-7 cm in height.

D. Stone

A. Vessels

Ground stone vessels occur from the Neolithic to the Hellenistic period (c. 7500-50 B.C.). Early vessels are from local hard stone. Most are bowl-shaped; some are trough-shaped with spouts and handles. Neolithic

Received  Oct-24-07  14:14        From-1              To-Dillingham & Murphy.      Page 025

vessels often have incised or perforated decoration. Late Bronze Age vessels include amphoriskoi and kraters with handles. Sometimes these have incised decoration. Alabaster was also used for stone vessels in the Late Bronze Age and Hellenistic period. In the latter period, stone vessels are produced in the same shapes as ceramic vessels: Amphorae, unguentaria, etc. Approximately 10-30 cm in height.

B. Sculpture

1. Neolithic to Chalcolithic (c. 7500-2300 B.C.)—Forms include small scale human heads, fiddle-shaped human figures, steatopygous female figures, cruciform idols with incised decoration, and animal figures. Andesite and limestone are commonly used in these periods. Approximately 5-30 cm in height.

2. Cypro-Classical (c. 475-325 B.C.)—Small scale to life-size human figures, whole and fragments, in limestone and marble, are similar to the Classical tradition in local styles. Examples include the limestone head of a youth in Neo-Cypriot style, votive female figures in Proto-Cypriot style, a kouros in Archaic Greek style, statues and statuettes representing Classical gods such as Zeus and Aphrodite, as well as portrait heads of the Greek and Roman periods. Approximately 10-200 cm in height.

C. Architectural Elements

Sculpted stone building elements occur from the 5th century B.C. through the 3rd century A.D. These include columns and column capitals, relief decoration, chancel panels, window frames, revetments, offering tables, coats of arms, and gargoyles.

D. Seals

Dating from the Neolithic (7500 B.C.) through 3rd century A.D., conical seals, scarabs, cylinder seals, and bread stamps are incised with geometric decoration, pictoral scenes, and inscriptions. Approximately 2-12 cm in height.

E. Amulets and Pendants

Dating to the Chalcolithic period, these pendants are made of picrolite and are oval or rectangular in form. Approximately 4-5 cm in length.

F. Inscriptions

Inscribed stone materials date from the 6th century B.C. through the 3rd century A.D. During the Cypro-Classical period, funerary stelae, and votive plaques were inscribed. From the 1st to the 3rd century A.D. funerary plaques, mosaic floors, and building plaques were inscribed.

G. Funerary Stelae (Uninscribed)

Funerary stelae date from the 6th century B.C. to the end of the Hellenistic period (c. 50 B.C.). Marble and other stone sculptural monuments have relief decoration of animals or human figures seated or standing. Stone coffins also have relief decoration. Approximately 50-155 cm in height.

H. Floor Mosaics

Floor mosaics date as early as the 4th century B.C. in domestic and public contexts and continue to be produced through the 3rd century A.D. Examples include the mosaics at Nea Paphos, Kourion, and Kouklia.

III. Metal

A. Copper/Bronze

1. Vessels—Dating from the Bronze Age (c. 2300 B.C.) through the 3rd century A.D., bronze vessel forms include bowls, cups, amphorae, jugs, juglets, pyxides, dippers, lamp stands, dishes, and plates. Approximately 4-30 cm in height.

2. Bronze Stands—Dating from the Late Bronze Age (c. 1550 B.C.) through the end of the Classical period (c. 325 B.C.), are bronze stands with animal decoration.

3. Sculpture—Dating from the Late Bronze Age (c. 1550) to the end of the Hellenistic period (c. 50 B.C.), small figural sculpture includes human forms with attached attributes such as spears or goblets, animal figures, animal- and vessel-shaped weights, and Classical representations of gods and mythological figures. Approximately 5-25 cm in height.

4. Personal Objects—Dating from the Early Bronze Age (c. 2300 B.C.) to the end of the Roman period (330 A.D.), forms include toggle pins, straight pins, fibulae, and mirrors.

B. Silver

1. Vessels—Dating from the Bronze Age (c. 2300 B.C.) through the end of the Roman period (330 A.D.), forms include bowls, dishes, coffee services, and ceremonial objects such as incense burners. These are often decorated with molded or incised geometric motifs or figural scenes.

2. Jewelry—Dating from the Cypro-Geometric period (c. 1050 B.C.) through the end of the Roman period (330 A.D.), forms include fibulae, rings, bracelets, and spoons.

C. Gold Jewelry

Gold jewelry has been found on Cyprus from the Early Bronze Age (c. 2300 B.C.) through the end of the Roman period (330 A.D.). Items include hair ornaments, bands, frontlets, pectorals, earrings, necklaces, rings, pendants, plaques, beads, and bracelets.

D. Coins of Cypriot Types

Coins of Cypriot types made of gold, silver, and bronze including but not limited to:

1. Issues of the ancient kingdoms of Amathus, Kition, Kourion, Idalion, Lapethos, Marion, Paphos, Soli, and Salamis dating from the end of the 6th century B.C. to 332 B.C.

2. Issues of the Hellenistic period, such as those of Paphos, Salamis, and Kition from 332 B.C. to c. 30 B.C.

3. Provincial and local issues of the Roman period from c. 30 B.C. to 235 A.D. Often these have a bust or head on one side and the image of a temple (the Temple of Aphrodite at Palaipaphos) or statue (statue of Zeus Salaminios) on the other.

