UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANCIENT COIN COLLECTORS GUILD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-2074 (RJL) |
| ) | |
| UNITED STATES DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND IN
<u>OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendant United States Department of State ("State Department," "State," "Department," or "Defendant"), by and through its undersigned counsel, respectfully submits this reply ("Reply") in further support of its motion for summary judgment ("MSJ") and in opposition to Plaintiffs' cross-motion for summary judgment ("Cross-Motion" or "X-Mot.").

<u>**PRELIMINARY STATEMENT**</u>

Through their Cross-Motion, Plaintiffs purport to take issue with nearly every single facet of the Department's well-considered response to their numerous FOIA requests.  That is, despite the Department's extensive efforts to review and release as much material as possible and its 79-page declaration describing and explaining its efforts, Plaintiffs challenge the Department's search, its description thereof, its use of nearly every exemption, and its segregability analysis. This scorched-earth approach, however, is based largely upon misapprehensions of FOIA's requirements and selective quotations of the Grafeld Declaration.[1]  Indeed, Plaintiffs' take-no-

---

[1]       Defined terms used herein are intended to have the same meaning as those used in Defendant's memorandum of points and authorities in support of its MSJ ("Opening Brief").

prisoners Cross-Motion and recent statements on at least one of their websites reveal the true purpose of this FOIA suit -- *i.e.*, to attempt to obtain pre-litigation discovery in a contemplated action against the Department.   For a number of reasons, Plaintiffs' attempt is without legal merit.

*First*, Plaintiffs begin their overbroad Cross-Motion by arguing that Defendant's search for records responsive to their requests was inadequate and was not sufficiently described through the 79-page Grafeld Declaration.   Among other things, Plaintiffs complain that Ms. Grafeld (the Department's Information and Privacy Coordinator and the Director of the Department's Office of Information Programs and Services) is not an adequate declarant. Plaintiffs' arguments are simply without merit.

*Second*, although Plaintiffs purport to challenge the Department's withholdings under Exemption 1 (*i.e.*, information that has been classified as "Confidential"), Plaintiffs' arguments in this regard are unclear.   It appears that Plaintiffs ask this Court to rule that foreign governments have no expectation of confidentiality, despite the express guarantees of our government, when disclosed information is to be used in a concerted international campaign against looting.   This argument is nonsensical and without merit.

*Third*, Plaintiffs' feigned ignorance of materials redacted by the Department under the Low-2 Exemption is not credible.   Moreover, Plaintiffs' citation to recent guidance by the Department of Justice and the White House regarding FOIA does not change the law of FOIA or Plaintiffs' rights thereunder.

*Fourth*, contrary to Plaintiffs' arguments, FOIA exemption statutes need not specifically mention "FOIA" if they otherwise meet the applicable criteria.   Sections 306(h), (i)(1), and (i)(2) specifically exempt certain materials from disclosure.   Consequently, these provisions are

exemption statutes.  Moreover, Plaintiffs' arguments that the Department has not established that the withheld materials are subject to these sections, is based upon a selective reading of the Grafeld Declaration.  While the Grafeld Declaration does include a non-specific summary of its withholdings, it thereafter describes in exhaustive detail, on a document-by-document basis, the reasons for each of its withholdings.  Plaintiffs ignore this exhaustive discussion.

*Fifth*, after arguing that FACA provisions are irrelevant to this FOIA suit, Plaintiffs reverse course and argue, with respect to the Department's invocation of Exemption 5, that those provisions are not only instructive but determinative of what pre-decisional, deliberative material the Department may withhold.  Even if Plaintiffs' shifting interpretation were correct, which it is not, the harm to "foreign relations" in disclosing CPAC's deliberative commentary on, and distillations of, information provided by foreign governments to the United States under an express understanding of confidentiality is clear, notwithstanding the personal opinions of Mr. Kislak.

*Sixth*, Plaintiffs' half-hearted arguments regarding the Department's invocation of the attorney-client privilege are premised upon an inaccurate assumption.  The Department has withheld some or all of only two documents under the privilege -- both of which clearly fall under its protections.

*Seventh*, notwithstanding the harsh treatment of Department officials by Plaintiffs and their colleagues, Plaintiffs remarkably argue that the Department should be compelled to release the names of mid-level Department employees and private individuals who submitted comments to CPAC without any identified commercial purpose (*i.e.*, personal commentary, not commentary on behalf of a trade group or business).  This argument, however, misses the mark as the Department's withholding in this regard is well-supported by applicable precedent.

*Lastly*, and truly remarkably, Plaintiffs challenge the Department's segregability analysis. As is evident solely from the parties' extension requests in this action, the Department explored numerous channels to release as much information to Plaintiffs as possible, including contacting the Government of Cyprus itself to confirm its requests for confidentiality (which led to the release of additional materials). Consequently, Plaintiffs' conclusory assertions in this regard are utterly without merit.

For these reasons, as more fully set forth below, and those discussed in Defendant's Opening Brief, the Court should grant Defendant's MSJ and deny Plaintiffs' Cross-Motion.

## ARGUMENT

As an initial matter, through Plaintiffs' Cross-Motion and their public comments, it is clear that this FOIA action is little more than Plaintiffs' device to obtain pre-litigation discovery in an action to challenge the U.S. import restrictions.  *See* Release, "Coin Collectors to Challenge State Department on Import Restrictions" (posted "05/11/2009," www.accg.us) (Last Checked May 18, 2009), Reply Ex. 1.  Indeed, ACCG appears to have described this suit as merely "phase one" of its "coordinated plan" to challenge those restrictions.  Coinlink, "Coin Collectors to Challenge State Department on Import Restrictions," http://www.coinlink.com/ (Last Checked May 18, 2009), Reply Ex. 2.  Although this use of FOIA is not prohibited, it bears mentioning that "FOIA was not intended to supplement or displace rules of discovery."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989); *see also Javier H. v. Garcia-Botello*, Civ. A. No. 02-523S, 2009 WL 899674, *3 (W.D.N.Y. Mar. 30, 2009) ("FOIA is not intended as a discovery device.").  Consequently, Plaintiffs' claims that they are advocating the public interest are properly viewed with some skepticism given ACCG's "two phase" "coordinated plan" to attempt to rescind the import restrictions, which would commercially benefit a number of its benefactors,

who appear to be U.S.-based dealers and brokers of ancient coins.  *See* ACCG Benefactors, http://www.accg.us/about/contributor/ (Last Checked May 18, 2009).

