UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANCIENT COIN COLLECTORS GUILD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-2074 (RJL) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, the International Association of Professional Numismatists ("IAPN"), the Professional Numismatists Guild ("PNG"), and the Ancient Coin Collectors Guild ("ACCG"), by and through undersigned counsel, respectfully submit this reply in further support of their cross-motion for summary judgment and opposition to Defendant's motion for summary judgment ("cross-motion.")

## **INTRODUCTION**

Plaintiffs' cross-motion and the supporting declaration of past CPAC Chairman Jay Kislak established the public interest in the release of information about Defendant's decision making processes for imposing import restrictions on cultural artifacts. In contrast, in Defendant's reply in further support of its motion for summary judgment and in opposition to Plaintiffs' cross-motion for summary judgment ("reply/opposition"), Defendant mischaracterizes many of Plaintiffs' arguments raised in Plaintiff's cross-motion and raises a number of matters that simply are not germane to this or any FOIA proceedings. As Plaintiffs' originally stated in their cross-motion, Defendant has failed to establish that portions of its search for responsive

records and withholdings made on many responsive documents as explained and justified by Defendants do not merit an award of summary judgment for Defendants.  Rather, the facts of the case establish that summary judgment is appropriate for Plaintiffs.

Initially, it should be noted that Defendant spends a great deal of space in its reply/opposition discussing Plaintiff ACCG's efforts to challenge import restrictions. Defendant's reply/opposition at 4, 25-26.  No matter how Defendant feels about these actions, they are completely immaterial and unrelated to this FOIA action[1].  NARA v. Favish, 541 U.S. 157, 172 ("[A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information.") reh'g denied, 541 U.S. 1057 (2004).   The fact that Defendant is upset with one of the three Plaintiffs actions is not surprising when reviewed in the prism of this lawsuit.  Defendant initially refused to process most of the requests at issue until Plaintiffs brought this action.  See Compl. At Counts I to IX. And the releases grudgingly made by Defendant illustrate the lengths Defendant's component controlling many of the responsive records, the Bureau of Education and Cultural Affairs

---

[1] In fact, only one of the three named Plaintiffs in this matter, ACCG, is making the challenge to the import restriction as detailed by Defendant.  At pages 4-5, Defendant claims ACCG is pursuing that matter in support of the "commercial interests" of some its benefactors. This tact, evidently cribbed from some of the more outspoken archaeological blogs, is not only inaccurate, but beside the point.  See http://ancientcoincollecting.blogspot.com/2009/05/rose-is-rose.html (last visited June 2, 2009) and http://culturalpropertyobserver.blogspot.com/2009/05/whats-wrong-with-commercial-interests.html (last visited June 2, 2009).

In any event, only U.S. Customs has the power to ensure that 'test case' will proceed.  To date, U.S. Customs has detained some 23 inexpensive, common, "unprovenanced" ancient Chinese and Cypriot coins properly declared before import from the United Kingdom into the "Port of Baltimore." See http://www.accg.us/issues/news/coin-collectors-to-challenge-state-department-on-import-restrictions (last visited June 2, 2009).  Customs will either return the coins or take the legal steps necessary to seize them either through an administrative process or through an "in rem" action in the U.S. District Court for the District of Maryland.

("ECA"), has gone to circumvent Plaintiffs and others with similar points of view from voicing their opinions on import restrictions.

## ARGUMENT

### I. Defendant Has Not Established That It Conducted A Reasonable Search

Defendant mischaracterizes Plaintiffs' arguments about Defendant's search efforts and fails to rebut, and in fact, admits to many of the points raised by Plaintiffs.  Defendant raises seven points that it states were brought by Plaintiffs, and states that these points do not demonstrate that Defendant's search was inadequate.  Defendant's opposition/reply at 5-9.  As will be discussed below, the points raised do not overcome the issues raised in Plaintiffs' cross-motion and Defendant has not established that certain of the searches it conducted were reasonable.

