# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 24, 2011         Decided April 15, 2011

No. 09-5439

ANCIENT COIN COLLECTORS GUILD, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF STATE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-02074)

———

*Scott A. Hodes* argued the cause and filed the briefs for appellants.

*Brian P. Hudak*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

2

WILLIAMS, *Senior Circuit Judge*:   The Convention on Cultural Property Implementation Act ("CPIA"), 19 U.S.C. §§ 2600-13, allows the President to enter into agreements to restrict importation of cultural artifacts pursuant to the 1970 UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property.   823 U.N.T.S. 231 (1972). The Cultural Property Advisory Committee ("CPAC") is a federal advisory committee (within the meaning of the Federal Advisory Committee Act ("FACA"), Public Law 92-463, 5 U.S.C. App. 2).     It advises the State Department's Undersecretary for Educational and Cultural Affairs on import restriction requests from foreign governments.   19 U.S.C. § 2605.   CPAC has no final authority to approve or deny import restrictions.   But when the Department's Bureau of Educational and Cultural Affairs enters into a Memorandum of Understanding with a foreign country on import restrictions, it must file a report with Congress that indicates how and why the import restrictions differ from CPAC's recommendations.   19 U.S.C. § 2602(g)(2).

This case concerns eight requests filed under the Freedom of Information Act ("FOIA") by the Ancient Coin Collectors Guild, the International Association of Professional Numismatists, and the Professional Numismatists Guild, Inc. (collectively, the "Guilds") seeking records from the State Department relating to import restrictions imposed on cultural artifacts from China, Italy, and Cyprus.   In response, State released 70 documents in full and 39 documents in part and withheld 19 documents entirely under various FOIA exemptions.     Supplemental Declaration of Margaret P. Grafeld, Joint Appendix ("J.A.") 229.   The Guilds filed suit challenging the withholding of certain of these documents pursuant to FOIA Exemptions 1, 3, and 5 (as well as certain other exemptions not contested in this appeal), and the adequacy of State's search in response to the FOIA requests.

3

See 5 U.S.C. § 552(b)(1), (3), (5).  The district court granted summary judgment in favor of State on all claims.  *Ancient Coin Collectors Guild v. U.S. Dep't. of State*, 673 F. Supp. 2d 1 (D.D.C. 2009).

We find that State's invocation of Exemptions 1 and 5 was proper, as was part of its withholding under Exemption 3, but we reverse and remand the district court's dismissal of the Guilds' claims as to one document withheld under Exemption 3 and (in part) as to the adequacy of the search.

\* \* \*

An agency withholding responsive documents from a FOIA request bears the burden of proving the applicability of the claimed exemptions.  *American Civil Liberties Union v. U.S. Dept. of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).  Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  We review the district court's grant of summary judgment *de novo*.  *Id*.

The Guilds challenge the withholding under Exemption 1 of certain information in CPAC committee reports that had been provided by the government of Cyprus and of a request by the People's Republic of China for American import restrictions.  Exemption 1 applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  State contends that the material in question was properly classified under § 1.4(b) of Executive Order No. 12,958, which permits classification of information provided

4

by foreign governments, and under § 1.4(d) of the same order, which permits classification of material related to foreign relations and foreign activities of the United States.  Exec. Order No. 12,958, 3 C.F.R. 333 (1996).

The Guilds say that the Cypriot material was not properly classified because the government of Cyprus discussed the material with a private organization, the Cyprus American Archeological Research Institute ("CAARI").  As evidence, the Guilds point only to quotations from an interview with CAARI's President, posted on CAARI's website, saying that "CAARI has been in the forefront of the successful effort to renew the Memorandum of Understanding between Cyprus and the USA restricting the import of Cypriot antiquities into the United States" and that CAARI was "instrumental" in that renewal.   See Cyprus American Archaeological Research Institute,               CAARI               at               30, http://www.caari.org/CAARIat30.htm.   Though an agency generally bears the initial burden of showing that a FOIA exemption applies, the Guilds can prevail on their prior-disclosure theory only by carrying the burden of identifying specific information in the public domain duplicative of the withheld information. *Public Citizen v. Dep't. of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) (*Public Citizen II*); *Public Citizen v. Dep't. of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) (*Public Citizen I*).  The Guilds' evidence falls way short.  The website provides no indication that State or the government of Cyprus shared any of the information withheld by State with CAARI or any other private party.  Even if it had disclosed such information, a limited disclosure to a small number of individuals might not be enough to render classification inappropriate.   See *Carlisle Tire & Rubber Co. v. U.S. Customs Serv.*, 663 F.2d 210, 219 (D.C. Cir. 1980).   But because the Guilds have not shown disclosure of *any* withheld information, we need not worry about the implications of "limited" disclosure.

