UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| ANCIENT COIN COLLECTORS GUILD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2074 (RJL) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RENEWED MOTION FOR SUMMARY JUDGMENT

Plaintiffs bring this action against Defendant United States Department of State ("State'),
pursuant to the Freedom of Information Act ("FOIA").  Defendant hereby moves pursuant to
Federal Rule of Civil Procedure ("Rule") 56 for summary judgment in its favor as to the two
remaining issues before the Court on remand, namely: (i) the sufficiency of State's explanation
for not conducting additional searches of email archives for responsive documents, and (ii) the
sufficiency of State's explanation for its invocation of 19 U.S.C. § 2605(i)(1) to withhold
portions of six-emails.  *See Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504,
512, 514-15 (D.C. Cir. April 15, 2011).  Because there is no genuine issue of material fact that
would prevent a judgment as a matter of law in Defendant's favor, State respectfully requests
that the Court enter summary judgment in its favor on these two remaining issues and dispense
with this action.

In support of this Motion, Defendant respectfully refers the Court to the accompanying
Memorandum of Points and Authorities, Statement of Undisputed Facts, and attached exhibits.

Dated: October 14, 2011
          Washington, DC

                                    Respectfully submitted,

                                    RONALD C. MACHEN JR., D.C. Bar #447889
                                    United States Attorney

                                    RUDOLPH CONTRERAS, D.C. Bar #434122
                                    Chief, Civil Division


                                    By: _____/s/_____
                                          BRIAN P. HUDAK
                                          Assistant United States Attorney
                                          555 4th Street, NW
                                          Washington, DC 20530
                                          (202) 514-7143

                                    *Attorneys for the U.S. Department of State*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANCIENT COIN COLLECTORS GUILD, *et al.*,    ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.    ) | Civil Action No. 07-2074 (RJL) |
| ) | |
| UNITED STATES DEPARTMENT OF STATE,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant United States Department of State ("State Department," "State," "Department," or "Defendant"), by and through its undersigned counsel, respectfully submits this memorandum of points and authorities in support of its renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(b).  In light of the record before the Court, as supplemented on remand, the Freedom of Information Act ("FOIA") claims brought by the Ancient Coin Collectors Guild ("ACCG"), the International Association of Professional Numismatists, and the Professional Numismatists Guild, Inc. (collectively, the "Guilds") are without merit.

**PRELIMINARY STATEMENT**

Before the Court on remand from the D.C. Circuit are two narrow remaining issues, namely: (i) the adequacy of State's explanation for its invocation of 19 U.S.C. § 2605(i)(1) to withhold portions of six-emails under FOIA Exemption 3(B); and (ii) the sufficiency of State's rationale for not conducting additional searches of email archives and disaster recovery systems for responsive documents. *See ACCG v. U.S. Dep't of State*, 641 F.3d 504, 512, 514-15 (D.C.

Cir. 2011).   Based on the Third Declaration of Margaret P. Grafeld ("Third Grafeld Declaration") and the entire record now before the Court, State's justifications for its withholdings and search efforts are adequately explained and appropriate under FOIA.

*First*, State appropriately withheld portions of six emails under FOIA Exemption 3(B), 5 U.S.C § 552(b)(3)(B), pursuant to Section 2605(i)(1) of the Convention on Cultural Property Implementation Act ("CPIA"), 19 U.S.C. § 2605(i)(1).   Section 2605(i)(1) prohibits the disclosure of any information "submitted in confidence by the private sector to officers or employees of the United States or to [CPAC (defined below)] in connection with the responsibilities of the [CPAC]."   19 U.S.C. § 2605(i)(1).   As the record now makes clear, Dr. Danielle Parks (a private individual) communicated with Dr. Andrew Cohen (a Senior Analyst in State's Cultural Heritage Center ("CHC"), a component within State's Bureau of Educational and Cultural Affairs ("ECA")) in confidence.   Indeed, the text of the withheld communications themselves, coupled with Dr. Cohen's own recollections and the circumstances surrounding Dr. Parks's communications, fulfill the requirements for confidential treatment described in *U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993), and its progeny.

*Second*, State has now described in detail its reasons for not undertaking the futile and impracticable burden of searching additional archival and disaster recovery systems for information potentially responsive to the Guilds' FOIA requests.   As described in the Third Grafeld Declaration, there exist no additional archival or disaster recovery systems that would likely contain information responsive to the Guilds' FOIA requests.   Further, State searched the working email archives of those persons likely to have responsive information, located responsive materials, and had no other reason to believe that other systems would contain additional non-duplicative, responsive information.   Lastly, because its disaster recovery systems

are not reasonably accessible without undue burden or cost, FOIA imposes no obligation on State to search its disaster recovery back-ups.  As other courts have recognized, information on disaster recovery systems that is not routinely accessed by government officials does not "contribute significantly to public understanding," and thus, need not be part of an agency's FOIA response absent exceptional circumstances where no specific request to search back-ups was made in the FOIA request.

