UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANCIENT COIN COLLECTORS GUILD, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF STATE, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 07-2074 (RJL) |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Defendant United States Department of State ("State Department," "State," "Department," or "Defendant"), by and through its undersigned counsel, respectfully submits this statement of material facts as to which there exist no genuine issue:

1. Before the Court on remand from the D.C. Circuit are two issues, namely: (i) the adequacy of State's explanation for its invocation of 19 U.S.C. § 2605(i)(1) to withhold portions of six-emails under FOIA Exemption 3(B); and (ii) the sufficiency of State's rationale for not conducting additional searches of email archives and disaster recovery systems for responsive documents. *See ACCG v. U.S. Dep't of State*, 641 F.3d 504, 512, 514-15 (D.C. Cir. 2011).

2. The Guilds'[1] claims were narrowed to seven of their FOIA requests. *See* R.16-4 (Letter Hodes to State of 05/22/2008).

---

[1] Unless otherwise noted, defined terms used herein are intended to have the same meaning as those used in Memorandum of Points and Authorities in Support of its Renewed Motion for Summary Judgment ("Opening Brief").

3. Generally, the Guilds' seven FOIA requests sought documents from State regarding import restrictions imposed on cultural artifacts originating in China, Italy, and Cyprus. *See generally* R.1 (Compl.).

4. None of the Guilds' seven FOIA requests remaining at issue in this action expressly sought the production of information from archival or disaster recovery back-up systems. *See* R.16-2 at 2-3 (Count I FOIA request); R.16-2 at 14 (Count II FOIA request); R.16-2 at 33-36 (Count III FOIA request); R.16-2 at 51-52 (Count VI FOIA request); R.16-2 at 58-59 (Count VII FOIA request); R.16-2 at 70 (Count VIII FOIA request); R.16-2 at 76-77 (Count IX FOIA request).

5. The first time the Guilds contended that State should account for searches of disaster recovery systems was in their initial cross-motion for summary judgment filed on April 24, 2009. *See* R.19 (Guild's Cross-Motion) at 6.

6. The Guilds' seven FOIA requests either sought certain specific documents (*see, e.g.,* R.16-2 at 2-3 (Count I FOIA request, seeking four specific reports); R.16-2 at 14 (Count II FOIA request, seeking a specific Chinese request)) or sought documents created more than a year before the Guilds filed their initial cross-motion for summary judgment. *See* R.16-2 at 33-36 (Count III FOIA request, seeking documents from Mar. 27, 2004, to Dec. 28, 2004); R.16-2 at 58-59 (Count VII FOIA request, seeking documents from Jan. 25, 2007, to July 31, 2007); R.16-2 at 76-77 (Count IX FOIA request, seeking documents from Dec. 1, 2006, to Oct. 1, 2007).

7. The six emails withheld by State pursuant to Exemption 3(B) and under CPIA Section 2605(i)(1) were exchanged by Drs. Parks and Cohen in January and February 2007 around the time of the January 2007 closed, non-public meeting of CPAC. *See* 3d Grafeld Decl. at ¶ 9, Ex. A.

8. Dr. Cohen initiated contact with Dr. Parks for reasons related to the then-upcoming closed CPAC meeting of January 25-26, 2007, regarding the potential extension of the bilateral cultural property agreement with the Government of Cyprus. *See* 3d Grafeld Decl. at Ex. A (redacted, as released, emails); R.1 (Compl.) at ¶ 49 (describing date of meeting).

9. Dr. Cohen recalls that he initiated his dialog with Dr. Parks through a phone call on or about January 18, 2007. *See* 3d Grafeld Decl. at ¶ 7.

10. At the beginning of that phone call, Dr. Cohen recalls saying to Dr. Parks in substance that her name and the information she was providing would be made available to CPAC and others unless she requested confidentiality. *See id.*

11. In response to Dr. Cohen's statement, Dr. Parks requested confidentiality. *See id.*

12. In response to the Guild's FOIA requests, State searched the email accounts of CPAC's Executive Director (Maria Kouroupas), a Senior Analyst from CHC, and the shared email account of CHC, the relevant ECA component. *See* 3d Grafeld Decl. at ¶¶ 11-15.

13. State also searched working email archives -- specifically, the PST files of the Executive Director, Senior Analyst, and a former staffer who assisted them in the matters relevant to Plaintiffs FOIA requests. *See* 3d Grafeld Decl. at ¶¶ 12-13, 15.

14. Aside from the working email archives contained in users' PST files, ECA did not employ any other electronic archiving tools during the relevant period of time. *See* 3d Grafeld Decl. at ¶¶ 20-22.

15. A "print and file" policy was the method employed by ECA during the relevant period of time for archiving emails outside of PST files. *See id.*

16. State's current disaster recovery back-up system -- which periodically takes a virtual snapshot of active email accounts and working email archives -- only contains information captured in the last six-months.  *See* 3d Grafeld Decl. at ¶¶ 23-25.

17. State currently recycles its disaster recovery back-ups six-months after each is created.  *See* 3d Grafeld Decl. at ¶ 25.

18. State's disaster recovery backup systems are not designed to easily search for an individual employee's e-mails.  *See* 3d Grafeld Decl. at ¶ 26.

19. "Rather, as with most disaster recovery systems, they are designed to allow business continuity when a catastrophic event affects the ongoing functionality of the Department's active computer systems while maintaining appropriate levels of information security.  As such, accessing these backups is not akin to inserting a disk into a drive and conducting a simple search."  *Id*.

\*   \*   \*

Dated: October 14, 2011
Washington, DC

    Respectfully submitted,

    RONALD C. MACHEN JR., D.C. Bar #447889
    United States Attorney

    RUDOLPH CONTRERAS, D.C. Bar #434122
    Chief, Civil Division

    By:    /s/
       BRIAN P. HUDAK
       Assistant United States Attorney
       555 4th Street, NW
       Washington, DC 20530
       (202) 514-7143

*Attorneys for the U.S. Department of State*