**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANCIENT COIN COLLECTORS GUILD, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Case No. 07-2074 (RJL)** |
| **v.** | ) | |
| **U.S. DEPARTMENT OF STATE,** | ) | |
| **Defendant.** | ) | |

FILED
JUN [illegible]
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(May 29, 2012) [Dkt. #33]

The plaintiffs, Ancient Coin Collectors Guild, International Association of Professional Numismatists, and Professional Numismatists Guild, Inc. (together, "plaintiffs"), filed suit against defendant, the U.S. Department of State (the "State Department" or "State"), in relation to Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests. This Court granted State's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #16], denied the plaintiffs' Cross-Motion for Summary Judgment [Dkt. #19], and plaintiffs appealed to our Court of Appeals. The Circuit Court reversed, in part, and remanded to this Court for further proceedings. This matter is now before the Court on defendant's Renewed Motion for Summary Judgment ("Def.'s Re. Mot.") [Dkt. #33]. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's motion is GRANTED.

## BACKGROUND

The plaintiffs made eight FOIA requests between July 30, 2004 and October 11, 2007, *see* Compl. [Dkt. #1] ¶¶ 22-58, seeking information from the Bureau of Educational and Cultural Affairs (the "Bureau")—a component of the State Department—related to import restrictions on ancient coins from Cyprus, Italy, and China, *id.* ¶¶ 8, 15. In response to these requests, State conducted multiple searches, *see* Declaration of Margaret P. Grafeld[1] ("Grafeld Decl.") [Dkt. #16-1], Ex. A1 to Def.'s Mot. for Summ. J. ("Def.'s Mot."), at 14-26, and, of the 128 responsive documents located, State released seventy documents in full, released thirty-nine documents in part, and withheld nineteen documents in their entirety, Supplemental Declaration of Margaret P. Grafeld ("Supp. Grafeld Decl.") [Dkt. #18-1], Attach. to Def.'s Errata, ¶ 2. Only one document, containing a series of e-mails, remains at issue in this case.[2] *See Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

On appeal, our Circuit Court remanded this action for the Court to address the sufficiency of State's partial withholding of this one document pursuant to FOIA Exemption 3(b) and the sufficiency of State's search for responsive e-mails. *See Ancient*

[1] On October 12, 2011, Margaret P. Grafeld became the Deputy Assistant Secretary for Global Information Services at the State Department. Third Declaration of Margaret P. Grafeld ("3d Grafeld Decl.") [Dkt. #33-1], Ex. to Def.'s Re. Mot., ¶ 1. She oversees the Department's Office of Information Programs and Services—the office responsible for processing FOIA requests. *Id.* At the time she made her first two declarations, Ms. Grafeld was the Information and Privacy Coordinator and the Director of the State Department's Office of Information Programs and Services. Grafeld Decl. at 1.

[2] The Circuit Court affirmed this Court's decision on the remainder of the Government's claimed exemptions. *See Ancient Coin*, 641 F.3d at 509.

*Coin*, 641 F.3d at 509. For the following reasons, the Court finds that State properly withheld parts of the document in question and conducted an adequate search for responsive e-mail records, and thus GRANTS State's Renewed Motion for Summary Judgment.

**STANDARD OF REVIEW**

"When assessing a motion for summary judgment under FOIA, the Court shall determine the matter *de novo*." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)). Summary judgment shall be granted when the movant demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA action, the Court may award summary judgment based solely on information provided in affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

## ANALYSIS

State argues that it appropriately withheld parts of a document under FOIA Exemption 3(b) because there was an expectation of confidentiality between the corresponding parties under 19 U.S.C. § 2605(i)(1). *See* Def.'s Re. Mot. at 6-9. State also argues that it conducted an adequate search for responsive documents; that there is no additional method of searching or information storage system that would likely lead to information relevant to plaintiffs' requests, *see id.* at 10-13; and that attempting to conduct further searches of the existing information storage systems would place a significant burden on its employees, *see id.* at 12-13. In response, plaintiffs allege that State improperly withheld information under Exemption 3(b) because there was no expectation of confidentiality between the corresponding parties, challenging the evidence cited by State as conclusory and inadmissible hearsay. *See* Pls.' Statement of P. & A. in Supp. of Opp'n to Def.'s Re. Mot. ("Pls.' Opp'n) [Dkt. #34-1] at 2-5. Further, plaintiffs allege that State's search for responsive documents was inadequate because State neglected to sufficiently address e-mail archives and backup tapes. *See id.* at 5-7. Unfortunately for the plaintiffs, I agree with the State Department's position.