## LIST OF ECCLESIASTICAL AND RITUAL ETHNOLOGICAL MATERIAL FROM CYPRUS REPRESENTING THE BYZANTINE PERIOD DATING FROM APPROXIMATELY THE 4TH CENTURY A.D. THROUGH THE 15TH CENTURY A.D.

I. Metal

A. Bronze

Ceremonial objects include crosses, censers (incense burners), rings, and buckles for ecclesiastical garments. The objects may be decorated with engraved or modeled designs or Greek inscriptions. Crosses, rings and buckles are often set with semi-precious stones.

B. Lead

Lead objects date to the Byzantine period and include ampulla (small bottle-shaped forms) used in religious observance.

C. Silver and Gold

Ceremonial vessels and objects used in ritual and as components of church treasure. Ceremonial objects include censers (incense burners), book covers, liturgical crosses, archbishop's crowns, buckles, and chests. These are often decorated with molded or incised geometric motifs or scenes from the Bible, and encrusted with semi-precious or precious stones. The gems themselves may be engraved with religious figures or inscriptions. Church treasure may include all of the above, as well as rings, earrings, and necklaces (some decorated with ecclesiastical themes) and other implements (e.g., spoons).

II. Wood

Artifacts made of wood are primarily those intended for ritual or ecclesiastical use during the Byzantine period. These include painted icons, painted wood screens (iconstasis), carved doors, crosses, painted wooded beams from churches or monasteries, thrones, chests and musical instruments. Religious figures (Christ, the Apostles, the Virgin, and others) predominate in the painted and carved figural decoration. Ecclesiastical furniture and architectural elements may also be decorated with geometric or floral designs.

III. Ivory and Bone

Ecclesiastical and ritual objects of ivory and bone boxes, plaques, pendants, candelabra, stamp rings, crosses. Carved and engraved decoration includes religious figures, scenes from the Bible, and floral and geometric designs.

IV. Glass

10-24-07; 2:51PM;

Ecclesiastical objects such as lamps and ritual vessels.

V. Textiles–Ritual Garments

Ecclesiastical garments and other ritual textiles from the Byzantine period. Robes, vestments and altar clothes are often of a fine fabric and richly embroidered in silver and gold. Embroidered designs include religious motifs and floral and geometric designs.

VI. Stone

A. Wall Mosaics

Dating to the Byzantine period, wall mosaics are found in ecclesiastical buildings. These generally portray images of Christ, Archangels, and the Apostles in scenes of Biblical events. Surrounding panels may contain animal, floral, or geometric designs.

B. Floor Mosaics

Floor mosaics from ecclesiastical contexts. Examples include the mosaics at Nea Paphos, Kourion, Kouklia, Chrysopolitissa Basilica and Campanopetra Basilica. Floor mosaics may have animal, floral, geometric designs, or inscriptions.

VII. Frescoes/Wall Paintings

Wall paintings from the Byzantine period religious structures (churches, monasteries, chapels, etc.) Like the mosaics, wall paintings generally portray images of Christ, Archangels, and the Apostles in scenes of Biblical events. Surrounding paintings may contain animal, floral, or geometric designs.

---

More information on import restrictions can be obtained from the International Cultural Property Protection Web site (http://exchanges.state.gov/culprop) . The restrictions on the importation of these archaeological and ethnological materials from Cyprus are to continue in effect for an additional 5 years. Importation of such materials continues to be restricted unless the conditions set forth in 19 U.S.C. 2606 and 19 CFR 12.104c are met.

---

### Inapplicability of Notice and Delayed Effective Date

This amendment involves a foreign affairs function of the United States and is, therefore, being made without notice or public procedure (5 U.S.C. 553(a)(1)). For the same reason, a delayed effective date is not required.

### Regulatory Flexibility Act

Because no notice of proposed rulemaking is required, the provisions of the Regulatory Flexibility Act (5 U.S.C. 601 et seq.) do not apply.

### Executive Order 12866

Because this rule involves a foreign affairs function of the United States, it is not subject to Executive Order 12866.

### Signing Authority

This regulation is being issued in accordance with 19 CFR 0.1(a)(1).

### List of Subjects in 19 CFR Part 12

Cultural property, Customs duties and inspection, Imports, Prohibited merchandise.

---

Received   Oct-24-07  14:14       From-I                    To-Dillingham & Murphy,    Page  028

*Cyprus : Federal Register Notice Containing the Designated List*      *16 July 2007*

### Amendment to CBP Regulations

For the reasons set forth above, part 12 of Title 19 of the Code of Federal Regulations (19 CFR part 12), is amended as set forth below:

### PART 12—SPECIAL CLASSES OF MERCHANDISE

1. The general authority citation for part 12 and the specific authority citation for Sec. 12.104g continue to read as follows:

Authority: 5 U.S.C. 301; 19 U.S.C. 66, 1202 (General Note 3(i), Harmonized Tariff Schedule of the United States (HTSUS)), 1624;

\* \* \* \* \*

Sections 12.104 through 12.104i also issued under 19 U.S.C. 2612;

\* \* \* \* \*

Sec. 12.104g [Amended]

2. In Sec. 12.104g(a), the table of the list of agreements imposing import restrictions on described articles of cultural property of State Parties is amended in the entry for Cyprus by removing the reference to "T.D. 02-37, as amended by CBP Dec. 06-22" and adding in its place "CBP Dec. 07-52" in the column headed "Decision No.".

*Deborah J. Spero*, Acting Commissioner, Bureau of Customs and Border Protection.
Approved: July 9, 2007.
*Timothy E. Skud*, Deputy Assistant Secretary of the Treasury.
[FR Doc. 07-3425 Filed 7-12-07; 8:45 am]