## I.    THE DEPARTMENT'S SEARCH WAS REASONABLE AND ADEQUATELY DOCUMENTED.

In a desperate attempt to find something wrong with the extensive efforts the Department undertook in response to Plaintiffs' FOIA requests, Plaintiffs engage in a shotgun approach of unsupported arguments.   Specifically, Plaintiffs claim that the Department's search was unreasonable or not adequately described because (i) State failed to search or describe any search of Ms. Kouroupas's computer; (ii) Ms. Grafeld is an inadequate declarant because neither she nor her staff conducted the relevant searches; (iii) the Grafeld Declaration is inadequate because it does not discuss State's retention policies; (iv) State's search was inadequate because back-up tapes were not searched; (v) the Grafeld Declaration is inadequate because it does not assert that "there exists no more responsive documents;" (vi) the Grafeld Declaration is inadequate because it does not describe the relevant email searches; and (vii) State's searches of the files of the Bureau of Public Affairs ("PA"), the Bureau of European and Eurasian Affairs ("EUR") and the Office of the Undersecretary for Political Affairs ("UPA") were inadequate.  For the following reasons, each of these complaints is without legal merit and/or is factually inaccurate.

*First*, Plaintiffs' complaint regarding Ms. Kouroupas' computer is utterly without merit. The Grafeld Declaration specifically states that ECA "Staff *and the executive director* [ ] manually searched their working files on the relevant countries *and searched their emails* as well as the archived emails of a former staff member involved in some of the issues and of the shared email account."  Grafeld Decl. at 17-18, MSJ Ex. A.   Thereafter, the Grafeld Declaration sets forth the exhaustive detail of how those searches were performed.  *See id.*  Consequently, it is clear that the computer of Ms. Kouroupas (the executive director) was searched.

*Second*, it is truly remarkable that Plaintiffs argue that Ms. Grafeld, the Department's Information and Privacy Coordinator, is an inadequate declarant in this case. It is a FOIA hornbook principle that "FOIA declarants are not required to participate in the search for records." *Schoenman v. FBI*, 575 F. Supp. 2d 166, 172 (D.D.C. 2008) (Kollar-Kotelly, J.); DOJ FOIA Guide at 967, http://www.usdoj.gov/oip/foia_guide07/litigation_considerations.pdf (collecting authorities and noting "It is not necessary that the agency employee who actually performed the search supply an affidavit describing the search[.]"). As described in her Declaration, Ms. Grafeld is the head of the unit that receives FOIA requests and for each request "evaluates the request and determines which offices and/or bureaus, overseas posts, or other records systems within the Department may reasonably expect to contain the information requested." Grafeld Decl. at 14, MSJ Ex. A. That is all that is required to be a delcarant under FOIA. *See, e.g., Kidder v. FBI*, 517 F. Supp. 2d 17, 26, n.9 (D.D.C. 2007) (Walton, J.) ("It is sufficient that the declarant has personal knowledge of and familiarity with the handling of plaintiff's FOIA request and the responsive records at issue.").

*Third*, State is under no obligation to discuss its retention policies on a motion for summary judgment in a FOIA case. As this Court has observed, "[n]othing in the law requires the agency to document the fate of documents it cannot find." *Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 89 (D.D.C. 2009) (Leon, J.) ("Even if the FBI's Albany Field Office once maintained records that may have been responsive to plaintiff's FOIA request, the FBI's failure to locate them now does not weaken the FBI's position."), *citing among others Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707, 1995 WL 356320, *2 (D.D.C. Jan. 29, 2003) (finding that FBI's retention policies were irrelevant to the question of reasonableness of a search in a FOIA case, holding "[i]f a reasonable search fails to unearth a document, then it makes no difference

whether the document was lost, destroyed, stolen, or simply overlooked."); *see also Anderson v. Dep't of Justice*, 518 F. Supp. 2d 1, 10 (D.D.C. 2007) (Friedman, J.) ("An agency does not violate the FOIA for its failure to locate records destroyed in accordance with an agency's normal retention policy. The Court's authority is limited to the release of non-exempt agency records in existence at the time the agency receives the FOIA request.").   Furthermore, notwithstanding their irrelevancy to this action, the Department's recordkeeping policies are a matter of public record and available from State's website.  *See, e.g.,* ECA Records Schedule, http://www.state.gov/documents/organization/91877.pdf (Last Checked May 18, 2009).

*Fourth*, Plaintiffs' argument that ECA staff's failure to search back-up email tapes for responsive records is misguided and inaccurate.  As an initial matter, ECA staff searched their own emails and "the archived emails of a former staff member involved in some of the issues." Grafeld Decl. at 17, MSJ Ex. A.  Consequently, far from ignoring potentially responsive archived emails, ECA staff took affirmative efforts to search such files when they had a reasonable belief that they might contain non-duplicative, responsive information.  Moreover, the Grafeld Declaration in no unclear terms affirmatively states that nothing in ECA staff's searches indicated the likely existence of additional responsive materials.  *Id.* at 18; *see also Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1244 (10th Cir. 2009) ("[T]he data on backup tapes is not organized for retrieval of individual documents or files, but rather for purposes of disaster recovery. . . .  Thus, we cannot determine how such information would 'contribute significantly to public understanding[.]'").  Accordingly, nothing in the record indicates that the Department's search was somehow unreasonable in this regard.  *See Roberts*, 1995 WL 356320, at *2 (agency's failure to search back-up tapes was not unreasonable, noting "The defendant obviously cannot be expected to search every nook and cranny of its vast offices in an attempt to locate

diskettes which may not even exist."); *cf. Amuso*, 600 F. Supp. 2d at 89 ("an agency is not obligated to expand the scope of its search or to search all of its systems of records when it has searched the systems of records most likely to contain responsive records"), *citing Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (stating that an agency generally need not search every records system as long as it conducts "a reasonable search tailored to the nature of a particular request").