Plaintiffs' cross-motion discussed in detail problems with Defendant's explanation of its search for emails sent by ECA's Executive Director.  Cross-Motion at 5-6.  Of the seven points raised in Defendant's reply, six address Plaintiffs' arguments about the search for these emails.

Defendant's first argument is that "Plaintiffs' complaint regarding Ms. Kouroupas' computer is utterly without merit."  Defendant's reply/opposition at 5.  Defendant claims that the Declaration of Margaret Grafeld ("Grafeld Decl.") clearly establishes that e-mails from this computer were properly searched for.  Id.  However, as was clearly shown in Plaintiffs' cross-motion, this explanation did not establish that e-mails from or to Ms. Kouroupas was *properly* searched for.  No search terms outside of "coin/coins" are described nor is there any description of what happened if Ms. Kouroupas or other staff in ECA deleted e-mails from the computers they claim to have searched.  Plaintiffs accept the fact that ECA staff may have done a cursory search for responsive records; however, until details of that search are provided, the search is not

considered reasonable under the FOIA.  See Friends of Blackwater v. U.S. Dep't of the Interior,

391 F. Supp. 2d 115, 122 (D.D.C. 2005).

Defendant next defends Margret Grafeld's ability to be the declarant in this matter.

Defendant's reply/opposition at 6.  Plaintiff never states that Ms. Grafeld is "an inadequate

declarant in this case."  Id.  Defendant is correct that Ms. Grafeld, as Information and Privacy

Coordinator for Defendant is a proper FOIA declaration.  However, as the declarant, Ms. Grafeld

must establish that the search was properly conducted based on her personal knowledge.  F.R.

Civ. Pro. 56(e).  Plaintiffs' cross-motion merely stated that Ms. Grafeld did not provide the

search details needed to establish Defendant's search as adequate and pointed out that the FOIA

Office did not conduct the search.  Cross-Motion at 6.  Just because Ms. Grafeld is the proper

declarant in a FOIA matter does not mean that the conclusory statements about a search establish

that the search was proper.  As no further details on the search have been provided by Ms.

Grafeld or someone who actually conducted the search in ECA, Defendant has still not

established that its search was proper.

Defendant next attacks Plaintiffs statement that it made no mention of its document

retention policies. Defendant's reply/opposition at 6-7.  In stating that this is irrelevant,

Defendant, however, does cite its document retention policy.  Id. at 7.   Of course, the reason this

is material is that in Defendant's deficient description of its search, it doesn't explain how

records that may have been deleted from the ECA computers that were searched were retained

by Defendant, allowing for a secondary search (which has not been performed according to

Defendant.).  Further, Defendant cites a number of cases that are not on point to the issue at hand

because the present search has not been established as a reasonable one.  In fact, one of the cases

they cite shows exactly why this is an issue.  Defendant cites that "[a]n agency does not violate

the FOIA for its failure to locate records destroyed in accordance with an agency's normal

retention policy.  The Court's authority is limited to release non-exempt agency records in

existence at the time the agency receives the FOIA request."  <u>Anderson v. Dep't of Justice</u>, 581

F. Supp. 2d 1, 10 (D.D.C. 2007).  As stated above, it took months, and in some cases years, from

the time Plaintiff requested records until Defendant begrudgingly searched for responsive

records—thus it is not clear that Defendant has established that the records searched were all of

the records in existence at the time of Plaintiffs' requests.

 Fourth, Defendant states that "Plaintiffs' argument that ECA staff's failure to search

back-up email tapes for responsive records is misguided and inaccurate."  Defendant's

reply/opposition at 7-8.  Defendant again misses the point.  Plaintiffs extensively questioned

Defendants about the scarcity of e-mails from the computer of Maria Kouroupas, Executive

Director of the Cultural Heritage Center, a component of the ECA.  <u>See</u> Exhibit 6 to Plaintiffs'

cross-motion.  Defendant provides only a limited description of the terms used for this search,

but does not describe the number of emails retained that were actually searched on the computer

assigned to Ms. Kouropas.  Thus, it is not unreasonable to question why back-up or archival

tapes of ECA emails were not searched.  Defendant cites <u>Stewart v. U.S. Dep't of Interior</u>, 554 F.