5

As to the Chinese application for import restrictions, the Guilds again point to a supposed prior disclosure, in this case State's publication of a summary of the application on its website.  But publishing a relatively brief (in this instance, 11-page) summary of a much longer (160-page) report does not, in itself, make classification of material in the longer report inappropriate.   Declaration of Margaret P. Grafeld (the "Grafeld Declaration") at 57, J.A. 90; Public Summary Request of the People's Republic of China to the Government of the United States of America under Article 9 of the 1970 UNESCO Convention, J.A. 317-27.  Plaintiffs' proposed rule, treating publication of a summary as a waiver of the confidentiality of an entire document, would give government agencies a quite perverse incentive.  And as a simple factual matter, publication of part of a document does not put the rest into the public domain.  See *Public Citizen II*, 276 F.3d at 645; *Public Citizen I*, 11 F.3d at 201-02.  We have no reason to doubt State's contention that the full application contains information on looting that is properly classified.  Grafeld Declaration at 57-58, J.A. 90-91.  See *Public Citizen II*, 276 F.3d at 645; *Public Citizen I*, 11 F.3d at 201-02.  We affirm the district court's ruling with respect to Exemption 1.

\* \* \*

Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."   5 U.S.C. § 552(b)(3).  See generally *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985).  State withheld documents under two sections of the CPIA that it believed Exemption 3 encompassed—19 U.S.C. §§ 2605(h), 2506(i)(1).  The Guilds argue that § 2605(h) does

6

not meet Exemption 3's requirements,  and that in any event neither of the two sections employed by State justifies the specific withholding done here.

Section 2605(h) states that FACA's provisions should generally apply to the CPAC.  But it also provides that the requirements of FACA's §§ 10(a), 10(b), and 11 shall not apply "whenever and to the extent it is determined by the President or his designee that the disclosure of matters involved in the Committee's proceedings would compromise the Government's negotiating objectives or bargaining positions on the negotiations of any agreement authorized by this chapter." 19 U.S.C. § 2605(h).  Sections 10(a), 10(b), and 11 require that committee meetings be open and that committee records, reports, transcripts and other materials be made available to the public.   5 U.S.C. App. 2, §§ 10, 11. Because it authorizes the President or his designee to close CPAC meetings otherwise required to be open, exempts materials "involved in" such proceedings from the open-meetings provisions of FACA, and provides "particular criteria" for deciding on such closures (or at least as "particular" as one can expect criteria to be in the realm of foreign affairs), § 2605(h) qualifies as an Exemption 3 withholding statute.

The Guilds argue that even if § 2605(h) is a withholding statute under Exemption 3, the resulting non-disclosure should be understood to apply only until negotiations on the agreement at issue have ended.  But the language of § 2605(h) invites no such temporal slicing.  Nor does its sense support such a limit.   While it may be especially obvious that disclosure in advance of agreement may stifle the negotiating process, the threat of imminent disclosure—ripening just at the moment of agreement—would surely inhibit the candor that § 2506(h) is meant to foster.  Given that probability, it would make no sense to condition post-agreement

7

withholding on a new determination by the relevant designee (in this case the Assistant Secretary of the Bureau of Educational and Cultural Affairs) that the material should remain unavailable.

The Guilds also fail in their contention that State's specific withholdings did not meet § 2605(h)'s criteria. They suggest that because State has not supplied for the record the determination by the President or his designee required by § 2605(h) that "the disclosure of matters involved in the Committee's proceedings would compromise the Government's negotiating objectives or bargaining positions," State may not invoke that section. On their theory, the Grafeld Declaration was insufficient because Grafeld is simply the Information and Privacy Coordinator and the Director of the State Department's Office of Information Programs and Services, and thus in their view not the proper official to make such a determination. This argument misunderstands the standard. The decision to close a CPAC meeting itself required a determination by the President or his designee under § 2605(h). The Grafeld Declaration is not itself a determination that the criteria of § 2605(h) were met—it merely notes that the proper official made such a determination.