## PROCEDURAL HISTORY

On November 15, 2007, the Guilds filed their Complaint in this action asserting claims based upon a series of FOIA requests.  *See* Docket Entry No. 1 ("R.1") (Compl.).  Thereafter, as a result of documents released by State, the Guilds' claims were narrowed to seven of their FOIA requests.  *See* R.16-4 (Letter Hodes to State of 05/22/2008).  Generally, the Guilds' seven FOIA requests sought documents from State regarding import restrictions imposed on cultural artifacts originating in China, Italy, and Cyprus.  *See generally* R.1 (Compl.).

Importantly, none of the Guilds' seven FOIA requests at issue in this action expressly sought the production of information from archival or disaster recovery back-up systems.  *See* R.16-2 at 2-3 (Count I FOIA request); R.16-2 at 14 (Count II FOIA request); R.16-2 at 33-36 (Count III FOIA request); R.16-2 at 51-52 (Count VI FOIA request); R.16-2 at 58-59 (Count VII FOIA request); R.16-2 at 70 (Count VIII FOIA request); R.16-2 at 76-77 (Count IX FOIA request).  Indeed, it appears that the first time the Guilds even hinted that State should account for searches of disaster recovery systems was in a single passing clause of a single sentence in their initial cross-motion for summary judgment filed on April 24, 2009.  *See* R.19 (Guild's Cross-Motion) at 6.  Also notably, the Guilds' seven FOIA requests either sought certain specific documents (*see, e.g.,* R.16-2 at 2-3 (Count I FOIA request, seeking four specific reports); R.16-2

at 14 (Count II FOIA request, seeking a specific Chinese request)) or sought documents created more than a year before the Guilds filed their initial cross-motion for summary judgment. *See* R.16-2 at 33-36 (Count III FOIA request, seeking documents from Mar. 27, 2004, to Dec. 28, 2004); R.16-2 at 58-59 (Count VII FOIA request, seeking documents from Jan. 25, 2007, to July 31, 2007); R.16-2 at 76-77 (Count IX FOIA request, seeking documents from Dec. 1, 2006, to Oct. 1, 2007).

After the parties briefed cross-motions for summary judgment, the Court issued a Memorandum Opinion and Order, both entered November 23, 2009, granting State summary judgment on all of the Guilds' claims. *See* R.27-28 (Memo. Op. and Order). The Guilds noticed a timely appeal of the Court's summary judgment decision to the D.C. Circuit. After briefing and argument, the D.C. Circuit affirmed the Court's grant of summary judgment in large part, but remanded two issues for the Court's consideration.

Specifically, the D.C. Circuit remanded the issues of: (i) whether State's explanations for its Exemption 3(B) withholdings under CPIA Section 2605(i)(1) are sufficient under *Landano*, 508 U.S. 165 (1993), and its progeny (*see ACCG*, 641 F.3d at 512); and (ii) whether State's justifications for not searching additional archival and back-up tape systems are adequate under controlling law. *Id.* at 514-15. As to the former, the D.C. Circuit asked this Court to examine the "hints of confidentiality" on the face of the emails withheld under Section 2605(i)(1) and any additional information from State "for its belief that [Dr. Parks] provided information in confidence," and determine whether State's withholdings were proper. *Id.* at 512. As to the latter, the D.C. Circuit requested the Court to address "whether backup tapes of any potential relevance exist; if so whether their responsive material is reasonably likely to add to that already

delivered; and, if these questions are answered affirmatively, whether there is any practical obstacle to searching them." *Id.* at 514-15.

## ARGUMENT

Based on the record now supplemented by the Third Grafeld Declaration, and in light of the applicable legal standard, State respectfully urges the Court to grant it summary judgment on the two remaining issues in this case.

## I.   APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT IN A FOIA CASE.

This Court reviews State's FOIA response to determine whether there is any genuine issue of material fact that would preclude judgment as a matter of law in State's favor.  Fed. R. Civ. P. 56(c)(2).   Regarding State's search efforts, "[t]o prevail on summary judgment, the 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851-52 (D.C. Cir. 2010) (affirming summary judgment on FOIA claims) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (same)).  Indeed, "[t]he adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'"  *Weisberg*, 705 F.2d at 1351 (internal citations omitted).