### I. The State Department's Withholding Under Exemption 3(b)

Under Exemption 3(b), the State Department can withhold information "specifically exempted from disclosure by statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Pursuant to Exemption 3(b), State invoked

19 U.S.C. § 2605(i)(1) as grounds for withholding the document at issue.[3] Def.'s Re. Mot. at 2. The parties agree that 19 U.S.C. § 2605(i)(1) is a withholding statute for the purposes of FOIA Exemption 3(b) and that the proper standard for analyzing confidentiality is the same as that for FOIA Exemption 7(D). *See Ancient Coin*, 641 F.3d at 511; Def.'s Re. Mot. at 7; Pls.' Opp'n at 2.

Under Exemption 7(D)[4] case law, there is no "inherently implicit" guarantee of confidentiality when a source communicates with the government. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 174-75 (citation omitted). Instead, the court may consider a number of factors to determine whether a source's communication should be treated as confidential, "including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998). A declaration that simply asserts that the source "received express assurances of confidentiality without providing any basis for the declarant's knowledge of this alleged fact" is not enough for the government to prevail. *Id.* at 34-35.

---

[3] The Convention on Cultural Property Implementation Act, 19 U.S.C. §§ 2601, *et seq.*, establishes a "Cultural Property Advisory Committee" (the "advisory committee") that makes recommendations to agencies if issues with import restrictions arise. *Id.* §§ 2602(a), 2605(a), (f)(1)(C). "[I]nformation . . . submitted in confidence by the private sector to officers or employees of the United States or to the [advisory] Committee in connection with the responsibilities of the [advisory] Committee shall not be disclosed." 19 U.S.C. § 2605(i)(1). The statute lists specific exceptions that are not at issue here.

[4] Exemption 7(D) allows an agency to withhold "records or information . . . but only to the extent that the production of such . . . records or information . . . could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C § 552(b)(7)(D).

At issue here are redactions from a series of e-mails exchanged in January and February 2007 between a member of the private sector—the late Dr. Danielle Parks, an archeology professor—and a Bureau employee—Dr. Andrew Cohen.[5] *See Ancient Coin*, 641 F.3d at 512; Def.'s Re. Mot. at 7. This Court finds, based on the evidence provided by State, that there was a demonstrated expectation of confidentiality between the parties and that the redacted portions of the e-mails have been appropriately withheld under Exemption 3(b).

*First*, Dr. Parks specifically requested confidentiality.[6] 3d Grafeld Decl. ¶ 7. *Second*, the e-mails demonstrate an expectation of confidentiality between the parties.[7] In the e-mail from Dr. Cohen to Dr. Parks on January 30, 2007, Dr. Cohen requested that she "[p]lease be discreet about our conversation." Ex. A to 3d Grafeld Decl. at 8. In her response on January 31, 2007, Dr. Parks replied "of course, not a problem" and went on

---

[5] There are no redactions in the emails dated February 2007. *See* Ex. A to 3d Grafeld Decl. at 10.

[6] According to the 3d Grafeld Declaration, Dr. Cohen recalled that, during a January 18, 2007 phone call with Dr. Parks, he informed Dr. Parks that she may request that her name and the information she provided remain confidential, and that Dr. Parks requested such confidentiality. 3d Grafeld Decl. ¶ 7. Plaintiffs claim that these statements are inadmissible hearsay. *See* Pls.' Opp'n at 3-4. Even if plaintiffs' concerns have merit, there are more than enough "hints of confidentiality" to satisfy *Landano*'s confidentiality threshold. *See Ancient Coin*, 641 F.3d at 512.

[7] Although the plaintiffs do not raise this point, the fact that the e-mails establishing an expectation of confidentiality were exchanged after some of the redacted communications does not alter the Court's reasoning. Information provided by a source can be deemed confidential if there has been an "express assurance of confidentiality" *or* if there exist "circumstances from which such an assurance could reasonably be inferred." *Landano*, 508 U.S. at 172 (citation and internal quotation marks omitted). Here, the Court infers from these later conversations that there was an expectation of privacy from the outset of Dr. Park and Dr. Cohen's communications that is simply affirmed by the language on the face of the document.

to explain that even though "a good dozen people" inquired about Dr. Cohen contacting her, she "did not give any detail" of their conversation. *Id. Finally*, the information Dr. Parks provided was related to issues scheduled to be discussed at an upcoming advisory committee meeting that was closed to the public, *see* 3d Grafeld Decl. ¶ 9; *see also* Ex. A to 3d Grafeld Decl. at 1 (Dr. Cohen explaining he would like to discuss cultural property issues between the United States and Cyprus "because the agreement is coming up for extension soon"), and confidence is necessary in order for individuals to disclose reliable information, *see* 3d Grafeld Decl. ¶ 3. These facts, coupled with the concrete textual indications of confidentiality on the face of the e-mails, clearly establish an expectation of confidentiality between the parties. *See Campbell*, 164 F.3d at 34.