*Fifth*, Plaintiffs' argument that somehow the Grafeld Declaration is insufficient because it does not state that every scrap of paper has been located reflects a pure misapprehension of FOIA's search requirements.  That is, it is a bedrock FOIA principle that "[t]he results of a search do not determine whether the search is adequate."  *Amuso*, 600 F. Supp. 2d at 89.  Consequently, as the D.C. Circuit has recognized, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Based upon this precedent, the Grafeld Declaration is not inadequate because it fails to account for every scrap of paper.  *See also Nat'l Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892, n.7 (D.C. Cir. 1995) ("Of course, the failure to turn up this document does not alone render the search inadequate; there is no requirement that an agency produce *all* responsive documents.") (emphasis in original).

*Sixth*, Plaintiffs appear not to have read the Grafeld Declaration when they argue that the Department has not adequately described the email searches of ECA staff.  *See* X-Mot. at 6.  The Grafeld Declaration describes in minute detail how ECA staff searched their emails, down to the mouse clicks.  *See* Grafeld Decl. at 17-18, MSJ Ex. A.  Further, simply because Ms. Grafeld is conveying this information on behalf of ECA staff does not render her declaration inadequate.

*See Kay v. FCC*, 976 F. Supp. 23, 34 (D.D.C. 1997) (Urbina, J.) ("Generally, declarations accounting for searches of documents that contain hearsay are acceptable.").

*Lastly*, Plaintiffs' complaint that the searches of the files of PA, EUR, and UPA were inadequate is misplaced.  As described in the Grafeld Declaration, those offices were searched solely because of their roles in a ceremonial exchange of diplomatic notes.  *See* Grafeld Decl. at 19-20, MSJ Ex. A.  Consequently, the scope of the search was limited to that topic.  Given this knowledge and the expertise of the searchers in those offices, State located responsive materials. *See id.*  Consequently, there is nothing unreasonable about these searches.  *See Davy v. CIA*, 357 F. Supp. 2d 76, 84 (D.D.C. 2004) (Leon, J.) ("FOIA cannot be used to troll for documents, which, if they even exist, appear barely tangential to the subject of [plaintiff's] requests and thus unlikely to have been revealed even by the most diligent search."); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 21-22 ("In other words, if the FBI believes that a search of its [central system] is sufficient, it need not go further.").

For these reasons, Plaintiffs' complaints about Defendant's searches are without merit.

## II.   THE DEPARTMENT PROPERLY INVOKED EXEMPTION 1.

### A.   Plaintiff's General Argument Regarding Exemption 1 Is Untenable.

In essence, Plaintiffs argue that Exemption 1 should not be applied to withhold information that foreign governments provided to the Department under an express understanding of confidentiality because those governments had no expectation that the information would actually be held in confidence.  *See* X-Mot. at 9.  Specifically, Plaintiffs argue that because the relevant portion of the UNESCO Convention assumes that states "will seek a concerted international response to problems of looting," the Republic of Cyprus ("Cyprus"), the Republic of Italy ("Italy") and the People's Republic of China ("China") could not expect to

have their information held in confidence, despite the United States's express guarantees and the sensitivity of the provided information.  Consequently, Plaintiffs urge this Court to disregard the Department's classification of this provided information as "Confidential" under the relevant Executive Order.

Plaintiffs' argument, however, flies in the face of logic and well-established precedent. Just recently, the D.C. Circuit emphasized the deference given to agencies in classifying information and withholding it under Exemption 1.  *See Larson v. Dep't of State*, --- F.3d ---, 2009 WL 1258276, *4-5 (D.C. Cir. May 8, 2009).  Specifically, the D.C. Circuit reiterated that:

> If an agency's statements supporting [an] exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, as is the case here, the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions. "[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." Today we reaffirm our deferential posture in FOIA cases regarding the "uniquely executive purview" of national security.

*Id.* (internal citations omitted).  The D.C. Circuit has steadfastly adopted the same standard for matters affecting foreign relations.  *See Krikorian v. Dep't of State*, 984 F.2d 461, 464-65 (D.C. Cir. 1993) ("we accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record") (internal quotation marks omitted).

Indeed, the D.C. Circuit in *Krikorian* addressed nearly the same issue that is presented here.  In that case, the Department withheld seven documents under Exemption 1 "because they contain[ed] information about foreign governments that was communicated to our government by the foreign governments on a confidential basis[.]"  *Id.* at 465.  Consequently, the D.C. Circuit agreed "with the district court that the seven documents contain[ed] confidential information that is exempt from disclosure under exemption 1."  *Id.*

As noted in Defendant's Opening Brief, the Exemption 1 material in this action has been withheld pursuant to the United States's assurances to the providing foreign governments that the information would be held in confidence.  *See* Grafeld Decl. at 51-52, 56-58, 64-66, 70-73, MSJ Ex. A.  Furthermore, the Department's description of this information underscores the concerns of those foreign governments -- *i.e.*, the withheld information concerns, in part, (i) the identification of known vulnerabilities of, and instances of looting at, sensitive archaeological sites, (ii) the physical means of protecting those sites, and (iii) specific law enforcement actions against looting and smuggling.  *See, e.g., id.* at 51.  Consequently, Plaintiffs' assertions that the withheld information should be released are without merit.[2]

**B.    Plaintiffs' Specific Argument Regarding China's Request for Import Restrictions Is Similarly Without Merit.**

Plaintiffs also specifically argue that China's request for import restrictions (*i.e.*, the initial Chinese language version of China's submission), which the Department has classified as "Confidential" and withheld under Exemption 1, should be released because the Department released a public English summary of that request.  *See* X-Mot. at 11; Grafeld Decl. at 56-58, MSJ Ex. A.  This argument is again illogical.  Simply because the Department undertook to compile and publish a non-sensitive summary of China's request, does not mean that sensitive portions of that request have been put into the public domain.  Indeed, if anything, it shows the lengths to which the Department has gone to apprise the public of matters in this area by releasing a non-sensitive summary of the sensitive request from China.

---

[2]     As noted below, during the previously requested extensions in this case, the Department requested that Cyprus review its requests for confidential treatment.  *See infra* at 27; Grafeld Decl. at 14, MSJ Ex. A.  As a result of that communication and Cyprus's response, the Department released additional information.  *Id.*  Consequently, it strains credulity that Cyprus would not have a reasonable expectation that the materials now withheld by State pursuant to its request would be kept confidential.

Moreover, Plaintiffs' own cited authorities undermine their argument in this regard.  That is, the D.C. Circuit in *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993), specifically held that "[t]he law of this circuit provides that an agency official does not waive FOIA exemption 1 by publicly discussing the general subject matter of documents which are otherwise properly exempt from disclosure under that exemption."  *Id.*   Furthermore, as described in *Public Citizen*, in order for the summary to constitute a waiver, Plaintiffs must show that the summary is "as specific as" the withheld source documents.  *See id.* at 203.  A simple comparison of the respective length of the summary (11 pages) and the withheld source documents (160 pages) conclusively refutes any notion that this is the case here.

Consequently, the Court should grant the Department summary judgment on its application of Exemption 1.

## III.    STATE PROPERLY INVOKED THE LOW-2 EXEMPTION.

Plaintiffs' arguments regarding the Low-2 Exemption claimed by the Department are not entirely clear.  That is, Plaintiffs do not explain how Defendant's Low-2 assertion is flawed.  Rather, Plaintiffs merely (i) recite a conclusory assertion that "Defendant's summary description of this material does not meet its burden in establishing that this material qualifies as low-2 information," (ii) assert that they are uncertain whether the Department is asserting a Low-2 or High-2 exemption; and (iii) argue that under new DOJ guidance Low-2 information should generally be released because it is trivial.  *See* X-Mot. at 12.  These unspecific challenges to Defendant's invocation of the Low-2 Exemption should be rejected by the Court.

*First*, it is unclear how the Department can be any more clear that the Exemption 2 materials it is withholding are being withheld under the Low-2 Exemption: "The use of exemption (b)(2) in this case involves 'low-2' information."  Grafeld Decl. at 32, MSJ Ex. A.

Indeed, Plaintiffs' confusion in this regard is simply emblematic of their failure to review fully the 79-page Grafeld Declaration and the wealth of information set forth therein.

*Second*, it is also unclear how the Department could be more detailed in describing the trivial information it is withholding under the Low-2 Exemption: "State has withheld 'case file numbers, record identification codes, and other internal CBP codes.'"  Open. Br. at 6, *citing* Grafeld Decl. at 58-60, MSJ Ex. A.  If Plaintiffs were somehow confused by this straightforward description, they need only review the redactions on the relevant documents to ascertain their trivial nature.  In sum, these trivial redactions are adequately described and well-supported by the precedent cited in Defendant's Opening Brief.  *See* Open. Br. at 6, 13-14.

*Third*, Plaintiffs claim that DOJ's recent guidance regarding Low-2 somehow compels State to review and unredact the trivial information withheld under that exemption.  *See* X-Mot. at 12.  This argument is untenable.  As an initial matter, both the DOJ guidance and the President's FOIA Memorandum upon which it is based, specifically state that they do not create or confer any rights or benefits enforceable against the United States or its agencies.  *See* Attorney General Memorandum of 03/19/2009 at 3, http://www.usdoj.gov/ag/foia-memo-march2009.pdf (Last Checked May 18, 2009); Presidential Memorandum of 01/21/2009, http://www.whitehouse.gov/the_press_office/Freedom_of_Information_Act/ (Last Checked May 18, 2009).  Consequently, this guidance, though instructive to agencies, is irrelevant to the Court's consideration of this matter under the law of FOIA.

Furthermore, the Attorney General's Memorandum, upon which the guidance cited by Plaintiffs is based, specifically limits its applicability to pending cases to those where "there is a substantial likelihood that application of the guidance would result in a material disclosure of additional    information."    Attorney    General    Memorandum    of    03/19/2009    at    3,

http://www.usdoj.gov/ag/foia-memo-march2009.pdf   (Last   Checked   May   18,   2009).

Consequently, even if recent internal policy memoranda somehow created substantive rights,

because by its nature Low-2 information is trivial, this guidance is not applicable to the

Department's Low-2 Exemptions in this case.

## IV.   THE   DEPARTMENT   PROPERLY   WITHHELD   MATERIALS   UNDER EXEMPTION 3.

Despite their clear language, Plaintiffs also assert that CPIA Sections 306(h), (i)(1), and

(i)(2) -- 19 U.S.C. §§ 2605(h), (i)(1), and (i)(2) -- are not withholding statutes, and even if they

are, Defendant has not shown that the withheld materials fall under those statutes.  For the below

reasons, Plaintiffs' arguments in this regard are without merit.

### A.   CPIA Section 306(h) is a Withholding Statute.

It appears that Plaintiffs' central argument that Section 306(h) is not a withholding statute

is that it does not mention FOIA.  *See* X-Mot. at 14.  This, however, is not the law.  Numerous

courts have found statues that do not specifically mention FOIA are nonetheless Exemption 3

statutes because they evidence a "congressional purpose [to] exempt matters from disclosure in

the actual words of the statute."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C.

Cir. 2002).   Here, Section 306(h) specifically identifies "particular types of matters" where

disclosure is inappropriate.  *Mudge Rose Guthrie Alexander & Ferdon v. U.S. Int'l Trade

Comm'n*, 846 F.2d 1527, 1530-31 (D.C. Cir. 1988).  That is, matters where disclosure would

harm the negotiating interests of the United States -- *e.g.* matters discussed in closed meetings of

CPAC.   *See* 19 U.S.C. § 2605(h).   Consequently, even if Section 306(h) did not expressly

mention FOIA it would nevertheless operate as an Exemption 3(B) statute.

Notwithstanding the above, through references to FACA's provisions incorporating

FOIA to advisory committees, Congress *did* specifically address Section 306(h) as a withholding

statute.  As discussed in Defendant's Opening Brief, Section 306(h) specifically exempts particular matters from disclosure under the provisions of FACA that incorporate FOIA to advisory committees.  *See* Open. Br. at 15-16.

In response to this straightforward application, Plaintiffs present the nonsensical argument that Section 306(h) merely exempts matters from public disclosure under FACA, but not FOIA.  *See* X-Mot. at 14-15.  Put another way, Plaintiffs argue that while the express nondisclosure language of Section 306(h) allows CPAC to withhold materials under FACA, CPAC is compelled to disclose those materials to anyone who makes a FOIA request.  This argument simply does not make sense.  Congress's intent, which is evident from the text of Section 306(h) itself, does not turn on a characterization of a request as a FACA demand or a FOIA request.

The clear Congressional intent of CPIA Section 306(h) is to exempt certain matters from disclosure under FACA sections 10 and 11.  *See* 19 U.S.C. §§ 2605(h).  Because section 10 of FACA (included as MSJ Ex. D for the Court's convenience), is the provision of FACA that makes FOIA applicable to CPAC, it is clear that Congress's express intent was to make Section 306(h) an exemption statute.[3]

---

[3]       Plaintiffs also argue in a short footnote that even if Section 306(h) is an Exemption 3 statute, the Department has not shown that the withheld materials are protected thereunder.  This footnote argument is meritless. As described in the Grafeld Declaration, the authority to make the Section 306(h) determination was delegated to the ECA Assistant Secretary, who exercised that authority when s/he chose to close CPAC meetings to the public.  *See* Grafeld Decl. at 34-35, MSJ Ex. A.  The ECA Assistant Secretary's invocation of Section 306(h) is not *post hoc*; and Plaintiffs cite to no source of law that requires any further efforts to invoke the protections of that Section.

**B.      State Properly Withheld Materials under CPIA Section 306(i)(1), an Exemption 3(B) Statute.**

Although Plaintiffs include a one-clause argument that CPIA Section 306(i)(1), 19 U.S.C. § 2605(i)(1), is not an Exemption 3(B) statute,[4] it appears that Plaintiffs' main argument regarding State's withholdings under CPIA Section 306(i)(1) is that State had not established that the withheld materials were provided "in confidence," as is required to withhold materials under this section.  In support, Plaintiffs selectively quote the Grafeld Declaration's summary of withholdings.  *See* X-Mot. at 16, *citing* Grafeld Decl. at 37-38, MSJ Ex. A.  Plaintiffs' selective quotation, however, once again ignores the minute and exhausting details provided by Ms. Grafeld in the descriptions of the specific withheld documents.

That is, for each and every document withheld under Section 306(i)(1), the Department specifically noted that the material was provided in confidence to ECA staff or CPAC and discussed who or which groups of persons provided that information.  *See* Grafeld Decl. at 54, 60, 72.  Consequently, Plaintiffs' argument in this regard is without support.[5]

**C.      State Properly Withheld Materials under CPIA Section 306(i)(2), an Exemption 3(B) Statute.**

Plaintiffs also argue that CPIA Section 306(i)(2), 19 U.S.C. § 2605(i)(2), is not an Exemption 3(B) statute.  Specifically, Plaintiffs argue that because that provision allows for the Department to issue rules governing the disclosure of materials protected thereunder (*i.e.*, information provided by its officials in confidence to CPAC), it cannot be an Exemption 3 statute.  *See* X-Mot. at 17-18.  However, as Plaintiffs observe, the Department has not

---

[4]      It is not surprising that Plaintiffs spend little time arguing that Section 306(i)(1) is not an Exemption 3 statute given the absolute, unambiguous expression of Congressional intent that materials protected thereunder "shall not be disclosed to any person" other than those specifically enumerated therein.  *See* Open. Br. at 16-17.

[5]      Furthermore, given that State has articulated the factual bases for its withholding under Section 306(i)(1), resorting to a comparison of Exemption 7(D) is unnecessary.

promulgated any such rules and Plaintiffs bring no claim (through the APA or otherwise) purporting to compel State to do so.[6]   Consequently, at this time, the materials protected by Section 306(i)(2) are not subject to public disclosure, period, full-stop.

Furthermore, simply because the Department has discretion to promulgate rules to allow for the disclosure of material protected by this part, does not change the character of Section 306(i)(2) as an Exemption 3(B) statute.  As Defendant noted in its Opening Brief, even when some discretion or permissible releases of the protected information exist, a statute may still be considered to fall within FOIA Exemption 3(B).  *See* Open. Br. at 17, *citing Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C. Cir. 1998) (holding that Smith-Mundt Act qualifies as an Exemption 3(B) statute even though it permitted disclosure of the protected documents outside the United States); *DeLorme Publ'g Co. v. NOAA*, 917 F. Supp.. 867 (D. Me. 1996) (finding that Federal Transfer Technology Act was an Exemption 3(B) statute, though it allowed the agency to disclose, in its discretion, certain information).  Furthermore, the Department's discretion in promulgating any such rules is limited by the factors discussed in Section 306(i)(2).  That is, Section 306(i)(2) does not give the Department unfettered discretion to release materials protected thereunder as it pleases.  Accordingly, Section 306(i)(2) is an Exemption 3(B) statute and the Department's withholdings were proper.

## V.   STATE PROPERLY INVOKED EXEMPTION 5 AS TO DELIBERATIVE PROCESS MATERIALS.

Plaintiffs essentially state four unmeritorious arguments regarding the Department's invocation of Exemption 5, namely: (a) CPAC cannot invoke Exemption 5; (b) Mr. Kislak believes that disclosure is proper; (c) State improperly invoked the exemption to factual material;

---

[6]      Defendant does not concede that any such claim has any legal merit.

and (d) State improperly invoked the exemption as to legal discussions of "established policies and decisions."[7]  For the following reasons, these arguments are without merit.

## A.  **Exemption 5 Was Properly Invoked As to CPAC Reports.**

As described in the Grafeld Declaration, the CPAC reports consist of non-binding reports and recommendations made by CPAC and its constituent members to the State Department regarding the imposition of import restrictions.  *See* Grafeld Decl. at 47-56, MSJ Ex. A. Consequently, these materials are pre-decisional and deliberative to the imposition of U.S. import restrictions.

For this reason, as Judge Roberts recently recognized, the "double identity" prohibition on utilizing Exemption 5 for materials that are pre-decisional to an advisory committee's decision -- which was first discussed in *Wolfe v. Weinberger*, 403 F. Supp. 238, 240-42 (D.D.C. 1975) -- is inapplicable.  *See Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 37 (D.D.C. 2006) (Roberts, J.) ("Documents produced by an advisory committee that are "relied upon by the agency in the course of decision-making," however, could be considered an integral part of the deliberative process and entitled to protection under Exemption 5.").  Indeed, the Court in *Wolfe*, itself recognized this distinction, by citing and distinguishing its situation -- where advisory committee transcripts were not used in the agency's deliberative process -- with that presented in *Wash. Research Project Inc. v. Dep't of Health, Educ. & Welfare*, 504 F.2d 238, 250-52 (D.C. Cir. 1974) -- where advisory committee reports containing recommendations and distillations of fact were used by the agency in its deliberative process.  *See Wolfe*, 403 F. Supp. at 243 ("Unlike the instant case, however, the documents in *Washington Research Project* were relied upon by the agency in the course of decision-making. The documents were 'an

---

[7]        Plaintiffs do not appear to challenge the Department's withholdings under Exemption 5 of non-final drafts of Department communications, actions and notices.  *See* MSJ at 8 (items (d), (e), and (g)).

integral part of the deliberative process,' of the agency, and as such were entitled to the protection afforded by the (b)(5) exemption, since they were internal agency memoranda.") (internal citations omitted).

Here it is clear that the CPAC reports withheld under Exemption 5 resemble those presented in *Washington Research Project* and not those addressed in *Wolfe*.  That is, the reports at issue in this action contain non-binding, pre-decisional, deliberative recommendations and recitations of discussions that were drafted pursuant to the CPIA and intended to be utilized, under the express statutory provisions of CPIA, by the Department in reaching its ultimate decision on import restrictions.  *See* Grafeld Decl. at 47-56, MSJ Ex. A; *cf. Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 687 (D.C. Cir. 2008) (finding that solicited comments from outside, unpaid consultants considered by the agency in its deliberative process were protected by Exemption 5); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (documents protected under Exemption 5 include "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'").   Consequently, such reports are protected by Exemption 5.

### B.    Mr. Kislak's Generalized Views Are Immaterial To This Case.

In a desperate attempt to avoid the straightforward application of Exemption 5 to the CPAC reports, Plaintiffs call on a former CPAC member to express his personal viewpoints on whether withholding is generally appropriate.  These viewpoints, however, are simply immaterial to whether the withheld information is pre-decisional and deliberative.  Indeed, Mr. Kislak's declaration presents nothing more than generalized platitudes concerning the openness of government.  *See* Kislak Decl., X-Mot. Ex. A.  If anything, Mr. Kislak's declaration underscores

the point that CPAC's recommendations are non-binding and that the State Department is tasked with making the "ultimate decision to impose import restrictions."  *See* Kislak Decl. at ¶¶ 5, 7, X-Mot. Ex. A.  Consequently, Mr. Kislak's declaration fails to support any notion that State's withholdings under Exemption 5 were improper.  *Cf. Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) ("The subjective views of a staff member that the decision-making process is complete and 'final' when he submits his recommendation to a superior is of no consequence.").

> **C.**      **State Properly Invoked Exemption 5 As to Distilled Factual Material.**

Although Plaintiffs concede that distillation of factual materials in pre-decisional, deliberative documents can be protected under Exemption 5, Plaintiffs summarily allege -- without any analysis or consideration of States' specific withholdings -- that the distilled factual summaries in this case do not warrant this protection.  *See* X-Mot. at 21-22.  It appears that Plaintiffs' central argument in this regard is that the relevant factual summaries are set forth in reports prepared by CPAC, and thus, cannot be withheld under Exemption 5.  *See id.*  This argument simply misses the mark.

Indeed, as noted above, the Department has withheld the CPAC reports and the distilled factual summaries set forth therein because those reports were integral to the Department's (not CPAC's) deliberative process and the Department reasonably believes that foreign relations may be impaired by the public release of that information.  Again, this situation is much like the circumstance presented in *Washington Research Project*, in which the D.C. Circuit held that factual summaries in advisory committee reports were exempt from disclosure, stating: "Even if they cited portions of the evidence verbatim, the assistants were making an evaluation of the relative significance of the facts recited in the record; separating the pertinent from the impertinent is a judgmental process, sometimes of the highest order; no one can make a selection

of evidence without exercising some kind of judgment, unless he is simply making a random selection." *Id.* at 250, *quoting Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974) ("To probe the summaries of record evidence would be the same as probing the decision-making process itself. To require disclosure of the summaries would result in publication of the evaluation and analysis of the multitudinous facts made by the Administrator's aides and in turn studied by him in making his decision. Whether he weighed the correct factors, whether his judgmental scales were finely adjusted and delicately operated, disappointed litigants may not probe his deliberative process."); *see also Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189-90 (D.D.C. 2009) (Bates, J.) (citing *Montrose* and finding that EPA's withholding of selected factual data was proper).

Plaintiffs offer no analysis whatsoever to rebut this straightforward and well-described basis for withholding the factual summaries in CPAC reports.  *See* MSJ at 8, 19-20; Grafeld Decl. at 54-55, MSJ Ex. A.

### D.     State's Invocation of Exemption 5 to Legal Opinions Is Permissible.

Plaintiffs lastly challenge State's application of Exemption 5 to documents that contain legal advice given to CPAC that "discuss established policies and decisions."  *See* X-Mot. at 22. It is unclear as to which documents Plaintiffs refer in making this argument.  Indeed, it again appears that Plaintiffs failed to review the specific document descriptions in the Grafeld Declaration.  If they had done so, they would have learned that the only materials withheld by State on the basis of the deliberative process privilege involving legal advice were: (a) an email and attachment from ECA employees to a Department attorney seeking legal advice and approval of a draft diplomatic note (Grafeld Decl. at 63-64, MSJ Ex. A); (b) portions of a recommendation memorandum from the ECA Principal Deputy Assistant Secretary to the

Assistant Secretary of ECA that sets forth legal advice for consideration in determining whether to extend the Department's Memorandum of Understanding with Cyprus (*id.* at 69-70). That is, none of the documents withheld under Exemption 5 that contain pre-decisional legal advice and recommendations describe the provision of legal advice to CPAC.

Furthermore, Plaintiffs' sole cited case, *Costal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980), is wholly unsupportive of Plaintiffs' premise. The D.C. Circuit in that case found that the documents at issue did not consist of legal "advice to a superior," but rather guidance memoranda reflecting "straightforward explanations of agency regulations in specific factual opinion" "more akin to a 'resource' opinion about the applicability of existing policy to a certain state of facts, like examples in a manual, to be contrasted to a factual or strategic advice giving opinion." *Id.* at 868. This is clearly not the case here, where the legal advice was provided on specific drafts and memoranda of understanding.

## VI. THE DEPARTMENT PROPERLY WITHHELD MATERIALS UNDER EXEMPTION 5 PURSUANT TO THE ATTORNEY-CLIENT PRIVILEGE.

Plaintiffs continue their take-no-prisoners approach to this FOIA case by summarily arguing in two sentences that Defendant's assertion of the attorney-client privilege is inadequate. This conclusory approach simply fails to rebut the well-articulated grounds upon which the Department has invoked that privilege -- which it has invoked only to withhold one email in full and another in part. *See* Open. Br. at 18-19.

Moreover, contrary to Plaintiffs' argument, the attorney-client privilege has been invoked not to protect "interpretations of agency law," but rather the solicitation and provision of legal advice regarding (i) a diplomatic communication; and (ii) an extension of a memorandum of understanding with Cyprus. *See* Open. Br. at 18-19, *citing* Grafeld Decl. at 63-64, 70-71, MSJ Ex. A. Consequently, Plaintiffs' sole argument regarding Defendant's assertion of the attorney-

client privilege is not only conclusory but inapposite.  Indeed, the situation in this case presents "a classic case" of the attorney-client privilege -- *i.e.*, portions of memorandum provided to decisionmakers setting forth legal advice and recommending legal strategy as part of the pre-decisional and deliberative consideration of a particular topic.  *Murphy v. Dep't of the Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979).

## VII.   STATE PROPERLY APPLIED EXEMPTION 6.

### A.   Plaintiffs Do Not Challenge the Redaction of CBP Employee Names.

As an initial matter, Plaintiffs begin their Exemption 6 challenge by stating that the Department did not address the withholding of CBP employee names, but then just two sentences later state in a footnote that they do not challenge this withholding.  Consequently, Plaintiffs' argument in this regard appears to be little more than an unnecessary diversion from the matters at issue in this case.

### B.   Exemption 6 Was Properly Applied to Withhold Private Individuals' Names.

Further, Plaintiffs' argument that Defendant should be forced to disclose the names of "private individuals who allegedly provided information to CPAC in their personal capacity," is without merit.  Plaintiffs argue that because these private individuals commented on what Plaintiffs believe to be a "commercial, non-personal matter," their names should be disclosed to Plaintiffs, citing *Alliance for the Wild Rockies v. Dep't of Interior*, 53 F. Supp. 2d 32, 36-37 (D.D.C. 1999) (Sporkin, J.), for support.  *See* X-Mot. at 23-24.  Plaintiffs' argument, however, fails to appreciate the fact that import restrictions are not necessarily commercial matters and that their conduct and that of their colleagues tips the balance against disclosure.

As a baseline proposition, contrary to Plaintiffs' assertions, individuals have a privacy interest and Exemption 6 was "designed to protect the names of individuals, regardless of the particular file in which they may be found."  *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp.

2d 1, 13 (D.D.C. 2009) (Kollar-Kotelly, J.), *citing State Dep't v. Washington Post Co.*, 456 U.S.

595, 602 (1982), *and Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)

(explaining that Exemption 6 protects "not just files, but also bits of personal information, such

as names and addresses, the release of which would 'create a palpable threat to privacy'").

Consequently, absent an overriding public interest, names of individuals are protected by

Exemption 6.  *Barnard*, 598 F. Supp. 2d at 13.

Given this rule, and the context-dependent considerations it implicates, it is not surprising

that the case law is divided on whether disclosure of names of persons who submit comments or

otherwise write government agencies advocating a policy or a position are subject to disclosure.

*See, e.g., Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003) (holding disclosure

of identity of consumers' complaints about "cramming" to law firm requesting identities seeking

to propel a possible class-action lawsuit would not further the purpose of FOIA and so

Exemption 6 applied); *Strout v. U.S. Parole Comm'n*, 40 F.3d 136, 139 (6th Cir. 1994) (holding

strong privacy interests of individuals who wrote letters opposing a parole request justified

withholding names and addresses from disclosure pursuant to Exemption 6); *Kidd v. Dep't of

Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) (Kennedy, J.) (holding "[p]roviding personal

identifying information commonly found in constituent letters [to Congresspersons] does not

advance the purpose of FOIA and, as such, may be withheld from FOIA requests"); *Judicial

Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) (Urbina, J.) ("A

person who has written a letter to a federal official may have a great privacy interest in the

nondisclosure of his name."); *Voinche v. FBI*, 940 F. Supp. 323, 329-30 (D.D.C. 1996) ("There

is no reason to believe that the public will obtain a better understanding of the workings of

various agencies by learning the identities of . . . private citizens who wrote to government

officials."); *compare with* X-Mot. at 24.  However, in this case, not only is there no public interest in revealing the names of private individuals with no identified commercial relationship, but given Plaintiffs' desire to foist their challenge of the Department's import restrictions into the public forum, the privacy interests of ordinary, individual citizens far outweighs any need Plaintiffs might have for that information.

Plaintiffs and their colleagues have several frequently-updated blogs regarding the activities of CPAC, import restrictions on coins, and running commentary on those that oppose their viewpoints.  *See* ACCG News, http://www.accg.us/news (Last Checked May 18, 2009); Cultural Property Observer, http://culturalpropertyobserver.blogspot.com/ (Last Checked May 18, 2009); Ancient Coin Collecting, http://ancientcoincollecting.blogspot.com/ (Last Checked May 18, 2009).  Moreover, as of the drafting of this brief, the top story on Coinlink, a website committed to "provid[ing] the numismatic community with access to the 'best' numismatic information, news and resources on-line," concerns ACCG's "challenge" of the State Department's restrictions, stating that the ACCG "has launched phase two of a coordinated plan to challenge import restrictions on ancient coins."   Coinlink, Homepage, http://www.coinlink.com/ (Last Checked May 18, 2009), Reply Ex. 3; Coinlink, "Coin Collectors to Challenge State Department on Import Restrictions," http://www.coinlink.com/ (Last Checked May 18, 2009), Reply Ex. 2.[8]  Given Plaintiffs' efforts to publicize their campaign, the likelihood that private individuals will be annoyed or harassed appears to be, at the very least, plausible.  Consequently, these names were properly withheld under Exemption 6.

---

[8]     Further underscoring Plaintiff's true objectives in this case, evidently "phase one" of ACCG's "coordinated plan" is this FOIA lawsuit.  *See id.*

### C. **Exemption 6 Was Properly Invoked as to State Employees' Names.**

Similarly, given Plaintiffs' intentions of publicizing their campaign against the Department's import restrictions, the privacy interests of mid-level State employees are also significant and not outweighed by any public interest.  Indeed, "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'"  *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005), *quoting Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980).  Contrary to their assertions, the likelihood that Plaintiffs themselves will seek to publicize such employees' involvement is real and evident from Plaintiffs' own blogging and press releases.  Indeed, Plaintiffs do not address, because they cannot rebut the relevance of, their efforts to publicize their "two phase" "coordinated plan."  Therefore, the Department properly withheld their names from production.

## VIII.   THE DEPARTMENT'S SEGREGABILITY ANALYSIS WAS SUFFICIENT.

In closing, Plaintiffs allege that State's segregability analysis is also somehow flawed.  In sum, Plaintiffs argue that the 79-page Grafeld Declaration is insufficient on this issue because it does not describe in detail how the Department reviewed the materials.  *See* X-Mot. at 25-26.  This argument is confusing and unsupported by the law and the facts of this case.  As the Department noted in its Opening Brief, it is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261, n.55.  Rather, the Department must only show that the responsive documents cannot reasonably be further segregated.  *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Defendant has met this burden.

*First*, the Grafeld Declaration specifically notes that the responsive documents "have been carefully reviewed for reasonable segregation of non-exempt information, and [Ms. Grafeld has] determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law."  Grafeld Dec. at 78-79, MSJ Ex. A.

*Second*, Defendant's adherence to its segregability obligations is evidenced by the release itself.  That is, the Department released a substantial number of documents in full and a sizeable number of documents in part.  *See id.*

*Lastly*, as is evident from the parties' extension requests, the Department repeatedly re-reviewed its releases in light of requests made by Plaintiffs and its communications with Cyprus.  *See* Docket Entry Nos. 10-15.  When the Department determined that additional information could be released, it released it.

Therefore, the Department has satisfied its obligations of segregability under FOIA.  *See generally Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 90 (D.D.C. 2009) (Leon, J.) (finding that agency fulfilled segregability requirement noting, "[p]laintiff's level of satisfaction with the content of redacted records does not undermine the FBI's decisions to redact or withhold information under the claimed exemptions.").

\*   \*   \*

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's Opening Brief, summary judgment is appropriate on Plaintiffs' claims in Defendant's favor.

Dated: May 19, 2009
       Washington, DC

                                Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


                     /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


                     /s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*