3d 1236, 1244 (10th Cir. 2009) for the proposition that data on Interior Department backup tapes

is not organized for document retrieval.  However, as there is no factual basis has been provided

by Defendant in this matter as to how and in what format State Department backup tapes are

retained, <u>Stewart</u> is totally irrelevant to this action.  Of course, if a search is reasonable there

would be no reason to search backup tapes.  However, the facts demonstrated in this instance

show that it is not unreasonable to ask that a limited search of archived backup tapes be

conducted for emails related to Ms. Kouroupas.

Defendant's fifth point is that Plaintiffs argument that the government didn't state that "every scrap of paper has been located" does not render the search inadequate.  Defendant's reply/ opposition at 8.  Plaintiffs never make this assertion and for the reasons stated herein and in their cross-motion, Defendant's search is simply not adequate.  Defendant's sixth point is that "Plaintiffs appear not to have read the Grafeld Declaration when they argue that the Department has not adequately described the email searches of the ECA staff."  Id.  Defendant states that the declaration describes the search "down to the mouse clicks."  Id.  Plaintiffs have indeed read the Grafeld Declaration in making their assertions about the search conducted by ECA staff.  Plaintiffs have meticulously pointed out what is missing from the declaration about the search that would make the search reasonable, herein and in their cross-motion.

Defendant's last point about its search concerns the searches of the files of certain offices of the State Department.  Defendant admits that it limited searches in the offices of Bureau of Public Affairs, the Bureau of European and Eurasian Affairs and the Office of the Undersecretary for Political Affairs for records only concerning the "ceremonial exchange of diplomatic notes."  Defendant's reply/opposition at 9.  However, Plaintiffs requests included asking for "any documentation evidencing the extension of import restrictions to coins of Cypriot types for the period January 25, 2007 to July 31, 2007." Complaint at Count VII.  These records may have been located in these offices and, thus, these offices are not merely "tangential" to Plaintiffs request and therefore Defendant's reliance on Davy v. CIA, 357 F. Supp. 2d 76, 84 (D.D.C. 2004) is not applicable.  Nor is the adequacy of the FBI's search of its Central Records System as described in Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 21-22 (D.D.C. 2002) material to the issues at hand as the State Department has not established that its record keeping system is similar to that of the FBI.

Thus, Defendant has still not met its burden in showing that its search for records was adequate as it has not demonstrated that it conducted a search reasonably calculated to locate all responsive documents.  Defendant's motion for summary judgment on its search for responsive records should be denied and Defendant should be ordered to conduct further searches for responsive records.

## II.  Defendant Has Not Established That Records Were Properly Withheld

Defendant continues to assert that certain documents are properly withheld pursuant to FOIA exemptions 1, 2, 3, 5, 6 and 7(C).  However, as detailed below, Defendant's assertions in opposition to Plaintiffs' cross-motion continues to fail to establish that all of these documents are properly exempt under the FOIA[2].

### A.  Exemption 1

In its reply/opposition, Defendant stands by its classification of certain documents. Defendant stands by its declaration stating that the material is classified because of promises it made to foreign governments that the material would be held in confidence.  Defendant's reply/opposition at 11.  However, it is the material outside of Defendant's filing, which Defendant does not comment on that demonstrates why the government's position is not consistent with the actual facts in this matter.  As demonstrated in Plaintiffs' cross-motion, the Republic of Cyprus worked hand in hand with a private group, the Cyprus American Archaeological Research Institute ("CAARI"), on the renewal of import restrictions and their extension to coins.  Plaintiffs' cross-motion at 10.  Furthermore, the Republic of Cyprus itself

---

[2] While it is true that the policy statements issued by the President and the Attorney General concerning the FOIA and referenced in Plaintiffs' cross-motion give Plaintiffs no rights in litigation, it is clear that the spirit of openness intended by these memoranda has not translated to this action as Defendant continues to stand by all of its withholdings made prior to these statements of open government.

has published on its website the very same type of information Defendant claims in its

opposition should be held confidential.  Compare Defendant's reply/opposition at 11 ("the

withheld information concerns, in part, (i) the identification of known vulnerabilities of, and

instances of looting at, sensitive archaeological sites, (ii) the physical means of protecting those

sites, and (iii) specific law enforcement actions against looting and smuggling") to

http://www.cyprusembassy.net/home/index.php?module=pages&cid=15, (last visited May 27,

2009), which specifically identifies in detail the type of information Defendant claims should be

held confidential.  Thus, despite Defendant's assertion that this information must be held

confidential, the parties the information came from have shown by their actions that the

information isn't truly confidential and should not be protected in this instance by FOIA

exemption 1.

   Defendant also asserts that it has not waived details of the PRC's request for import

restrictions by releasing the English language summary of the request.  Defendant's

reply/opposition at 11-12.  However, it remains the agency's burden to show that placing the

material in the public domain doesn't negate the confidentiality claim on the material.

Washington Post v. Department of Defense, 766 F. Supp. 1, 12-13 (D.D.C. 1991) (suggesting

that the burden is on the agency when comparing publicly disclosed information with that which

has been withheld).  Release of the actual "Chinese request" would clarify the confusion between

Defendant's claim that there were "no responsive documents" "evidencing the inclusion of coins

in the list of items proposed for potential restrictions" and the presence of coins in the "public

summary[3]" of the Chinese request.  Compare Grafeld Declaration at 7-9 and accompanying

---

[3] Defendant appears to have even confused itself on this matter, as it had to file an errata in this
case on May 27, 2009 explaining that the parenthetical reading "the initial Chinese language
version of China's submission" should be ignored.  However, Defendant has never explained in

Exhibits (noting Defendant's claim there are no responsive documents evidencing the inclusion of coins) and Exhibit G to Plaintiffs' cross-motion (indicating without further explanation at the end of the "public summary" that coins were subject to potential restriction.).

Thus, Defendant has still not met its burden in establishing that the material it attempts to protect pursuant to FOIA exemption 1 is properly classified. Therefore, summary judgment is not appropriate for the government on this issue.

### B. Exemption 2

Defendant next defends its decision to withhold material it claims is low-2 information. Defendant attacks Plaintiffs literacy due to the fact that Plaintiffs have questioned whether this is truly low-2 material. Defendant's reply/opposition at 12. Defendant states what the material is but never states how it is that they construe it as low-2 material—and as pointed out in Plaintiffs' cross-motion, this material has been held protectable as both low-2 and high-2 information. See, e.g. Coleman v. FBI, 13 F. Supp. 2d 75, 79 (D.D.C. 1998); Ferrenti v. Bureau of Alcohol, Tobacco & Firearms, 177 F. Supp. 2d 41, 45 (D.D.C. 2001). Thus, Defendant has not demonstrated that this material is truly "low-2" material and summary judgment should not be granted on Defendant's assertions.

Further, Defendant states that even though the government's policies and guidance state that low-2 material should not be withheld, this is irrelevant in litigation because this guidance and policies create no rights for Plaintiffs in litigation. Defendant's reply/opposition at 13. Defendant makes the argument that this policy only applies to pending cases where "a material disclosure of additional information" would result and as this is low-2 material, nothing material

---

its filings why the Chinese language version is not responsive to Plaintiffs' request nor does the Grafeld Declaration specify that the 160 pages being withheld are not an English language version of the documents, not the Chinese language version submitted by the Peoples Republic of China.

would be disclosed.  Id. at 13-14.  With the openness polices currently in place, there is simply

no reason why, if this is truly low-2 material, that the government wastes the Court and the

parties time in refusing to release this material.

### C. Exemption 3

Defendant next attempts to rebut Plaintiffs arguments that the government has failed to

demonstrate that the material it has withheld under exemption 3 via 19 U.S.C. §§ 2605(h) and

(i)[4].  Initially, Defendant misstates Plaintiffs' argument concerning subsection 2605(h).

Defendant says that Plaintiff argues that this subsection is not an exemption 3 statute because it

does not specifically mention FOIA.  Defendant's reply/opposition at 14.  Plaintiffs, however,

never make this argument in their cross-motion.

Plaintiffs stated that FOIA is never mentioned in Subsection 2605(h).  Plaintiffs' cross-

motion at 14.  Regardless of whether FOIA is mentioned or not, Defendant must still establish

that the asserted statute is a statute of exemption under the FOIA and second, that the material

must satisfy the criteria for exemption under that statute. CIA v. Sims, 471 U.S. 159, 167 (1985);

Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).  This has not been done.  Plaintiff merely

pointed out that Subsection 2605(h) allows for meetings to be closed pursuant to the Federal

Advisory Committee Act, as such Defendant has not established that this is a exemption 3

statute.

Alternatively, Defendant continues to cite no actual findings made by any ECA Assistant

Secretary closing CPAC meetings pursuant to subsection 2605(h).  Plaintiffs do not argue that

the ECA Assistant Secretary cannot close CPAC meetings pursuant to this subsection, Plaintiffs

merely state that there is no evidence in the record that this even occurred.  Without reference to

---

[4] Defendant refers to 19 U.S.C. §§ 2605 (h) and (i) as CPIA Sections 306(h), i(1) and i(2).
Defendant's reply/opposition at 14.

these actual findings, Defendant has not established that this material is exempt from the FOIA.

Additionally, Defendant does not differentiate that the released material came from closed or

open CPAC meetings.

Defendant next argues that it has established that it properly withheld material pursuant

to subsection 2605(i)(1) and that further factual bases are unnecessary.  Defendant's

reply/opposition at 16.  Defendant states that the Declaration of Margret Grafeld at 54, 60, and

72 provides these factual bases.  Id.  Defendant is incorrect—these portions of Grafeld's

declaration do not give specifics about how the information was given "in confidence" to it by a

non-government employee.  As such, and as explained more fully in Plaintiffs' cross-motion at

15-17, Defendant has not established that this material is appropriate for withholding pursuant to

the subsection.

Finally, Defendant asserts that the fact that it has never established the required rules

pursuant to subsection 2605(i)(2) is meaningless in determining whether it properly withheld

material under the subsection.  Defendant's reply/opposition at 16-17.  However, Subsection

2605(i)(2) does not make these rules discretionary:

> Information submitted in confidence by officers or employees of the United States to
> the Committee shall not be disclosed other than in accordance with rules issued by the
> Director of the United States Information Agency, after consultation with the
> Committee.  Such rules shall define the categories of information which require
> restricted or confidential handling by such Committee considering the extent to
> which public disclosure of such information can reasonably be expected to prejudice
> the interests of the United States. Such rules shall, to the maximum extent feasible,
> permit meaningful consultations by Committee members with persons affected by
> proposed agreements authorized by this chapter.

19 U.S.C. § 2605(i)(2).  Without the rules, disclosure of material to *anyone* is a violation of the

statute.  Presumably, and by Defendant's own admission, it has been using this information to

make decisions.  Therefore, not only has the material not been established to be properly

withheld under the FOIA, but Defendant has been violating this subsection in administering CPAC.

### D. Exemption 5

Defendant states that four of the arguments made by Plaintiffs are unmeritorious and, therefore, Defendant has established that its withholdings pursuant to exemption 5 are proper. Initially, Defendant states that the "double identity" prohibition which disallows advisory committee material to be withheld pursuant to the deliberative process privilege is inapplicable to this situation.  Defendant's reply/opposition at 18-19.  Wolfe v. Weinberger, 403 F. Supp. 238, 240-42 (D.D.C. 1975) held that an advisory committee cannot have a "double identity" as an agency and hence cannot invoke the (b)(5) exception.  Defendant states that the present situation is more akin to that in Heartwood, Inc. v. U.S. Forest Serv., 431 F. Supp. 2d 28, 37 (D.D.C. 2006) where advisory committee documents used by the agency in its decision making was given exemption 5 protection.

The problem with Defendant's argument, despite assertions made in Defendant's reply/opposition is that Defendant has not established that the advisory committee documents were actually used by the agency in the agency's decision making.  A careful reading of the Grafeld declaration finds two instances where she discusses the use of exemption five for advisory committee materials.  In the first, she states that the views of individual committee members that do not embody the final agency decision were submitted to the Department and were being protected because they were minority views.  Grafeld Decl. at 50-51.  In the second instance, Grafeld states that certain documents contain discussions, with specific recommendations of the committee on whether or not import restrictions should be imposed or extended.  Id. at 55.  Grafeld states that the committee is charged with providing the agency non-

binding recommendations for consideration in the State Departments final decision. <u>Id</u>. at 56.

What is important is what is left out of this discussion. Grafeld never states that these

recommendations were actually used or looked at by agency decision makers; just that they were

intended for them. Thus, Defendant has not established that these records meet the exception

from <u>Wolfe</u> carved out in <u>Heartwood</u> because the government never states that the advisory

committee documents were actually used by the agency in its decision making.

 Next, Defendant states that the views of Jay Kislak, former chair of CPAC, are

immaterial. Defendant's reply/opposition at 19. Mr. Kislak is no mere agency employee as

Defendant asserts. He was the Presidentially appointed chair at the time the subjects of the

requests came before CPAC, and his view is that the release of the documents would benefit the

work of CPAC and actually allow it to make better recommendations and would have no chilling

effect in the deliberations associated with CPAC. Kislak Decl., ¶¶ 5-6 attached as Exhibit A to

Plaintiff's cross-motion. Thus, his views as former CPAC Chair should hold great weight. It

should be noted that Defendant does not disagree with Mr. Kislak's statement that Defendants

have improperly reported the CPAC recommendations to Congress as required by law, and the

release of this information would clarify the record on the issue. <u>Id</u>. at ¶9.

 Further, Defendant defends its withholding of factual information in this instance.

Defendant claims that certain of the documents it is withholding pursuant to the deliberative

process privilege are factual, but are "summaries that were culled by the Committee for the much

larger universe of facts presented to it." Grafeld Decl. at 55. What is amazing about

Defendant's claim about these facts is they never assert that they are part of the agency decision

making process. The deliberations occurred at the committee level—and in no instance, as stated

previously, does Defendant state that the recommendations made by the committee were actually

used in the agency's actual decision making process.  Thus, for this reason and the reasons

provided in Plaintiffs' cross-motion, it is clear that this factual material is not the type of

deliberative facts that are appropriate for withholding pursuant under the deliberative process

privilege of FOIA exemption 5[5].

## E. Exemption 6

Defendant first states that Plaintiffs' statement that it did not address the withholding of

CBP employee names is "just an unnecessary diversion from the matters at issue in this case."

Defendant's reply/opposition at 23.  As noted in Plaintiffs' cross-motion/opposition, Defendant

also failed to defend its withholding of the names and indentifying information of private

individuals who allegedly provided information to CPAC in their personal capacity.  Plaintiffs'

cross-motion at 23.  However, Defendant now defends its withholding of these third parties by

citing a number of cases that are not on point and makes unsubstantiated allegations about

Plaintiffs' conduct.

Defendant cites a number of cases that allow for the government to withhold the names

and other identifying information about people who wrote letters to the government for various

purposes.  Defendant's reply/opposition at 24-25.  Defendant does not challenge that in the case

at hand individuals provided information to CPAC about the proposed import rules—they only

challenge the assertion that individuals had a commercial interest in the matter.  Id. at 25.

Regardless of whether or not these individuals had a commercial interest in the letters, the

purpose of the letters was clearly to comment on the proposed import restrictions.  As such, this

information should be released.  Alliance for the Wild Rockies v. DOI, 53 F. Supp. 2d 32, 36-37

---

[5] Defendant defends its use of the deliberative process privilege and attorney client privilege to withhold other information pursuant to exemption 5.  Plaintiffs continue to assert this material is not appropriate for withholding as demonstrated in their cross-motion.

(D.D.C. 1999).  None of the cases cited by the government state that this information may be withheld in the context of commenting on a *policy* matter.

Further, Defendant makes much about various comments of those opposed to the State Department's action on import restrictions.  Defendant's reply/opposition at 23.  According to this argument, Plaintiff ACCG's actions demonstrate the likelihood that these private individuals will be annoyed or harassed and therefore, these private individuals have a privacy interest in this material. Id.

Defendant's argument about the purported privacy interests of these third parties has a number of flaws.  First, there are three Plaintiffs in this action, however Defendant can only point to one, ACCG, and its public challenge of import restrictions on ancient coins as giving rise to a privacy interest for third parties.  Additionally, Defendant points to nothing in any of the websites that is an actual threat or harassment of any individuals[6].  It appears that because Defendant does not like any one challenging its policy of import restrictions, anyone attempting to make a challenge will be vilified such as the ACCG has been vilified in this instance.  Finally, Plaintiffs only seek the names of these third parties—not their home address or other personal information.  As demonstrated herein and in Plaintiffs' cross-motion, the public interest outweighs any privacy interest that can be construed in these individual's names and this information should be released to Plaintiffs.

Defendant continues to assert that the names of State Department employees should be withheld, but provides no new arguments.  Defendant's reply/opposition at 26.  As discussed in Plaintiffs cross-motion/opposition, Defendant does not assert any real harm in releasing the names of State Department employees and as such, the public interest outweighs the minimal

---

[6] Defendant made similar unsubstantiated arguments in its summary judgment motion which were refuted in Plaintiff's cross-motion at 24-25.

privacy interests of these State Department officials, and these names should be released pursuant to FOIA exemption 6.

Thus, Defendant should release the names of the third parties who provided information to CPAC as well as the identities of the State Department employees who have been withheld pursuant to FOIA exemption 6.

### F. Duty to Segregate

Finally, Defendant claims that it has demonstrated that all reasonably segregable information has been released.  Defendant's reply/opposition at 26-27.  According to Defendant that is because it re-reviewed the responsive documents a number of times, it released a number of documents in part and its declarant stated that "[a]ll of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and I have determined that no segregation of meaningful information in the withheld documents can be made . . ."  Id.; Grafeld Decl. at 79.  However, Defendant still provides no other facts on how it reviewed the documents to ascertain that documents were not segregable.  This omission from which it may be inferred that staff reviewed each document for the purpose of determining whether the withheld documents contained any segregable information that could be released continues to be determinative and summary judgment on the issue of segregability should be denied to Defendant.  See Durrani v. United States Department of Justice, 2009 WL 755219 at *8 (D.D.C. March 24, 2009).

**CONCLUSION**

Defendant has failed to meet its burden of proving that it properly withheld portions of records at issue in this matter.  Accordingly, these records should be disclosed to Plaintiffs.

Dated:  June 9, 2009                    Respectfully Submitted,

                                        _____/s/_____
                                        Scott A. Hodes, D.C. Bar #430375
                                        P.O. Box 42002
                                        Washington, D.C.  20015
                                        301-404-0502
                                        413-641-2833 (fax)

                                        Attorney for Plaintiffs