Finally, the Guilds claim that State failed to establish that the withheld documents met the criteria for withholding under § 2605(i)(1). That section prohibits disclosure (subject to certain exemptions not at issue here) of any information "submitted in confidence by the private sector to officers or employees of the United States or to the Committee in connection with the responsibilities of the Committee." 19 U.S.C. § 2605(i)(1). The parties agree that (i)(1) is a withholding statute for the purposes of Exemption 3. They also assume, as will we, that the proper standard for confidentiality is the same as that for FOIA Exemption 7(D),

8

as established in *U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993).  See Oral Arg. Recording at 19:29-25:01.  Under *Landano*, the government is not entitled to a blanket presumption that investigatory sources speak under a commitment to confidentiality.  *Landano*, 508 U.S. at 178.  A variety of evidence might be presented to meet the government's burden: "notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998).  But a declaration simply asserting that a source received express assurances of confidentiality "without providing any basis for the declarant's knowledge of this alleged fact" does not do so.  *Id*. at 34-35.

It appears from the Grafeld Declaration that the government relies solely on § 2605(i)(1) with respect to only one specific withholding.  Grafeld Declaration at 60, J.A. 93.  This withholding involves various redactions from six separate emails exchanged between the late Danielle Parks, a professor of archeology who did field work in Cyprus, and Andrew Cohen, an employee of the Bureau of Education and Cultural Affairs.  To justify their withholding, Ms. Grafeld said, "These emails contain some information that was provided in confidence by Danielle Parks, an individual in the private sector, to a staff member of ECA's Cultural Heritage Center in connection with the then-upcoming Committee meetings regarding potential extension of the bilateral cultural property agreement" with the government of Cyprus.  Grafeld Declaration at 60, J.A. 93.  The declaration gives no further indication of how the declarant knows that Parks provided information in confidence.  It appears, therefore, to be only a "bald assertion that express assurances were given," which we have previously found insufficient to justify withholding.

9

*Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000). We note that there are hints of confidentiality on the face of the non-redacted portions of the emails (though it's not immediately clear whether the hints support an inference that Parks as well as Cohen expected their exchange to remain confidential). As in *Billington*, where the record provides potential support for the district court's finding of confidentiality but the parties have not explicitly addressed that potential, we reverse and remand to the district court for a focus on those hints.[1] *Id.* at 685-86. On remand, State may provide additional reasons for its belief that Parks provided information in confidence. But its explanation in the record before us is inadequate.

\* \* \*

Exemption 5 exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It protects "materials that are both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing *Wolfe v. Dep't. of Health & Human Services*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*)). The Guilds challenge the withholding of parts of CPAC reports under Exemption 5. They argue first that it is inapplicable to CPAC recommendations contained in the reports because CPAC reports are presumptively public under CPIA. They note that 19 U.S.C. § 2605(h) makes CPAC subject to the provisions of FACA except where, as discussed above, the President or his designee finds that the

---

[1] If we are mistaken in believing the Grafeld Declaration to say that the Parks emails are the only items withheld solely under § 2506(i)(1), of course this remand would encompass such additional items.

10

open meetings or open records provisions of FACA would compromise the government's negotiating objectives or bargaining position.

But § 10(b) of FACA states that "[*s*]*ubject to § 552 of title 5,* United States Code [FOIA], the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location . . . ."  5 U.S.C. App. 2, § 10(b) (emphasis added). Rather than preempting the FOIA exemptions, the relevant portion of FACA explicitly incorporates FOIA into the standard for public disclosure of committee reports, presumably with its exemptions intact.

The fact that CPAC reports must be provided to Congress under 19 U.S.C. § 2605(f)(6) does not (contrary to the Guilds' suggestion) imply a waiver of later invocation of such exemptions.  Rather, the statute explicitly makes disclosure to Congress an exception to the rule that information "submitted in confidence by the private sector . . . shall not be disclosed to any person . . . ."  19 U.S.C. § 2605(i)(1)(B).  Therefore, CPAC reports are properly withheld under Exemption 5 insofar as they are "inter-agency or intra-agency memorandums or letters" that are deliberative and pre-decisional.  5 U.S.C. § 552(b)(5).

An issue unraised by plaintiffs, whether CPAC is an agency for the purposes of Exemption 5, might complicate the exemption's application.  As plaintiffs appear to share State's assumption that the documents involved here qualify as inter-agency or intra-agency memoranda under Exemption 5 (and would therefore be exempt if they are pre-decisional and deliberative), we will assume without deciding that they are such memoranda.

11

*Pace* the Guilds, the recommendations are deliberative since they "make[] recommendations or express[] opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). Advisory committees such as CPAC have no authority to set final agency policy. See 5 U.S.C. App. 2, § 9(b). The President has delegated to the State Department authority to enter into agreements on import restrictions under 19 U.S.C. § 2602(a)(2). Exec. Order No. 12,555 § 2, 3 C.F.R. 212 (1986). And CPAC recommendations are pre-decisional because they were created "[a]ntecedent to the adoption of an agency policy." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*).

The Guilds' claim that State improperly withheld factual summaries contained in CPAC reports is also without merit. Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an "exercise of discretion and judgment calls." *Mapother*, 3 F.3d at 1539. Thus the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process. *Montrose Chemical Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974). For example, in *Mapother* we upheld non-disclosure under Exemption 5 of "factual material . . . assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Mapother*, 3 F.3d at 1539.

The material sought by the Guilds falls squarely within the category of factual material protected under *Mapother* and *Montrose*. The factual summaries contained in the CPAC reports "were culled by the Committee from the much larger universe of facts presented to it" and reflect an "exercise of

12

judgment as to what issues are most relevant to the pre-decisional findings and recommendations." Grafeld Declaration at 55, J.A. 88. For example, they include lists of events selected to show whether a given type of item has been pillaged. Grafeld Declaration at 42, J.A. 75. The factual summaries therefore reflect CPAC's pre-decisional deliberative process and are exempt under Exemption 5.


* * *


The Guilds also challenge the adequacy of State's search for records in response to their FOIA requests. They question why State found only a few emails from Maria Kouroupas, the Executive Director of CPAC. And they argue that State did not sufficiently explain its search methodology or why it failed to search email archives for responsive documents.

An agency is required to perform more than a perfunctory search in response to a FOIA request. It fulfills its obligations under FOIA "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). At summary judgment, a court "may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 326 (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Our cases don't support the Guilds' first contention—that State's search was inadequate because it turned up only a few emails from CPAC's Executive Director—even if the slim yield may be intuitively unlikely. See J.A. 285-88. "[I]t is

13

long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate.    Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted).  That State's search turned up only a few emails from Ms. Kouroupas is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected.

The Guilds' second argument, that State failed to show the adequacy of its search, because it didn't address its employees' archived emails and backup tapes, has more merit. The Grafeld Declaration indicates that staff members of the Bureau of Educational and Cultural Affairs "searched their emails as well as the archived emails of a former staff member involved in some of the issues and of the shared email account."  Grafeld Declaration at 17, J.A. 50.  Nowhere does State explain whether it possesses email archives for Bureau employees other than the former staff member, whether there are backup tapes containing staff member emails and, if so, whether such backup tapes might contain emails no longer preserved on staff members' computers.

It may well be that searching additional emails archives and backup tapes would be impossible, impractical, or futile. See *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1243-44 (10th Cir. 2009) (noting that the data on the backup tapes in question were "not organized for retrieval of individual documents or files, but rather for purposes of disaster recovery").  We also note that Ms. Grafeld states, after a 12-page review of what State had searched, "There are no other places that if searched would have a reasonable likelihood of containing additional responsive material."     Grafeld Declaration at 26, J.A. 59.  Moreover, though the section of

14

the "Records Schedule" published on State's website relating
to the Bureau of Educational and Cultural Affairs refers at
several locations to "backups," none of these references
relates to the files of the Bureau's Assistant Secretary or of
CPAC.  U.S. Department of State Records Schedule Chapter
36:  Bureau  of  Educational  and  Cultural  Affairs,
http://www.state.gov/documents/organization/136723.pdf.
But given that the Guilds raised the issue of backup tapes
before the district court, we think this a gap that State needed
to fill in order to carry its burden as to the adequacy of its
search.  Specifically, under the circumstances it is reasonable
to expect State to inform the court and plaintiffs whether
backup tapes of any potential relevance exist; if so whether
their responsive material is reasonably likely to add to that
already delivered; and, if these questions are answered
affirmatively, whether there is any practical obstacle to
searching them.

We therefore reverse the district court's summary
judgment in favor of State on the adequacy of its search and
remand for further clarification about backups and about the
seeming gaps in State's discussion of archived materials.

* * *

The judgment of the district court granting summary
judgment to State is therefore reversed as to the sufficiency of
State's search for responsive emails (to the extent noted
above) and as to its withholding of parts of a document under
19 U.S.C. § 2605(i)(1), affirmed as to all other claims, and
remanded for proceedings not inconsistent with this opinion.

*So ordered.*