At the summary judgment stage, "[t]o meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search, which, in the absence of contrary evidence, are sufficient to demonstrate an agency's compliance with FOIA."  *Adionser v. Dep't of Justice*, --- F. Supp. 2d ---, 2011 WL 4346399, *2 (D.D.C. Sept. 15, 2011) (Leon, J.) (granting summary judgment in agency's favor on plaintiff's FOIA claims).  An agency's affidavits describing its FOIA searches are afforded "substantial weight" (*see, e.g., Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986)) and "a presumption of good

faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Adionser*, 2011 WL 4346399, at *2 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Regarding State's withholdings, "[a]n agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit[.]" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (affirming summary judgment on FOIA claims) (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)). Further, FOIA exemptions "are to be given 'meaningful reach and application.'" *Wis. Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275, 279 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

Applying these standards, the Court should grant State summary judgment on the two remaining issues in this action.

## II.   STATE'S EXEMPTION 3(B) WITHHOLDINGS UNDER CPIA SECTION 2605(i)(1) ARE ADEQUATELY EXPLAINED AND APPROPRIATE AS A MATTER OF LAW.

Again, Section 2605(i)(1) prohibits the disclosure of any information "submitted in confidence by the private sector to officers or employees of the United States or to [CPAC (defined below)] in connection with the responsibilities of the [CPAC]." 19 U.S.C. § 2605(i)(1).

As the D.C. Circuit noted, "[t]he parties agree that [Section 2605(i)(1)] is a withholding statute for the purposes of Exemption 3" and that "the proper standard for confidentiality is the same as that for FOIA Exemption 7(D)." *ACCG*, 641 F.3d at 511. Consequently, the only remaining issue before the Court on remand is whether State has adequately established that the information it withheld from release was provided by Dr. Parks confidentially. State now has supplemented the record with the Third Grafeld Declaration and has clearly satisfied its burden of establishing that the information provided by Dr. Parks in communications with Dr. Cohen, were provided under an express understanding of confidentiality.

      **A.**    **The Supplemented Record Establishes the Confidential Nature of Dr. Parks's Communications.**

The six emails in question were exchanged by Drs. Parks and Cohen in January and February 2007 around the time of the January 2007 closed, non-public meeting of the Cultural Property Advisory Committee ("CPAC").[1] *See* 3d Grafeld Decl. at ¶ 9. The email messages clearly show that Dr. Cohen initiated contact with Dr. Parks for reasons directly related to the then-upcoming closed CPAC meeting of January 25-26, 2007, regarding the potential extension of the bilateral cultural property agreement with the Government of Cyprus. *See* 3d Grafeld Decl. at Ex. A (redacted, as released, emails); R.1 (Compl.) at ¶ 49 (describing date of meeting).

As set forth in the Third Grafeld Declaration, Dr. Cohen recalls that he initiated his dialog with Dr. Parks through a phone call on or about January 18, 2007. *See* 3d Grafeld Decl. at ¶ 7. At the beginning of that phone call, Dr. Cohen recalls saying to Dr. Parks in substance that her name and the information she was providing would be made available to CPAC and others unless she requested confidentiality. *See id.* In response, Dr. Parks requested confidentiality and

---

[1]    CPAC is a panel of experts charged with advising the President and his designees on the application of the CPIA, 19 U.S.C. § 2601, *et seq. See generally* R.1 (Compl.) at ¶ 8.

the six emails that remain at issue in this case, which from their face are informal and candid, were exchanged under that expectation of confidentiality.  *See id.*

Dr. Cohen's recollection is reinforced by the content of the emails themselves.  As the D.C. Circuit noted, the emails contain "hints of confidentiality on their face."  *ACCG*, 641 F.3d at 512.  For example, in a January 30, 2007, email Dr. Cohen asked Dr. Parks to "[p]lease be discreet about our conversation, if you don't mind."  3d Grafeld Decl. at Ex. A, p.8.  Likewise, Dr. Parks's response on January 31, 2007, indicated that she, too, thought these communications were being conducted in confidence, noting, "of course, not a problem."  *Id.*  Dr. Parks' additional comments in her January 31, 2007, message further bolster this understanding where she noted that in response to requests for information, she did not provide "any detail" to others about her communications with Dr. Cohen.  *Id.*

## B.   The Supplemented Record Fulfills the *Landano* Standard for Withholding Information Provided By Private Persons Under an Express Understanding of Confidentiality.

Based on this supplemented record, it is clear that the *Landano* standard has been met and that State's withholdings under Section 2605(i)(1) are appropriate.  Under *Landano* and its progeny, withholdings of confidential information provided by private persons is appropriate when "the agency receiving information provides either an express or implied assurance of confidentiality" to the person.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (addressing Exemption 7(D) withholdings, citing *Landano*).  Further, "[a] statement can be made 'in confidence' even if the speaker knows the communication will be shared with limited others, as long as the speaker expects that the information will not be published indiscriminately."  *Landano*, 508 U.S. at 173.

Evidence sufficient to meet this standard "can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with

the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.*   Once an agency establishes that the information was provided in confidence "the requester -- who has no knowledge about the particular source or the information being withheld -- very rarely will be in a position to offer persuasive evidence that the source in fact had no interest in confidentiality." *Id.* (quoting *Landano*, 508 U.S. at 177).

Here, the record as supplemented by State contains nearly all of the categories of evidence that the D.C. Circuit in *Campbell* identified as sufficient to fulfill the *Landano* showing.   *First*, as the D.C. Circuit itself recognized and as further explained in the Third Grafeld Declaration, the released documents on their face contain "hints of confidentiality." *ACCG*, 641 F.3d at 512; *see also* 3d Grafeld Decl. at ¶ 8.   *Second*, Dr. Cohen, the ECA official with whom Dr. Parks communicated, confirmed that Dr. Parks understood that her communications would be confidential.   *See* 3d Grafeld Decl. at ¶ 7.   *Third, and lastly*, the information provided by Dr. Parks was intended to be, and was in fact, used in a CPAC meeting closed to the public -- *i.e.*, the circumstances in which she conveyed her information give further credence to its non-public nature.   *See* 3d Grafeld Decl. at ¶ 9.   This evidence is sufficient to fulfill the *Landano* standard, and thus, State's withholdings under Section 2605(i)(1) are plainly appropriate.   *Adionser*, 2011 WL 4346399, at *8 (finding that informant codes on documents sufficient to establish confidentiality); *Hodge v. FBI*, 764 F. Supp. 2d 134, 147 (D.D.C. 2011) (Leon, J.) (finding official's recollection and notations on documents sufficient to establish confidentiality).

III.   **STATE'S DECISION TO FORGO THE FUTILE AND IMPRACTICABLE EXERCISE OF SEARCHING ADDITIONAL ARCHIVES AND DISASTER RECOVERY SYSTEMS WAS REASONABLE.**

State's decision not to search other archival and disaster recovery back-up systems was reasonable in light of State's search efforts, the results of those search efforts, the nature of such other systems, and the significant burdens associated with searching those systems.

   A.   **State Has Now Adequately Explained Its Reasons for Not Searching Other Archival and Disaster Recovery Systems for Information.**

As noted above, the D.C. Circuit remanded this action, in part, for "State to inform the court and the plaintiffs whether backup tapes of any potential relevance exist; if so whether their responsive material is reasonably likely to add to that already delivered; and, if these questions are answered affirmatively, whether there is any practical obstacle to searching them." *ACCG*, 641 F.3d at 514-15.  Through the Third Grafeld Declaration, State has now done this.

*First*, State has further described its prior search efforts for responsive electronic communications.  Specifically, the Third Grafeld Declaration states that State searched the email accounts of CPAC's Executive Director (Maria Kouroupas), a Senior Analyst from CHC (Dr. Cohen), and the shared email account of CHC, the relevant ECA component.  *See* 3d Grafeld Decl. at ¶¶ 11-15.  Further, State has now explained that it searched working email archives -- specifically, the PST files of the Executive Director, Senior Analyst, and a former staffer who assisted them in the matters relevant to Plaintiffs' FOIA requests.  *See* 3d Grafeld Decl. at ¶¶ 12-13, 15.  State has also further described in detail the methods it employed in searching these email accounts and working email archives.  *See* 3d Grafeld Decl. at ¶¶ 16-17.

*Second*, State has explained that no additional archives or back-ups exist that could possibly have information responsive to Plaintiff's FOIA requests.  That is, State has explained that aside from the working email archives contained in users' PST files, State did not employ

any other electronic archiving tools during the relevant period of time.  *See* 3d Grafeld Decl. at ¶¶ 20-22.  Instead, the Third Grafeld Declaration describes that a "print and file" policy was the method employed during the relevant period of time for archiving emails outside of PST files.[2] *See id*.

Further, State has explained the scope and nature of its relevant disaster recovery back-up systems.  Specifically, the Third Grafeld Declaration establishes that State's current back-up system -- which periodically takes a virtual snapshot of active email accounts and working email archives -- only contains information captured in the last six-months.  *See* 3d Grafeld Decl. at ¶¶ 23-25.  That is, for a host of reasons (*e.g.*, resource allocation, data security), State currently recycles its disaster recovery back-ups six-months after each is created.  *See* 3d Grafeld Decl. at ¶ 25.  Consequently, as Plaintiffs' FOIA requests sought information from periods occurring more than six months ago, State has explained that no disaster recovery back-ups would contain information beyond that stored and already searched in active email accounts and working email PST archives.  *See* 3d Grafeld Decl. at ¶ 23-25.

*Third*, State has set forth other reasons why it did not undertake to search other archives and disaster recovery systems.  That is, in addition to its understanding that no relevant archives or disaster recovery back-ups could exist, based upon the searches undertaken by State and the lack of any indication that its searches were incomplete or inadequate State had no reason to believe any resources would contain non-duplicative, responsive information.  *See* 3d Grafeld Decl. at ¶¶ 18-19.  Indeed, State (i) searched the email accounts and working email PST archives likely to contain responsive information, (ii) located information as a result of its searches, and

---

[2]     As noted in Ms. Grafeld's prior declarations, State conducted an exhaustive search of hard copy records, and State's searches of hard copy records are no longer at issue in this action.  *See* R.16-1 (1st Grafeld Decl.) at 14-26; *see generally ACCG*, 641 F.3d at 512, 514-15 (describing issues on remand).

(iii) did not observe any discernable "holes" or other reasons to believe that information had recently been deleted or that the results of its searches were incomplete.  *See* 3d Grafeld Decl. at ¶¶ 11-19.  Additionally, when State compared its electronic search results to documents located from its searches of hard-copy resources, it did not identify any reason to believe that there existed other non-duplicative, responsive records.  *See* 3d Grafeld Decl. at ¶ 18.

*Fourth, and lastly*, State has also now explained the significant burden it would take to restore and devise a method of searching disaster recovery resources.  As the Third Grafeld Declaration explains, the State's backup systems are not designed to easily search for an individual employee's e-mails.  *See* 3d Grafeld Decl. at ¶ 26.  "Rather, as with most disaster recovery systems, they are designed to allow business continuity when a catastrophic event affects the ongoing functionality of the Department's active computer systems while maintaining appropriate levels of information security.  As such, accessing these backups is not akin to inserting a disk into a drive and conducting a simple search."  *Id.*

Clearly, through the Third Grafeld Declaration, State has now adequately explained its searches and its reasons for not searching additional archives and disaster recovery back-up systems.  *See, e.g., Hodge*, 764 F. Supp. 2d at 141 ("an agency need not search every records system as long as it conducts 'a reasonable search tailored to the nature of a particular request'").  The Guilds' speculation that other documents may exist somewhere on some yet-to-be-identified archive or back-up resources is insufficient to defeat summary judgment and prolong this action.  *Griffin v. EOUSA*, 774 F. Supp. 2d 322, 328 (D.D.C. 2011) (Leon, J.) (granting summary judgment in agency's favor on plaintiff's FOIA claim, noting "[p]laintiff's speculation that records may be found in locations not searched fails to create a genuine dispute about the reasonableness of the [the agency's] search").  Further, even if the Guilds' speculation had any

- 12 -

significance, it is plainly insufficient under FOIA to compel State to undertake futile and impracticable efforts to restore and search systems implemented for disaster recovery purposes and not designed to easily search for an individual employee's emails. *Cf. Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1244 (10th Cir. 2009) (finding FOIA fee waiver request was properly denied, noting that the data on the backup tapes in question were "not organized for retrieval of individual documents or files, but rather for purposes of disaster recovery" and finding that "[plaintiffs] have not demonstrated that the backup tapes might reveal additional or different information than that provided or promised by the [agency]. Thus, we cannot determine how such information would 'contribute significantly to public understanding[.]'").   For these reasons, State has now adequately explained its electronic search efforts, which are plainly sufficient under FOIA.   Consequently, the Court should enter summary judgment in State's favor on this issue.

*   *   *

**<u>CONCLUSION</u>**

For the foregoing reasons, summary judgment is appropriate on the two remaining issues

on remand in State's favor.  A proposed order is enclosed herewith.

Dated: October 14, 2011
          Washington, DC

                                               Respectfully submitted,

                                               RONALD C. MACHEN JR., D.C. Bar #447889
                                               United States Attorney

                                               RUDOLPH CONTRERAS, D.C. Bar #434122
                                               Chief, Civil Division


                                             By: _____/s/_____
                                               BRIAN P. HUDAK
                                             Assistant United States Attorney
                                             555 4th Street, NW
                                             Washington, DC 20530
                                             (202) 514-7143

                                             *Attorneys for the U.S. Department of State*