Plaintiffs' claim that the statements in the Grafeld Declarations are too conclusory to support an expectation of confidentiality also fails. State provides adequate detail in its declaration to support its argument that both Dr. Parks and Dr. Cohen had an expectation of confidentiality in their conversations. Thus, because State has provided more than just "bald assertion[s] that express assurances [of confidentiality] were given," *Ancient Coin*, 641 F.3d at 512 (quoting *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000)), the Court finds that State properly withheld parts of the document under Exemption 3(b).

## II. The Sufficiency of the State Department's Search For Responsive E-mails

An agency must demonstrate its search in response to a FOIA request was "reasonably calculated to uncover all relevant documents." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 87 (D.D.C. 2009) (quoting *Valencia-Lucena v. U.S. Coast*

*Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). The agency may meet this burden by submitting affidavits or declarations, and "[i]n the absence of contrary evidence," these affidavits and declarations are "sufficient to demonstrate an agency's compliance with FOIA." *Id.* (citation omitted).

Here, plaintiffs claim that State's search was inadequate because it did not sufficiently review employees' archived e-mails or backup tapes. *See Ancient Coin*, 641 F.3d at 514. On remand, our Circuit Court directed this Court to determine: "[1] whether backup tapes of any potential relevance exist; [2] if so whether their responsive material is reasonably likely to add to that already delivered; and, [3] if these questions are answered affirmatively, whether there is any practical obstacle to searching them." *Id.* at 515. Based on the evidence provided by State, this Court now finds that although other archival and backup systems do exist, attempting additional searches would not only be unlikely to result in additional responsive material, but would also be costly and inconvenient to the State Department.

"The searches conducted [by State] were exhaustive, and there are no other likely places that if searched would have a reasonable likelihood of containing additional, meaningful responsive material." 3d Grafeld Decl. ¶ 27. In responding to plaintiffs' FOIA requests, Bureau employees familiar with both the subject of the requests and the Bureau's files "searched appropriate records systems based on their knowledge of the

relevant issues and events."[8] *Id.* ¶ 11. Beginning in October 2009, the State Department implemented an electronic backup system that retains Bureau e-mail communications from only the preceding six months. *Id.* ¶ 24. Any e-mail communication deleted more than six months prior to the time of a FOIA request search would not be retrievable. *Id.* ¶ 25. As such, a renewed search for responsive e-mails in this system would reveal no additional communications not previously uncovered in the initial FOIA searches, *id*, and, therefore, is unwarranted, *see Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003) (explaining that "there are limits to the lengths to which an agency must go in responding to a FOIA request," including undertaking a "potentially onerous task . . . with dubious prospects of success") (citation omitted). Thus, aside from the Personal Storage Folders and the paper records kept under the "print and file" system, there are no additional archival or backup systems that may contain documents responsive to plaintiffs' requests. 3d Grafeld Decl. ¶ 21.

Furthermore, State persuasively argues that, even if the electronic backup system did contain additional responsive documents, conducting further searches would be

---

[8] The employees searched the active e-mail accounts and Personal Storage Folders ("PST files")—capable of holding archived e-mails—of both the advisory committee executive director and a Bureau senior analyst, the PST files of a former employee who worked on matters relevant to the plaintiffs' requests, and a general office active e-mail account. *Id.* ¶¶ 12-15. After conducting both a visual and automated search of these files, the employees compared the responsive documents to those documents located through previous search efforts and concluded that "[n]othing in this comparison indicated the likely existence of additional e-mail or electronic records . . . responsive to Plaintiffs' FOIA Requests." *Id.* ¶¶ 16-18. Rather than an electronic archival system, State practiced a "print and file" policy during the time relevant to plaintiffs' requests. *Id.* ¶ 20. State reviewed these "print and file" records in response to the FOIA requests. *Id.* ¶ 22.

inconvenient and futile. This backup system was not designed to retain documents in an easily searchable form, therefore, any search efforts would "significantly interfere" with the functioning of State's entire information system. *Id.* ¶ 26; *Pratt v. Webster*, 508 F. Supp. 751, 762 (D.C. Cir. 1981) (citing limiting principles designed to prevent agency searches that are too expensive and time consuming). Thus, this Court finds that the State Department conducted a search reasonably calculated to uncover all the e-mail records responsive to the plaintiffs' FOIA requests.

**CONCLUSION**

For all of the foregoing reasons, the Court GRANTS the State Department's Renewed Motion for Summary Judgment [Dkt. #33] and DISMISSES the action in its entirety. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge